## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO – Cincinnati Division

| | |
|---|---|
| THE KROGER CO.<br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>THE FEDERAL TRADE COMMISSION<br>　　　　　　　Defendant,<br><br>　　and<br><br>LINA M. KHAN, REBECCA KELLY SLAUGHTER, ALVARO BEDOYA, MELISSA HOLYOAK, and ANDREW N. FERGUSON in their official capacities as Commissioners of the Federal Trade Commission<br>　　　　　　　Defendants. | Civil Action No. 1:24-cv-00438-DRC<br><br><br>PLAINTIFF KROGER'S MOTION FOR A PRELIMINARY INJUNCTION<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff The Kroger Co. ("Kroger") moves pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for a preliminary injunction against all Defendants prohibiting them from proceeding with the ongoing proceeding before the Federal Trade Commission ("FTC"), *In re Kroger*, Dkt. No. 9428 (FTC), and prohibiting them from initiating any other actions against the Plaintiff before the FTC.  Oral argument is requested.

　Dated: August 19, 2024

Respectfully submitted,

*/s/ Nathaniel Lampley, Jr.*
Nathaniel Lampley, Jr. (0041543)
Petra G. Bergman (0097990)
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street, Suite 3500,
Cincinnati, Ohio 45202
(513) 723-4000
nlampley@vorys.com
pgbergman@vorys.com

Mark A. Perry (*pro hac vice forthcoming*)
Joshua M. Wesneski (*pro hac vice  forthcoming*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7248

Daniel M. Lifton (*pro hac vice forthcoming*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Plaintiff The Kroger Co.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO – Cincinnati Division**

| | |
|---|---|
| THE KROGER CO. | |
|                     Plaintiff, | |
|    vs. | |
| THE FEDERAL TRADE COMMISSION | Civil Action No. \_\_\_\_\_ |
|                   Defendant, | |
|    and | |
| LINA M. KHAN, REBECCA KELLY SLAUGHTER, ALVARO BEDOYA, MELISSA HOLYOAK, and ANDREW N. FERGUSON in their official capacities as Commissioners of the Federal Trade Commission | |
|                   Defendants. | |

**MEMORANDUM OF LAW
IN SUPPORT OF KROGER'S MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

      A.    The structure of the Federal Trade Commission......................................... 2

      B.    The FTC's administrative proceeding against Kroger.............................. 3

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

    I.    Kroger is likely to succeed in showing that the administrative proceeding is unconstitutional. ................................................................... 7

      A.    The ALJ overseeing the proceeding unconstitutionally enjoys multiple layers of removal protection. ......................................... 7

      B.    The administrative proceeding unconstitutionally usurps judicial power............................................................................................... 11

    II.    Kroger will suffer irreparable harm absent an injunction. ..................... 16

    III.    There is no threat of harm to third parties and the balance of the equities favors Kroger. ............................................................................. 17

CONCLUSION................................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*AMG Cap. Mgmt., LLC v. FTC,*
593 U.S. 67 (2021)........................................................................................................2

*Axon Enter., Inc. v. FTC,*
598 U.S. 175 (2023)............................................................................................ *passim*

*Axon Enter., Inc. v. FTC,*
986 F.3d 1173 (9th Cir. 2021) ....................................................................................12

*Brott v. United States,*
858 F.3d 425 (6th Cir. 2017) ......................................................................................15

*CFTC v. Schor,*
478 U.S. 833 (1986)....................................................................................................14

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,*
363 F.3d 427 (6th Cir. 2004) ......................................................................................18

*Edmonds v. United States,*
520 U.S. 651 (1997)...................................................................................................8, 9

*Exec. Benefits Ins. Agency v. Arkison,*
573 U.S. 25 (2014)....................................................................................................1, 12

*Free Enterprise Fund v. Public Company Accounting Oversight Board,*
561 U.S. 477 (2010)...........................................................................................1, 8, 9, 10

*Freytag v. C.I.R.,*
501 U.S. 868 (1991).......................................................................................................8

*FTC v. IQVIA Holdings Inc.,*
2023 WL 7152577 (S.D.N.Y. Oct. 31, 2023) ..............................................................5

*FTC v. The Kroger Co.,*
No. 3:24-cv-00347-AN (D. Or.) ...................................................................................4

*FTC v. Meta Platforms Inc.,*
2022 WL 16637996 (N.D. Cal. Nov. 2, 2022) .............................................................5

*FTC v. Meta Platforms Inc.,*
654 F. Supp. 3d 892 (N.D. Cal. 2023) .......................................................................12

*FTC v. Microsoft Corp.,*
681 F. Supp. 3d 1069 (N.D. Cal. 2023) .....................................................................12

*FTC v. Thomas Jefferson Univ.*,
  505 F. Supp. 3d 522 (E.D. Pa. 2020) ...................................................................12

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
  23 F.3d 1071 (6th Cir. 1994) ...............................................................................18

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989).................................................................................................15

*Illumina, Inc. v. FTC*,
  88 F.4th 1036 (5th Cir. 2023) .................................................................................5

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) .................................................................................10

*Katchen v. Landy*,
  382 U.S. 323 (1966)...............................................................................................15

*Kentucky v. Biden*,
  57 F.4th 545 (6th Cir. 2023) .............................................................................7, 17

*Lucia v. SEC*,
  585 U.S. 237 (2018).................................................................................................9

*McNeilly v. Land*,
  684 F.3d 611 (6th Cir. 2012) ..................................................................................6

*Melvin Beene Produce Co. v. Agric. Mktg. Serv.*,
  728 F.2d 347 (6th Cir. 1984) ................................................................................15

*Myers v. United States*,
  272 U.S. 52 (1926)..............................................................................................8, 10

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982).................................................................................................11

*N. Secs. Co. v. United States*,
  193 U.S. 197 (1904)...............................................................................................13

*Nken v. Holder*,
  556 U.S. 418 (2009).................................................................................................6

*Noel Pane v. Town of Greenburgh*,
  2012 WL 12886971 (S.D.N.Y. Mar. 21, 2012) ....................................................16

*Occupy Columbia v. Haley*,
  2013 WL 12380290 (D.S.C. Mar. 18, 2023) ........................................................16

iii

*Scottsdale Cap. Advisors Corp. v. FINRA*,
    678 F. Supp. 3d 88 (D.D.C. 2023) .......................................................................................16

*SEC v. Jarkesy*,
    144 S. Ct. 2117 (2024).................................................................................... *passim*

*Seila Law, LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020)..............................................................................................................8

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*,
    119 F.3d 393 (6th Cir. 1997) ...............................................................................................6

*Stern v. Marshall*,
    564 U.S. 462 (2011) ...........................................................................................................12

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985)...........................................................................................................14

*United States v. Addyston Pipe & Steel Co.*,
    85 F. 271 (6th Cir. 1898) ...................................................................................................13

*Walmart Inc. v. King*,
    2024 WL 1258223 (S.D. Ga. Mar. 25, 2024) ....................................................................10

**Constitution and Statutes**

U.S. Const. art. II, § 1 ...............................................................................................................8

U.S. Const. art. III, § 1 .............................................................................................................11

5 U.S.C. § 7521(a) .................................................................................................................2, 9

15 U.S.C. § 41........................................................................................................................2

15 U.S.C. § 45(a)(1)..............................................................................................................4

15 U.S.C. § 53(b) .................................................................................................................2, 15

15 U.S.C. § 53(b)(2) .............................................................................................................5

**Other Authorities**

16 C.F.R. § 3.41 ........................................................................................................................2

William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511 (2020).......................13

1 William Blackstone, Commentaries on the Laws of England 1765–1769 ................................14

iv

Jeffrey W. Brennan & Sean P. Pugh, *Inova and the FTC's Revamped Merger Litigation Model* (2008) ...................................................................................................5

James May, *Antitrust Practice and Procedure in the Formative Era: The Constitutional and Conceptual Reach of State Antitrust Law, 1880–1918*, 135 U. Penn. L. Rev. 495 (1987).  ...............................................................................13

Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559 (2007) ...............................................................................13

U.S. Gov't Accountability Off., GAO-23-105790, *Antitrust: DOJ and FTC Jurisdictions Overlap, but Conflicts are Infrequent* (2023)........................................15

**INTRODUCTION**

Plaintiff The Kroger Co. ("Kroger") respectfully asks this Court to enjoin an unconstitutional exercise of executive power by the Federal Trade Commission ("FTC").  The FTC has voted to challenge Kroger's merger with Albertsons Companies, Inc. ("Albertsons") before the FTC's own in-house administrative tribunal.  That administrative proceeding violates two distinct separation-of-powers principles mandated by our Constitution to protect citizens from overreach by the federal government:  First, the Administrative Law Judge ("ALJ") who is presiding over the administrative proceeding enjoys two layers of protection from presidential removal, in violation of Article II; second, the FTC seeks to adjudicate Kroger's private rights within the Executive Branch rather than the Judicial Branch, in violation of Article III of the Constitution.

The Supreme Court has applied both of these constitutional principles in recent cases.  In *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), the Court held that "multilevel protection from removal [for executive officers] is contrary to Article II's vesting of the executive power in the President."  *Id.* at 484.  Under that line of authority, the two layers of removal protection afforded to the FTC's ALJs are unconstitutional.  The Court has also held that "cases involving 'private rights' . . . may not" "be removed from the jurisdiction of Article III courts."  *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014); *see also SEC v. Jarkesy*, 144 S. Ct. 2117, 2131–32 (2024).  Under that line of precedent, it is unconstitutional for the FTC to adjudicate Kroger's private rights administratively rather than in federal court.

The remedy for these constitutional violations is to enjoin the administrative proceeding.  Absent an injunction, Kroger will be forced to participate in an unconstitutional administrative proceeding.  As the Supreme Court recently confirmed in a case involving the FTC, "being subjected to unconstitutional agency authority" is a "here-and-now injury" that is "impossible to

remedy once the proceeding is over." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (internal quotation marks omitted). The FTC has filed a parallel proceeding in federal court seeking to enjoin the merger, in which an evidentiary hearing is set to begin on August 26. If the federal court declines to block the merger, the FTC should not receive a second opportunity to try the case in its own administrative tribunal.

For the reasons set forth below, the administrative proceeding against Kroger should be preliminarily enjoined.

**BACKGROUND**

**A.        The structure of the Federal Trade Commission**

The Federal Trade Commission is an Executive Branch agency composed of five Commissioners appointed by the President, by and with the advice and consent of the Senate. *See* 15 U.S.C. § 41. "Not more than three of the Commissioners shall be members of the same political party." *Id.* The FTC has statutory authority to bring administrative proceedings against entities subject to its jurisdiction for allegedly engaging in unfair methods of competition as well as for alleged violations of the antitrust laws. *See id.* § 45. The FTC also has statutory authority to seek permanent injunctive relief against unfair methods of competition in federal court. *See id.* § 53(b); *see also AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 71–72 (2021).

FTC administrative proceedings are heard in the first instance by an Administrative Law Judge. *See* 16 C.F.R. § 3.41. FTC ALJs may be removed only "for good cause" by the Merit Systems Protection Board. 5 U.S.C. § 7521(a). The Merit Systems Protection Board in turn "is composed of 3 members appointed by the President, by and with the advice and consent of the Senate, not more than 2 of whom may be adherents of the same political party." *Id.* § 1201. Members of the Merit Systems Protection Board may be removed only "for inefficiency, neglect

2

of duty, or malfeasance in office." *Id.* § 1202(d). Accordingly, FTC ALJs—who indisputably are executive officers—enjoy two layers of protection against removal by the President.

### B.       The FTC's administrative proceeding against Kroger

Kroger is an American retail company that has operated grocery retail stores since it was founded by Bernard Kroger in Cincinnati in 1883. Cosset Decl. ¶ 3. Today, Kroger operates supermarkets and retail pharmacies in 35 states and the District of Columbia. *Id.* ¶ 4. Kroger's business philosophy is to compete hard on price, and to fund that strategy through process changes and other efficiencies. *Id.* ¶ 5. Kroger has consistently lowered prices following past mergers and acquisitions. *Id.* ¶ 6. Kroger spent more than $100 million to cut the prices of thousands of products at Roundy's Supermarket after acquiring the chain, leading to a roughly 1 percent reduction in gross margins over five years. *Id.* ¶ 7. Following its purchase of Harris Teeter Supermarkets, LLC a decade ago, Kroger invested $125 million in lowering prices and gross decreased roughly 2 percent over seven years. *Id.* Kroger also distinguishes itself through a high-quality workforce of motivated and engaged employees. This workforce is largely unionized, and Kroger has added more than 100,000 union jobs since 2012. *Id.* ¶ 8. And since 2018, Kroger's investments have increased the annual compensation of its workforce by $1.9 billion. *Id.*

In September 2022, Kroger entered into an agreement to acquire Albertsons, another American food retail company. Cosset Decl. ¶ 9. The purpose of this agreement is to allow Kroger to better compete against established and growing industry giants such as Walmart, Amazon, and Costco, thereby increasing competition and allowing greater choice at lower prices for the American public. *Id.* ¶ 10. Continuing Kroger's track record of providing lower prices and higher quality stores to customers, Kroger publicly committed to share the benefits of the merger with customers by investing $1 billion to begin lowering prices upon closing of the agreement, and an additional $1.3 billion to improve Albertsons' stores. *Id.* ¶ 11. In addition, to address any

anticompetitive concerns, Kroger agreed to divest hundreds of stores to C&S Wholesale Grocers. *Id.* ¶ 12. Kroger also committed to invest another $1 billion to raise wages and benefits following the acquisition. *Id.* ¶ 13.

Nevertheless, the FTC, which at the time consisted of only three Commissioners (all Democratic appointees), voted to challenge the merger. On February 26, 2024, the FTC filed an administrative complaint against Kroger and Albertsons, in the FTC's in-house tribunal, to enjoin the merger. The FTC alleged that the merger violates section 5 of the FTC Act, which bars "[u]nfair methods of competition in or affecting commerce," 15 U.S.C. § 45(a)(1), as well as section 7 of the Clayton Act, which bars any acquisition, the effect of which "may be substantially to lessen competition, or to tend to create a monopoly," *id.* § 18. *See In re Kroger*, Dkt. No. 9428 (FTC). The FTC seeks an order prohibiting Kroger and Albertsons from entering into "any transaction" that "combines their businesses, except as may be approved by the Commission." Complaint, *id.*, at 24 (Feb. 26, 2024). Additionally, Kroger would have to "provide prior notice to and receive prior approval from the Commission" for "*any . . .* combination[] of [its] business[] in the relevant market with *any* other company operating in the relevant market." *Id.* (emphasis added). The proceeding was assigned to Chief Administrative Law Judge Chappell.

The FTC also filed suit in federal court in the District of Oregon to preliminarily enjoin the acquisition pending resolution of the administrative proceeding. *See FTC v. The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.). Section 13(b) of the Federal Trade Commission Act permits the FTC to obtain a preliminary injunction in federal court in aid of a pending administrative proceeding if the FTC makes a "proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success [in the administrative proceeding], such action would be in the public interest." 15 U.S.C. § 53(b)(2). The relief the FTC seeks in federal court therefore is a

4

preliminary injunction of the merger that would last the duration of the parallel administrative proceeding, which likely will take several years to result in a final decision. *See* Jeffrey W. Brennan & Sean P. Pugh, *Inova and the FTC's Revamped Merger Litigation Model*, 23Antitrust 28, 31 (2008) ("From the issuance of a complaint, through discovery and pre-hearing activities, to the hearing on the merits, followed by the ALJ's initial decision, to an appeal of the initial decision, followed by the Commission's appellate decision and, after that, a possible appeal to a U.S. Court of Appeals, the administrative process can take several years."); *see, e.g.*, *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1045 (5th Cir. 2023) (approximately 32 months between initial complaint and ultimate Fifth Circuit opinion). The Federal Trade Commission Act also permits the FTC to seek *permanent* injunctive relief in federal court, obviating the need for an administrative proceeding altogether. *See* 15 U.S.C. § 53(b)(2). The FTC elected not to take that route here, instead splitting its challenge into two tribunals.

By this motion, Kroger seeks to enjoin only the administrative proceeding. Kroger is not asking this Court to interfere with the Section 13(b) action in federal court, in which an evidentiary hearing will begin on August 26 regardless of the disposition of this motion. The FTC has (successfully) taken the position in previous Section 13(b) cases that these constitutional issues should be addressed in a standalone lawsuit (as authorized by the Supreme Court in *Axon*) rather than as affirmative defenses to the issuance of an injunction. *See FTC v. IQVIA Holdings Inc.*, 2023 WL 7152577, at *3 (S.D.N.Y. Oct. 31, 2023); *FTC v. Meta Platforms Inc.*, 2022 WL 16637996, at *7 (N.D. Cal. Nov. 2, 2022). Accordingly, Kroger has filed a standalone action in this Court for injunctive and declaratory relief.

**STANDARD OF REVIEW**

"In evaluating a request for a preliminary injunction, a district court should consider: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable

5

injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These are "factors to be balanced and not prerequisites that must be satisfied." *McNeilly*, 684 F.3d at 615 (quoting *Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.*, 963 F.2d 855, 858–59 (6th Cir. 1992)). Accordingly, even absent a "strong probability of success on the merits," a movant is entitled to a preliminary injunction upon showing "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997) (quotation marks omitted).

## **ARGUMENT**

Each of the factors for a preliminary injunction favors granting relief to Kroger.

*First*, Kroger is likely to succeed on the merits—and, alternatively, at least has shown there are serious questions on the merits—as to the unconstitutionality of the FTC's administrative proceeding under both Article II and Article III of the Constitution. The ALJ presiding over the administrative proceeding—an executive officer—enjoys two layers of protection against removal by the President, in violation of Article II. Moreover, the FTC's election to adjudicate Kroger's private rights within the Executive Branch, rather than in federal court, violates Article III. Kroger is likely to succeed on the merits of either or both of these structural constitutional challenges; at minimum, in light of recent Supreme Court authority, they give rise to serious questions going to the merits. The first (and most important) preliminary injunction factor is therefore satisfied.

*Second*, Kroger will face irreparable harm if the administrative proceeding is not enjoined. The Supreme Court in *Axon* held that subjecting a party to unconstitutional administrative

6

proceedings—including, as in *Axon*, those brought by the FTC—gives rise to a "here-and-now injury" that is "impossible to remedy once the proceeding is over." 598 U.S. at 191. Furthermore, Kroger will never be able to recover the costs of participating in and complying with the administrative proceeding, because the federal government enjoys sovereign immunity. *See Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023).

*Finally*, because the FTC has no legitimate interest in maintaining an unconstitutional administrative proceeding, and has the option of solving this problem of its own making by challenging the merger in federal court, the balance of harm and the equities also favor Kroger.

## I. Kroger is likely to succeed in showing that the administrative proceeding is unconstitutional.

The FTC's administrative proceeding against Kroger contravenes the constitutional separation of powers—the guardrails the Framers included to prevent the concentration of power within the federal government, to the detriment of individual liberty—in two independent ways.

First, the administrative proceeding violates Article II of the U.S. Constitution because the ALJ overseeing the proceeding is an executive officer, yet enjoys two layers of protection against removal. The Supreme Court has squarely held that more than one layer of removal protection is unconstitutional. Second, the administrative proceeding violates Article III of the U.S. Constitution because the FTC intends to adjudicate Kroger's private rights within the partisan Executive Branch rather than the independent Judiciary. The Supreme Court has repeatedly recognized that private rights must be adjudicated in federal courts.

### A. The ALJ overseeing the proceeding unconstitutionally enjoys multiple layers of removal protection.

Article II of the U.S. Constitution provides that "[t]he executive Power shall be vested in a President of the United States." U.S. Const. art. II, § 1. It also provides that the President "shall take Care that the Laws be faithfully executed." *Id.*, § 3. In order to exercise this responsibility,

7

the President must have the "power to oversee executive officers through removal," *Free Enterprise Fund*, 561 U.S. at 492, a power that necessarily extends to any officers who "wield executive power on his behalf," *Seila Law*, *LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020).

The Constitution distinguishes between "superior" (or principal) officers, who generally may be appointed only with the advice and consent of the Senate, and "inferior" officers, whose appointment Congress may vest by law in the President alone, or the heads of departments. *See Freytag v. C.I.R.*, 501 U.S. 868, 877–78 (1991) (citing U.S. Const., art. II, § 2, cl. 2). "Superior" officers answer directly to the President, whereas "inferior" officers are those "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmonds v. United States*, 520 U.S. 651, 663 (1997). Article II demands that the President have the unfettered authority to remove superior officers in the Executive Branch. *See Myers v. United States*, 272 U.S. 52, 163–64 (1926). Inferior officers may be protected from presidential removal, but only to a certain extent—specifically, they may be given one layer of for-cause removal protection but not two. *Seila Law*, 591 U.S. at 204.

In *Free Enterprise Fund*, the Supreme Court addressed the lawfulness of a statutory scheme under which members of the Public Company Accounting Oversight Board were removable only for cause by Commissioners of the Securities and Exchange Commission ("SEC"), who are themselves removable by the President only for cause—a structure identical to that at issue here. *See* 561 U.S. at 486–87. The Court found this scheme unlawful, holding that "dual for-cause limitations on the removal of" officers of the United States, including inferior officers, "contravene the Constitution's separation of powers." *Id.* at 492. Where there is only one layer of tenure protection, a principal officer "could remove [the inferior officer] at any time, and

8

therefore would be fully responsible for what the [inferior officer] does. The President could then hold the [principal officer] to account for its supervision of the [inferior officer], to the same extent that he may hold the [principal officer] to account for everything else it does." *Id.* at 495–96. But with a second level of tenure protection, principal officers would be "only responsible for their own determination of whether the Act's rigorous good-cause standard is met," and not be responsible for the inferior officer's *actions*, while the President would be "powerless to intervene" should he disagree with that determination. *Id.* at 496. Accordingly, multilayer tenure schemes are "contrary to Article II's vesting of the executive power in the President." *Id.*

Here, the FTC's ALJs are inferior officers of the United States. ALJs, like other officers, "hold a continuing office established by law," "exercise . . . significant discretion when carrying out . . . important functions," and render decisions. *See Lucia v. SEC*, 585 U.S. 237, 247–49 (2018) (quotation marks omitted). Specifically, ALJs "have all the authority needed to ensure fair and orderly adversarial hearings—indeed, nearly all the tools of federal trial judges," and they "issue decisions containing factual findings, legal conclusions, and appropriate remedies." *Id.* at 248–49. And while the FTC ALJs are *inferior* officers—because they answer to the Commissioners of the FTC, who are themselves appointed and confirmed by the Senate, *see Edmonds*, 520 U.S. at 663—they nonetheless must be accountable to the President. The FTC ALJs, however, may be removed only "for good cause" by the Merit Systems Protection Board, 5 U.S.C. § 7521(a), and in turn, the members of that Board may be removed only "for inefficiency, neglect of duty, or malfeasance in office," *id.* § 1202(d). That is the same removal structure the Court struck down in *Free Enterprise Fund* as contrary to Article II, and it is likewise unconstitutional here.

To be sure, the Supreme Court noted in *Free Enterprise Fund* that it was not "address[ing] that subset of independent agency employees who serve as administrative law judges," because such officials may "perform adjudicative rather than enforcement or policymaking functions" or may "possess purely recommendatory powers." 561 U.S. at 507 n.10. But courts since then have held that the reasoning of *Free Enterprise Fund* applies with equal force to ALJs, because "they are integral pieces within" an agency's "powerful enforcement apparatus," using their tools "at the direction of and with the power delegated to them by the Commission." *Jarkesy v. SEC*, 34 F.4th 446, 465 n.20 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024). Accordingly, the Fifth Circuit recently held that *Free Enterprise Fund* applies to the ALJs of the SEC, who exercise a similar role to the ALJs in the FTC and enjoy an identical double layer of removal protection. *Id.* at 465; *see also Walmart Inc. v. King*, 2024 WL 1258223, at *3 (S.D. Ga. Mar. 25, 2024) (applying *Free Enterprise Fund* to other federal agency ALJs). Furthermore, for almost a century, the Supreme Court has recognized that even quasi-judicial officers must be subject to removal "on the ground that the discretion regularly entrusted to that officer by statute has not been on the whole intelligently or wisely exercised." *Myers*, 272 U.S. at 135. In other words, the President must be allowed to terminate inferior officers who make decisions with which the President disagrees, including as part of an agency adjudication.

Because the FTC ALJs are unconstitutionally protected from removal, they cannot lawfully preside over an administrative proceeding. This is not an indictment of these ALJs' abilities; rather, it reflects the constitutional design that requires Executive Branch officials to be beholden (and accountable) to the President. Because the FTC ALJs are doubly insulated from presidential removal, Kroger is being subject to "an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon*, 598 U.S. at 191. This constitutional defect "prevent[s] [FTC

10

ALJs . . . from exercising any power." *Id.* at 189.  Accordingly, Kroger is likely to succeed on its claim that the administrative proceeding must be enjoined as unconstitutional.  Moreover, given the guidance from the Supreme Court and the Fifth Circuit in *Jarkesy*, there are at least serious questions on the merits that, when paired with the irreparable harm Kroger faces, warrant a preliminary injunction.  This factor therefore favors a preliminary injunction.

> **B.     The administrative proceeding unconstitutionally usurps judicial power.**

The FTC's administrative proceeding also violates the Constitution and should be enjoined because a federal administrative agency cannot lawfully adjudicate private rights.  The rights here are quintessentially private, because they concern Kroger's ability to freely contract with a private counterparty and are not reserved for exclusive adjudication by the Legislative or Executive Branches.

Article III of the U.S. Constitution vests "[t]he judicial power of the United States . . . in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish," with judges that "shall hold their Offices during good behaviour."  U.S. Const. art. III, § 1.  These "provisions were incorporated into the Constitution to ensure the independence of the Judiciary from the control of the Executive and Legislative branches of government."  *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 59 (1982) (plurality op.).  "[O]ur Constitution . . . commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence."  *Id.* at 60.  The need for independent judicial review is apparent from the FTC's own track record in administrative proceedings:  While

11

the FTC regularly loses preliminary injunction applications in federal court,[1] it "has not lost a single case in the past quarter-century" in its administrative proceedings. *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd*, 598 U.S. 175 (2023); *see also id.* ("Even the 1972 Miami Dolphins would envy that type of record.").

The Supreme Court has explained that an administrative tribunal, rather than an Article III court, may adjudicate a dispute arising under federal law only if a dispute involves what the Court has called "public rights," rather than so-called "private rights." *Stern v. Marshall*, 564 U.S. 462, 485 (2011); *see also Exec. Benefits Ins. Agency*, 573 U.S. at 32 ("The Court [has] distinguished between cases involving so-called 'public rights,' which may be removed from the jurisdiction of Article III courts, and cases involving 'private rights,' which may not."). "Public rights" are those matters that "historically could have been determined *exclusively* by the executive and legislative branches." *Jarkesy*, 144 S. Ct. at 2132 (emphasis added) (alteration and quotation marks omitted); *see also Stern*, 564 U.S. at 490–91 ("[W]hat makes a right 'public' rather than private is that the right is integrally related to particular Federal Government action."). But as the Supreme Court recently clarified in *Jarkesy*—a case striking down the use of an SEC administrative tribunal for claims seeking civil penalties—a dispute does not implicate "public rights" merely because Congress created a statutory cause of action and delegated enforcement of that cause of action to a federal agency. 144 S. Ct. at 2136. "[W]hat matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Id.* "[T]he presumption is in favor of Article III courts." *Id.* at 2134 (quotation marks omitted).

Here, the public rights exception does not apply for three reasons.

---

[1] *See, e.g.*, *FTC v. Microsoft Corp.*, 681 F. Supp. 3d 1069 (N.D. Cal. 2023); *FTC v. Meta Platforms Inc.*, 654 F. Supp. 3d 892, 903 (N.D. Cal. 2023); *FTC v. Thomas Jefferson Univ.*, 505 F. Supp. 3d 522, 528 (E.D. Pa. 2020).

*First*, competition claims have a common-law history. "Traditional legal claims must be decided by courts, whether they originate in a newly fashioned regulatory scheme or possess a long line of common-law forebears." *Id.* at 2135 (alteration and quotation marks omitted). And here, common law actions for unlawful "restraints of trade" long predate the enactment of the U.S. antitrust laws. *See* James May, *Antitrust Practice and Procedure in the Formative Era: The Constitutional and Conceptual Reach of State Antitrust Law, 1880–1918*, 135 U. Penn. L. Rev. 495, 498 (1987). Before the Clayton Act or the FTC were ever contemplated, States "undertook common law and statutory prosecutions for conspiracies in restraint of trade." *Id.* The Sherman Act partially codified that tradition, *see United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 278–79 (6th Cir. 1898) (Taft, J.), *aff'd as modified, Addyston Pipe & Steel Co. v. United States*, 175 U.S. 211 (1899), and in doing so gave federal courts the power to invoke these common law principles to challenge mergers between competitors, *see N. Secs. Co. v. United States*, 193 U.S. 197, 325–28 (1904). Because claims challenging unlawful combinations in restraint of trade "were well known at common law," the FTC's analogue claim in the administrative proceeding implicates private rights and must be adjudicated in federal court. *Jarkesy*, 144 S. Ct. at 2135.

*Second*, the FTC seeks to impair Kroger's private rights. The term "public rights" has historically "referred to forms of adjudication that did not deprive any people of their private rights to life, liberty, or property." William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511, 1542 (2020); *see also* Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 562 (2007) ("Generations of Americans assumed that once core private rights had vested in a particular individual, the allied requirements of due process and the separation of powers protected them against many forms of interference by the political branches."). And as Justice Thomas has explained, "[p]rivate rights encompass 'the three absolute rights, life, liberty, and

13

property, so called because they appertain and belong to particular men merely as individuals, not to them as members of society or standing in various relations to each other—that is, not dependent upon the will of the government.'" *Axon*, 598 U.S. at 198 (Thomas, J., concurring) (quoting *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 713–14 (2015) (Thomas, J., dissenting)). By attempting to prevent Kroger (indefinitely) from purchasing Albertsons or any other competitor, the FTC seeks to restrict Kroger's private right to use, purchase, and dispose of property. *See* 1 William Blackstone, *Commentaries on the Laws of England 1765–1769* at 134 ("The third absolute right, inherent in every Englishman, is that of property: which consists in the free use, enjoyment, and disposal of all his acquisitions, without any control or diminution, save only by the laws of the land.").

The Supreme Court has never extended the public rights doctrine to administrative proceedings seeking such relief. In *Atlas Roofing Co. v. Occupational Safety & Health Review Commission*, the Court concluded that at its broadest reach, the public rights doctrine could apply to regulatory actions that required employers to correct unsafe working conditions and imposed civil penalties. *See* 430 U.S. 442, 445–47 (1977). But the regulatory penalties and specific corrective actions permitted by *Atlas Roofing* are a far cry from an indefinite prior restraint on Kroger's contract rights. Indeed, the Court's public rights cases (and the cases of the Sixth Circuit) consistently have involved either the imposition of regulatory fines, the conferral of public benefits or compensation from the federal government, or—in rare instances—the resolution of private claims that are embedded in regulatory proceedings, such as bankruptcy. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 589 (1985) (resolution of compensation disputes between regulatory applicants who choose to use information submitted by previous applicants); *CFTC v. Schor*, 478 U.S. 833, 835–36, 857 (1986) (state law counterclaims brought in the context

14

of administrative reparation proceedings); *Katchen v. Landy*, 382 U.S. 323, 330 (1966) (preference actions against estate creditors in bankruptcy); *Brott v. United States*, 858 F.3d 425, 435 (6th Cir. 2017) (claims by landowners for compensation from the federal Government); *Melvin Beene Produce Co. v. Agric. Mktg. Serv.*, 728 F.2d 347, 351 (6th Cir. 1984) (revocation of a federally issued license).  The enjoining of a private transaction on competitive grounds is therefore not the kind of relief that has "historically" been available "exclusively" from the executive and legislative branches.  *Jarkesy*, 144 S. Ct. at 2132.

*Third*, unlike in other contexts where the Court has applied the public rights exception, requiring the FTC to challenge mergers in federal court—rather than in an in-house administrative proceeding—would not "go far to dismantle the statutory scheme."  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989) (quoting *Atlas Roofing*, 430 U.S. at 454 n.11).  Congress expressly gave the FTC the power to seek final relief against mergers either in federal court or in an administrative proceeding.  *See* 15 U.S.C. § 53(b) ("[I]n proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction.").  Prohibiting the FTC from pursuing relief in an administrative proceeding therefore would not affect the FTC's ability to take action against anticompetitive mergers; it simply would mean that the FTC would have to pursue and prove such claims in an Article III court, subject to the rules of evidence and procedure that attend civil litigation.  And that is no burden at all, as evidenced by the practices of the Department of Justice—with whom the FTC splits regulatory responsibility for competition issues—which has no general administrative tribunal and can challenge mergers *only* in federal court.  *See* U.S. Gov't Accountability Off., GAO-23-105790, *Antitrust: DOJ and FTC Jurisdictions Overlap, but Conflicts are Infrequent* 6 n.16 (2023).

Kroger is therefore likely to succeed on the merits of its claim that the administrative proceeding should be enjoined as unconstitutional in violation of Article III. And again, in light of the Supreme Court's recent decision in *Jarkesy* (which called into question the broad understanding of "public rights" the government has advocated for), there are at least serious questions on the merits that justify a preliminary injunction when coupled with the threat of irreparable harm described below.

## II.        Kroger will suffer irreparable harm absent an injunction.

Subjecting Kroger to an unconstitutional administrative proceeding would inflict irreparable harm. In *Axon*, the Supreme Court explained that the injury of being subjected to an illegitimate proceeding is a "here-and-now injury" that is "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Axon*, 598 U.S. at 191; *see also Scottsdale Cap. Advisors Corp. v. FINRA*, 678 F. Supp. 3d 88, 110–11 (D.D.C. 2023), *appeal pending*, No. 23-5129 (D.C. Cir.) ("[U]nder the Supreme Court's explicit language, the nature of the constitutional claims asserted here, no matter their unlikelihood of success, suffice to show irreparable harm."). The Court analogized being subjected to an illegitimate proceeding to being deprived of a valid immunity, such as qualified immunity, *Axon*, 598 U.S. at 192, which has repeatedly been recognized as irreparable harm, *see, e.g.*, *Occupy Columbia v. Haley*, 2013 WL 12380290, at *1, n.2 (D.S.C. Mar. 18, 2023) (irreparable harm in being subjected to discovery if defendants are entitled to qualified immunity), *aff'd*, 738 F.3d 107 (4th Cir. 2013); *Noel Pane v. Town of Greenburgh*, 2012 WL 12886971, at *4 (S.D.N.Y. Mar. 21, 2012) (irreparable harm absent a stay pending appeal as the defendant "would lose any immunity from suit to which he might be entitled were he forced to go to trial at this juncture").

The irreparable nature of this here-and-now injury is particularly clear because the sovereign immunity of the federal government will ensure that Kroger never recovers the cost of

16

complying with a lengthy and burdensome adjudicatory process. As the Sixth Circuit has noted, "unrecoverable compliance costs" that would be incurred in the "absence of a preliminary injunction" qualify as irreparable harm. *Kentucky*, 57 F.4th at 556; *see also id.* ("The federal government's sovereign immunity typically makes monetary losses like this irreparable."). Absent a preliminary injunction here, Kroger may be forced to expend millions of (unrecoverable) dollars participating in the administrative proceeding.

Kroger also faces irreparable harm from the prospect that it may prevail in the preliminary injunction proceeding in federal court, yet still face an administrative proceeding that threatens to unwind the merger years after its consummation. That ongoing uncertainty would itself be harmful to Kroger, who must be able to operate its business without the looming specter of a post-merger divestiture of assets years down the line. Cosset Decl. ¶ 15. It would also be harmful to American families that rely on Kroger's stores for their essential needs and Kroger's associates. *Id.* If Kroger prevails in federal court in Oregon, the FTC should not get a second bite at the apple in its own tribunal.

**III.     There is no threat of harm to third parties and the balance of the equities favors Kroger.**

The final two factors—the threat of harm to others and the balance of the equities—also favor a preliminary injunction.

*First*, there is no threat of harm to third parties. The FTC is already seeking a preliminary injunction of the merger in an Article III proceeding not challenged by Kroger here, and could choose to seek a permanent injunction in federal court if it elected. *See supra* pp. 4–5. Accordingly, if the FTC believes the merger will result in harm to consumers or other third parties, it has ample tools at its disposal to enjoin it. Kroger seeks here to stop only the FTC's unconstitutional use of its in-house administrative proceedings. Indeed, if the in-house

administrative proceeding is enjoined or dismissed, Kroger would not oppose a motion by the FTC to convert the pending federal court action into one for permanent injunctive relief.

*Second*, the equities strongly favor Kroger. The Sixth Circuit has explained that "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). Conversely, "no substantial harm can be shown in the enjoinment of an unconstitutional policy." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004). Accordingly, the FTC has no legitimate interest in the administrative proceeding, which violates Kroger's constitutional rights.

Moreover, any interest the FTC has in enjoining the merger is minimal in light of the overwhelming consumer benefits the merger offers. As set forth above, Kroger's business model for many years has been to invest in price reductions for consumers, and it has consistently done so following other acquisitions. *See supra* p. 3. The implementation of Kroger's business model at Albertsons stores nationwide will result in lower prices for consumers, something that many consumers are in dire need of given recent inflation trends. The FTC's interest in proceeding with the administrative trial is therefore minimal.

Finally, even if the FTC had a legitimate interest in enjoining the merger, it could seek to vindicate that interest in federal court. Congress has authorized the FTC to seek a *permanent* injunction against mergers that are proven to violate the Clayton Act. The FTC has chosen not to seek such relief against Kroger, presumably because it knows it cannot meet the standard for permanent injunctive relief. But that choice confirms that the equities favor Kroger here.

18

**CONCLUSION**

For the foregoing reasons, Kroger respectfully requests that the Court enjoin the FTC from maintaining the administrative proceeding against Kroger pending resolution of Kroger's request for a permanent injunction and declaratory relief in this Court.

Dated: August 19, 2024

Respectfully submitted,

*/s/ Nathaniel Lampley, Jr.*

Nathaniel Lampley, Jr. (0041543)
Petra G. Bergman (0097990)
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street, Suite 3500,
Cincinnati, Ohio 45202
(513) 723-4000
nlampley@vorys.com
pgbergman@vorys.com

Mark A. Perry (*pro hac vice forthcoming*)
Joshua M. Wesneski (*pro hac vice forthcoming*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7248

Daniel M. Lifton (*pro hac vice forthcoming*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Plaintiff The Kroger Co.*

19

## CERTIFICATE OF SERVICE AND RULE 65 CERTIFICATION

The undersigned, Trial Counsel for Plaintiff The Kroger Co. certifies that service of the filings in this action has been made or that reasonable efforts to accomplish service were made. The undersigned certifies that on 19th day of August, 2024, this motion for preliminary injunction and all filings in the action were sent by email and/or mail to Defendants the Federal Trade Commission, Lina M. Khan, Rebecca K. Slaughter, Alvaro Bedoya, Melissa Holyoak, and Andrew N. Ferguson to the addresses set forth below.  Additionally, as required by Local Rule 65.1, the undersigned certifies that they will inform all parties of any scheduled hearing or conference.

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

Charles Dickinson
James H. Weingarten
Emily Blackburn
Paul Frangie
Laura Hall
Janet Kim
Kenneth A. Libby
Eric Olson
Rohan Pai
Harris Rothman
Albert Teng
Elizabeth Arens
Jacob Hamburger
Joshua Smith
Katherine Bies
Katherine Drummonds
Lily Hough
Alexander Bryson
Theodore Zang, Jr.
Guia Dixon
Anjelica Sarmiento
Le'Ora Tyree
Trisha Grant
cdickinson@ftc.gov
jweingarten@ftc.gov
eblackburn@ftc.gov
pfrangie@ftc.gov
lhall1@ftc.gov
jkim3@ftc.gov
klibby@ftc.gov
eolson@ftc.gov
rpai@ftc.gov
hrothman@ftc.gov

Lina M. Khan
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

Rebecca K. Slaughter
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

Alvaro Bedoya
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

Melissa Holyoak
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

Andrew N. Ferguson
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

20

ateng@ftc.gov
earens@ftc.gov
jhamburger1@ftc.gov
jsmith3@ftc.gov
kbies@ftc.gov
kdrummonds@ftc.gov
lhough@ftc.gov
abryson@ftc.gov
tzang@ftc.gov
gdixon@ftc.gov
asarmiento@ftc.gov
ltyree@ftc.gov
tgrant1@ftc.gov

*/s/ Nathaniel Lampley, Jr.*
Nathaniel Lampley, Jr.

21