**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

| | |
|---|---|
| THE KROGER CO., | |
|      *Plaintiff*, | No. 1:24-cv-00438-DRC |
| v. | Hon. Douglas R. Cole |
| THE FEDERAL TRADE COMMISSION, *et al.*, | |
|      *Defendants*. | |

**DEFENDANTS' MOTION TO TRANSFER
OR, ALTERNATIVELY, TO STAY**

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Background ................................................................................................................... 2

    I.   The FTC Act and the Clayton Act ................................................................. 2

    II.  The Section 13(b) Proceeding and Other Related Lawsuits ........................... 4

    III.  This Lawsuit ................................................................................................. 8

Argument ...................................................................................................................... 9

    I.   The Court should transfer this case to the District of Oregon for consolidation with the related Section 13(b) proceeding pending therein .................................................................. 9

        A.  The public interest factors counsel in favor of transfer. ............................... 11

        B.  The private interest factors make the District of Oregon no less convenient for the parties than this District. .................................................................. 14

        C.  The interest of justice counsels in favor of transfer. ..................................... 16

    II.  In the alternative, the Court should stay this case pending resolution of the Section 13(b) proceeding. ................................................................................. 19

Conclusion ................................................................................................................. 20

ii

# TABLE OF CONTENTS

## Cases

*Banfield v. UHS Home Attendants, Inc.*,
No. 96-cv-4850, 1997 WL 342422 (S.D.N.Y. June 23, 1997) ................................................ 10

*Bertz v. Norfolk S. Ry.*,
No. 3:03-cv-7011, 2003 WL 21713747 (N.D. Ohio June 25, 2003) ....................................... 10

*Biochem Pharma, Inc. v. Emory Univ.*,
148 F. Supp. 2d 11 (D.D.C. 2001) ........................................................................................ 13

*Bowman v. Tenn. Valley Auth.*,
744 F.2d 1207 (6th Cir.1984) ................................................................................................ 20

*Bray v. HealthSource of Ohio, Inc.*,
No. 1:23-CV-386, 2024 WL 476959 (S.D. Ohio Jan. 24, 2024) ........................................... 20

*DeMoss v. First Artists Prod. Co.*,
571 F. Supp. 409 (N.D. Ohio 1983) ...................................................................................... 15

*DRFP, LLC v. Republica Bolivariana de Venezuela*,
945 F. Supp. 2d 890 (S.D. Ohio 2013) .................................................................................. 15

*Federal Ins. Co. v. CVS Revco D.S., Inc.*,
2009 WL 1707898 (N.D. Ohio June 16, 2009) ...................................................................... 12

*Fla. Nursing Home Ass'n v. Page*,
616 F.2d 1355 (5th Cir. 1980) ............................................................................................... 16

*Ford v. Wilder*,
469 F.3d 500 (6th Cir. 2006) ................................................................................................. 13

*FTC v. EMA Nationwide*,
767 F.3d 611 (6th Cir. 2014) ................................................................................................. 19

*FTC v. IQVIA Holdings Inc.*,
No. 23-cv-06188, 2023 WL 7152577 (S.D.N.Y. Oct. 31, 2023) ........................................... 18

*FTC v. Meta Platforms Inc.*,
No. 5:22-CV-04325-EJD, 2022 WL 16637996 (N.D. Cal. Nov. 2, 2022) .............................. 18

*Griffith v. Menard, Inc.*,
No. 2:18-cv-81, 2018 WL 1907348 (S.D. Ohio Apr. 23, 2018) ............................................ 19

*Holland v. A.T. Massey Coal*,
360 F. Supp. 2d 72 (D.D.C. 2004) ........................................................................................ 11

iii

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 ............................................................................................... 11

*Kay v. Nat'l City Mortg. Co.*,
  494 F. Supp. 2d 845 (S.D. Ohio 2007) ............................................................... 9, 15

*Kerobo v. Sw. Clean Fuels, Corp.*,
  285 F.3d 531 (6th Cir. 2002) .............................................................................. 10

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) ............................................................................................ 19

*Lewis v. ACB Bus. Servs.*,
  135 F.3d 389 (6th Cir. 1998) .............................................................................. 15

*Limited Serv. Corp. v. M/V APL PERU*,
  2010 WL 2105362 (S.D. Ohio May 25, 2010) ....................................................... 12

*Matter of the Coca-Cola Company*,
  117 F.T.C. 795, 1994 WL 16011006 (1994) .......................................................... 13

*Moses v. Business Card Express, Inc.*,
  929 F.2d 1131 (6th Cir. 1991) ............................................................................ 10

*North v. McNamara*,
  47 F. Supp. 3d 635 (S.D. Ohio 2014) .................................................................. 12

*Ohio Envtl. Council v. U.S. Dist. Ct., S.D. Ohio*,
  565 F.2d 393 (6th Cir. 1977) .............................................................................. 19

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ............................................................................................ 15

*Powell v. McCormack*,
  395 U.S. 486 (1969) ............................................................................................ 13

*Proctor & Gamble Co. v. Team Techs., Inc.*,
  No. 1:12-CV-552, 2012 WL 5903126 (S.D. Ohio Nov. 26, 2012) ........................... 11

*Reese v. CNH America, LLC*,
  574 F.3d 315 (6th Cir. 2009) ................................................................................ 9

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
  626 F.3d 973 (7th Cir. 2010) .............................................................................. 16

*Reuben H. Donnelly Corp. v. FTC*,
  580 F.2d 264 (7th Cir. 1978) .............................................................................. 16

*SEC v. Jarkesy*,
    144 S. Ct. 2117 (2024) ............................................................................ 17

*Siler v. Louisville & Nashville R.R. Co.*,
    213 U.S. 175 (1909) ............................................................................... 20

*Starnes Fam. Off., LLC v. McCullar*,
    765 F. Supp. 2d 1036 (W.D. Tenn. 2011) ............................................. 18

*Stewart Organization, Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ............................................................................ 9, 10

*Stewart v. Chesapeake Expl., LLC*,
    No. 2:12-CV-270, 2012 WL 3151255 (S.D. Ohio Aug. 2, 2012) ........... 11

*Tresler Oil Co. v. Champlin Petroleum Co.*,
    530 F. Supp. 696 (S.D. Ohio 1982) .................................................. 11, 13

*United States v. Elkins*,
    300 F.3d 638 (6th Cir. 2002) ................................................................. 20

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ............................................................................... 16

*Zhang v. Chertoff*,
    No. 08-cv-2589, 2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) ............ 16

**Statutes**

5 U.S.C. § 554(d)(2) ..................................................................................... 3

5 U.S.C. §§ 554 ............................................................................................. 3

15 U.S.C. § 18 ............................................................................................... 3

15 U.S.C. § 21 ............................................................................................... 4

15 U.S.C. § 25 ............................................................................................... 4

15 U.S.C. § 26 ............................................................................................... 5

15 U.S.C. § 45 ............................................................................................... 4

15 U.S.C. § 53(b) .......................................................................................... 4

15 U.S.C. §§ 12–27 ....................................................................................... 3

15 U.S.C. §§ 41–58 ....................................................................................... 2

28 U.S.C. § 1331 ............................................................................................................... 9

28 U.S.C. § 1391(c)(2) ...................................................................................................... 9

28 U.S.C. § 1391(e)(1)(A) ............................................................................................... 10

28 U.S.C. § 1391(e)(1)(B) ............................................................................................... 10

**Rules**

Fed. R. Civ. P. 13 ............................................................................................................. 18

**Regulations**

16 C.F.R. § 4.7(b)(1) .......................................................................................................... 3

16 C.F.R. § 3.42 ................................................................................................................. 3

**Other Authorities**

15 Fed. Prac. & Proc. Juris. § 3854 ................................................................................ 16

Pub. L. No. 63-203 ............................................................................................................. 2

Pub. L. No. 63-212 ............................................................................................................. 3

## INTRODUCTION

Plaintiff The Kroger Company ("Kroger") seeks to enjoin the mere possibility that it may be subject to an administrative proceeding, despite the fact that a parallel preliminary injunction proceeding that could moot this case nears resolution in the District of Oregon. On February 26, 2024, the Federal Trade Commission ("the Commission") initiated an administrative proceeding against Kroger and Albertsons Companies, Inc. ("Albertsons") after finding reason to believe that Kroger's proposed acquisition of Albertsons may substantially lessen competition in violation of the nation's antitrust laws. That same day, the Commission also sought a preliminary injunction in the District of Oregon barring Kroger and Albertsons from consummating the proposed acquisition pending resolution of the administrative proceeding.

Both of those proceedings—the underlying administrative proceeding before the Commission and the preliminary injunction proceeding in the District of Oregon—advanced forward as normal, including the completion of full fact discovery and briefing. In the administrative proceeding, an evidentiary hearing formally commenced on July 31, 2024, but the Administrative Law Judge ("ALJ") recessed that hearing at Kroger's request pending completion of the Oregon preliminary injunction proceeding. In the Oregon preliminary injunction proceeding, the parties commenced a three-week evidentiary hearing on August 26, 2024, which is currently set to conclude on September 17, 2024.

On August 19, 2024, however, Kroger filed this lawsuit—six months after the Commission initiated both proceedings and seven days before the three-week evidentiary hearing on the preliminary injunction began in Oregon. Kroger seeks to enjoin the underlying administrative proceeding based on collateral constitutional challenges. In particular, Kroger alleges that: (1) the removal protections on the presiding ALJ violate Article II of the Constitution, and (2) the

1

proceeding involves adjudication of private rights within the executive branch rather than the judicial branch and therefore violates Article III of the Constitution. *See* Compl. for Decl. & Inj. Relief ¶¶ 2–3, ECF No. 1 at PageID 1 ("Compl.").

This Court should not countenance Kroger's belated collateral attack, brought in a different judicial district on the eve of the preliminary injunction hearing in Oregon. Instead, judicial economy counsels in favor of a transfer to the District of Oregon, where the court has been managing the parallel preliminary injunction proceeding for seven months now, including an almost-completed three-week evidentiary hearing. Transfer would allow the same court to adjudicate both the Commission's and Kroger's respective requests for injunctive relief related to the underlying administrative proceeding. Transfer could also save substantial judicial time and resources given both the risk of conflicting or overlapping judgments, the labor the court in the District of Oregon has already expended, and the labor this Court would expend. Alternatively, the Court should stay this case pending resolution of the preliminary injunction proceeding in Oregon, given that resolution of the Oregon proceeding may moot Kroger's claims here.

## BACKGROUND

### I.    The FTC Act and the Clayton Act

Congress established the Commission in 1914 as a bipartisan expert agency composed of five Commissioners. *See* Federal Trade Commission Act of 1914, Pub. L. No. 63-203, 38 Stat. 717, codified as amended at 15 U.S.C. §§ 41–58 ("FTC Act"). The Commission has two core mandates, set forth in Section 5 of the FTC Act: "to prevent" (1) "unfair methods of competition in or affecting commerce," and (2) "unfair or deceptive acts or practices in or affecting commerce." *Id.* § 45(a)(2). The FTC Act provides for the Commission to carry out these mandates through various means, including administrative adjudication, which has been part of the statutory scheme

since 1914. *See id.* § 45 ("Section 5"). The administrative adjudication process set out in Section 5 involves issuance of a complaint and a hearing before the Commission. *See id.* § 45(b). The Commission can then issue a cease-and-desist and divestment order, *see id.* § 45(b), which is subject to judicial review in the courts of appeals, *see id.* § 45(c)–(d).

A few weeks after passing the FTC Act in 1914, Congress enacted the Clayton Act. *See* Clayton Act, Pub. L. No. 63-212, 38 Stat. 730, codified as amended at 15 U.S.C. §§ 12–27. Relevant here, Section 7 of the Clayton Act bars transactions the effect of which "may be substantially to lessen competition, or tend to create a monopoly." 15 U.S.C. § 18. The Clayton Act authorizes the Commission to enforce this prohibition through administrative adjudication. *See id.* § 21 ("Section 11"). The administrative adjudication process set out in the Clayton Act is substantively identical to that provided in the FTC Act. The Commission issues a complaint and holds a hearing, after which it may issue a cease-and-desist and divestment order, *see id.* § 21(b), which is subject to judicial review in the courts of appeals, *see id.* § 21(c)–(d).

The Commission has conducted administrative proceedings under the Clayton Act and the FTC Act since those statutes were enacted 110 years ago. The Commission has conducts administrative hearings in accordance with the Administrative Procedure Act ("APA") since 1946. *See* 5 U.S.C. §§ 554, 556–57. An ALJ conducts the initial hearing and issues a recommended decision, *see* 16 C.F.R. §§ 3.42, .51, which decision the Commission may then adopt, modify, or set aside, *see id.* § 3.54. The parties have discovery and trial rights comparable to those in federal court. *See, e.g.*, *id.* §§ 3.31, .43. The Commission's staff who prosecute the complaint, known as "complaint counsel," are walled off from the Commission decisionmakers once a complaint is issued, as required by the APA and Commission regulations. *See* 5 U.S.C. § 554(d)(2); 16 C.F.R. § 4.7(b)(1).

In 1973, Congress enacted Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), which authorized the Commission to sue in federal court.[1] As relevant here, Section 13(b) authorizes the Commission to seek a preliminary injunction pending the Commission's decision in an administrative proceeding. *See id*. The Commission regularly uses this authority to seek preliminary injunctions to prevent parties from consummating proposed mergers until resolution of the administrative proceeding, as the Commission did in this case.

## II.    The Section 13(b) Proceeding and Other Related Lawsuits

Kroger and Albertsons operate the nation's two largest traditional supermarket chains, and their stores compete head-to-head with each other in numerous local markets. In October 2022, Kroger and Albertsons executed an agreement for Kroger to acquire 100% of Albertsons' equity for $24.6 billion. Compl. ¶ 29. On February 26, 2024, the Commission initiated an administrative proceeding to assess whether the merger may substantially lessen competition and thereby violate Section 7 of the Clayton Act, 15 U.S.C. § 21, and Section 5 of the FTC Act, 15 U.S.C. § 45. *See* Compl. ¶ 35; *In re Kroger Co.*, Dkt. No. 9428 (FTC).[2] The administrative complaint provided notice that an evidentiary hearing would commence on July 31, 2024. *See* Compl. at 23, *In re Kroger Co.*, Dkt. No. 9428 (FTC Feb. 26, 2024), https://perma.cc/3T6W-EC3V.

That same day, the Commission—joined by the State of Oregon, seven other states, and the District of Columbia—also brought suit in the U.S. District Court for District of Oregon ("Section 13(b) proceeding"), seeking a preliminary injunction under Section 13(b) of the FTC Act to enjoin the acquisition pending resolution of the administrative proceeding. *See* Compl. for

---

[1] The Department of Justice also enforces the Clayton Act in federal court under Section 15, which authorizes "United States attorneys, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain . . . violations" of the Clayton Act. 15 U.S.C. § 25.

[2] The full docket for the administrative proceeding, including links to each filing, is available online at: https://www.ftc.gov/legal-library/browse/cases-proceedings/kroger-companyalbertsons-companies-inc-matter.

Temp. Restraining Or. and Inj. Relief (Redacted) ¶ 124, *FTC v. The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.), ECF No. 1 ("Section 13(b) Complaint") (attached as Exhibit A).[3] The Commission filed the suit in the District of Oregon because Kroger and Albertsons both have a substantial presence in Oregon, and they compete head-to-head in multiple local markets therein. As the Commission alleges in its complaint in the Section 13(b) proceeding: "Kroger and Albertsons operate 55 and 121 supermarkets in Oregon, respectively. Combined, Defendants have over 28,000 employees in Oregon. Kroger's Fred Meyer banner is headquartered in Portland, Oregon and Albertsons's Safeway banner has a division office in Oregon as well." *See id.* ¶ 32. Kroger admitted in its answer that venue in Oregon was proper. *See* Def. The Kroger Co.'s Answer & Affirm. Def. ¶ 32, *The Kroger Co.*, No. 24-cv-347 (D. Or. Apr. 29, 2024), ECF No. 90 ("Kroger's Section 13(b) Answer") (attached as Exhibit B).

On February 26, 2024, the parties to the Section 13(b) proceeding stipulated to a temporary restraining order in which Kroger and Albertsons agreed not to consummate the proposed acquisition until five days after that court's resolution of the Commission's motion for a preliminary injunction. *See* Stip. Temp. Restraining Or. 1–2, *The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.), ECF No. 14 (attached as Exhibit C).

Separately, the State attorneys general of Washington and Colorado are also pursuing permanent injunctive relief against Kroger and Albertsons in the Superior Court of the State of Washington, *Washington v. The Kroger Co.*, No. 24-2-00977-9 (King Cty. Sup. Ct.) ("Washington Lawsuit"), and the District Court of the State of Colorado, *Colorado v. The Kroger Co.*, No. 24-cv-30459 (Denver Dist. Ct.) ("Colorado Lawsuit"), respectively. Kroger and Albertsons have also

---

[3] In addition to Oregon and the District of Columbia, the Commission is joined by the States of Arizona, California, Illinois, Maryland, Nevada, New Mexico, and Wyoming. *See* Ex. A ¶¶ 17–25 (Section 13(b) Complaint). The State plaintiffs seek relief under Section 16 of the Clayton Act, which allows private parties to seek injunctive relief for violations of the Act. *See id.* ¶ 26; 15 U.S.C. § 26.

agreed not to close on the proposed acquisition until resolution of the Colorado Lawsuit, in which trial is scheduled to begin on September 30, 2024.

Both the administrative proceeding and the Section 13(b) proceeding thereafter continued onward as normal. In the administrative proceeding, an ALJ was assigned to the case. Compl. ¶ 38. Kroger and Albertsons each filed their respective answers to the administrative complaint on March 11, 2024. Notably, Kroger alleged as affirmative defenses the same arguments it now presents before this Court. Specifically, Kroger claimed that: (1) the assigned ALJ enjoys improper removal protections in violation of Article II and (2) administrative adjudication of the proceeding violates Article III. *See* Answer & Defs. of Respondent The Kroger Co. at 27 ¶¶ 9–10, *In re Kroger Co.*, Dkt. No. 9428 (FTC Mar. 11, 2024) ("Kroger's Administrative Answer"), https://perma.cc/2KBN-ZVWF.

On March 20, 2024, the ALJ held a preliminary scheduling conference and issued a scheduling order. *See* Scheduling Order at 4, *In re Kroger Co.*, Dkt. No. 9428 (FTC Mar. 20, 2024), https://perma.cc/NM6K-C657. On March 26, 2024, Kroger and Albertsons moved the Commission to continue the evidentiary hearing until October 21, 2024, citing allegedly conflicting proceedings in both the Section 13(b) proceeding and the Colorado Lawsuit. *See* Mot. for Continuance of Ev. Hearing at 1, *In re Kroger Co.*, Dkt. No. 9428 (FTC Mar. 26, 2024), https://perma.cc/TT3P-2WH8. The Commission denied that motion, explaining that Kroger and Albertsons "sought the dates" in those parallel court proceedings "that they now argue are in conflict with the already-scheduled administrative hearing." *Id.* at 2. The Commission further explained that, unlike in other cases in which it found good cause to stay an administrative proceeding until resolution of a concurrent Section 13(b) proceeding in federal court, Kroger and Albertsons had not "indicated that they would abandon the proposed transactions if a preliminary

injunction were issued, potentially obviating the need for the administrative hearing completely." *Id.* at 3.

On July 8, 2024, Kroger and Albertsons again sought to delay the evidentiary hearing in the administrative proceeding, this time asking the ALJ for an abeyance of the administrative proceeding pending resolution of "the various parallel litigations." *See* Resps.' Mot. to Recess the Ev. Hearing Portion of the Part 3 Admin. Hearing at 1, *In re Kroger Co.*, Dkt. No. 9428 (FTC July 8, 2024), https://perma.cc/6TKP-4SVN. In particular, Kroger and Albertsons moved to allow the administrative evidentiary hearing to commence as scheduled on July 31, but to immediately recess pending conclusion of the various hearings regarding preliminary and permanent injunctive relief in parallel litigations, including the Section 13(b) proceeding, the Colorado Lawsuit, and the Washington Lawsuit. *See id.*. On July 12, the ALJ granted that motion in part, allowing a recess of the administrative evidentiary hearing until the conclusion of the Section 13(b) evidentiary hearing. *See* Or. on Resps.' Mot. to Recess the Ev. Hearing Portion of the Part 3 Admin. Hearing at 3, *In re Kroger Co.*, Dkt. No. 9428 (FTC July 12, 2024), https://perma.cc/J6LV-EQBD. Consistent with that order, the administrative evidentiary hearing commenced on July 31 and was immediately recessed. No date is currently set for its resumption.

Meanwhile, on March 18, 2024, the district court in the Section 13(b) proceeding set a briefing schedule on the Commission's motion for a preliminary injunction in which the motion would be ripe by August 19, 2024. *See* Unopposed Mot. for Entry of Briefing Schedule, *The Kroger Co.*, No. 24-cv-347 (D. Or. Mar. 18, 2024), ECF No. 82 (attached as Exhibit D); Mar. 18, 2024 Minute Entry (granting motion for entry of briefing schedule). On March 20, 2024, the parties stipulated that discovery could begin on the date of filing that stipulation. *See* Stip. Regarding Commencement of Discovery, *The Kroger Co.*, No. 24-cv-347 (D. Or. Mar. 20, 2024),

ECF No. 84 (attached as Exhibit E). And on April 12, 2024, the court set the evidentiary hearing on the preliminary injunction to begin on August 26, 2024. *See* Case Management and Scheduling Order 19, *The Kroger Co.*, No. 24-cv-347 (D. Or. Aug. 26, 2024), ECF No. 88 (attached as Exhibit F). Kroger and Albertsons both filed their respective answers on April 29, 2024—notably, without any counterclaims or affirmative defenses on the constitutional issues. *See generally* Ex. B (Kroger's Section 13(b) Answer); Def. Albertsons Co., Inc.'s Answer & Affirm. Def. to Compl., *The Kroger Co.*, No. 24-cv-347 (D. Or. Apr. 29, 2024), ECF No. 91 (attached as Exhibit G) (bringing no counterclaims).

The Section 13(b) evidentiary hearing commenced as scheduled on August 26, 2024. In opening statements in that hearing, Kroger stated for the first time that "the outcome of this hearing is going to most certainly be dispositive of whether this merger goes through or not," and "[t]his merger will not occur if this injunction is in place." ECF No. 10-5 at PageID 217, 267 (Rough Tr. at 100:6–7, 150:10–17 (Aug. 26, 2024), *The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.)). The hearing is scheduled to conclude on September 17, 2024.

## III.  This Lawsuit

On August 19, 2024, Kroger filed this suit seeking preliminary and permanent relief enjoining the administrative proceeding—six months after the Commission initiated both the administrative proceeding and the Section 13(b) proceeding, and seven days before the preliminary injunction hearing in the Section 13(b) proceeding began. *See* Compl. Kroger alleges that (1) the assigned ALJ enjoys improper removal protections in violation of Article II and (2) administrative adjudication of the proceeding violates Article III, *see id.* ¶¶ 2–3—just as it did by affirmative defense in the administrative proceeding five months prior, *see* Kroger's Administrative Answer at 27 ¶¶ 9–10.

Kroger has named as defendants the Commission; Lina M. Khan, in her official capacity

as the Chair of the Commission; and Rebecca Kelly Slaughter, Alvaro Bedoya, Melissa Holyoak, and Andrew N. Ferguson in their official capacities as Commissioners. *See* Compl. ¶¶ 6–11. Kroger alleges that venue is proper here under 28 U.S.C. § 1391(c)(2) and (e)(1) because Kroger is incorporated in Ohio and has its principal place of business in Cincinnati. *See id.* ¶¶ 5, 14.

On the same day Kroger filed suit, it also moved for a preliminary injunction. *See* Pl. Kroger's Mot. for a Prelim. Inj., ECF No. 3 ("PI Mot."). Kroger seeks to enjoin the Commission from "proceeding with" the administrative proceeding, and "from initiating any other actions against [Kroger] before the" Commission. *Id.* at 1.

## ARGUMENT

I.   **The Court should transfer this case to the District of Oregon for consolidation with the related Section 13(b) proceeding pending therein.**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it could have been brought." The Sixth Circuit has emphasized that "[a]s the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' makes a transfer appropriate." *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir. 2009). District courts thus "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The threshold consideration under Section 1404(a) is "whether the action 'might have been brought' in the transferee court." *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007). Here, the action could have been brought in the District of Oregon because that court would have subject-matter jurisdiction under 28 U.S.C. § 1331 as an action arising under the Constitution. Venue would be proper in the District of Oregon because "a substantial part of

9

property that is the subject of the action"—Albertsons' grocery stores—is situated in Oregon. *See* 28 U.S.C. § 1391(e)(1)(B); *see also, e.g.*, Compl. ¶¶ 58, 74, PageID 9, 11 (arguing that "Kroger's contract and property rights" are implicated here); PI Mot. 13–14, PageID 49–50 (arguing that this case implicates private rights because "FTC seeks to restrict Kroger's private right to use, purchase, and dispose of property"). As noted above, Kroger and Albertsons operate 55 and 121 supermarkets in Oregon, respectively; they collectively have over 28,000 employees in Oregon; and both companies have significant corporate operations in Oregon. *See* Ex. A ¶¶ 32, 64, 80, 87 (Section 13(b) Complaint); Ex. B ¶ 32 (Kroger's Section 13(b) Answer). Venue would also be proper in the District of Oregon because "a substantial part of the events or omissions giving rise to the claim occurred" in Oregon. 28 U.S.C. § 1391(e)(1)(A). In particular, the alleged antitrust injury at the center of the challenged administrative proceeding will occur in part in Oregon, as the proposed acquisition involves a substantial amount of stores in Oregon and thus an alleged lessening of competition therein. *See* Ex. A ¶¶ 32, 64, 80, 87 (Section 13(b) Complaint); Ex. B ¶ 32 (Kroger's Section 13(b) Answer).[4]

Once a district court confirms that the action could have been brought in the transferee court, the court determines whether transfer would be appropriate by considering private-interest factors including "the convenience of parties and witnesses, 'public-interest factors of systemic integrity,' and private concerns falling under the heading 'the interest of justice.'" *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002) (citation omitted); *see also Moses v.*

---

[4] Venue in the District of Oregon would also be proper if Kroger had brought these constitutional claims as counterclaims to the Section 13(b) proceeding, pursuant to the doctrine of "pendent venue." Under that doctrine, "a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative fact as a properly venued federal claim, even if venue of the pendent claim otherwise would not lie." *Bertz v. Norfolk S. Ry.*, No. 3:03-cv-7011, 2003 WL 21713747, at *1 (N.D. Ohio June 25, 2003) (quoting *Banfield v. UHS Home Attendants, Inc.*, No. 96-cv-4850, 1997 WL 342422, at *2 (S.D.N.Y. June 23, 1997)) (collecting cases).

*Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).  Here, the Court should transfer this case to Oregon for consolidation with the pending Section 13(b) proceeding related to the challenged administrative proceeding because the public-interest factors and the interest of justice strongly favor transfer, and the private-interest factors are neutral.

### A.  The public interest factors counsel in favor of transfer.

The public interest factors counsel strongly in favor of a transfer.  The public interest factors include, among other things, "the pendency of related litigation in another district, judicial economy, the transferee judge's familiarity with the facts and circumstances of the case, and the need to promote the fair and consistent resolution of related cases."  *Stewart v. Chesapeake Expl., LLC*, No. 2:12-CV-270, 2012 WL 3151255, at *4 (S.D. Ohio Aug. 2, 2012).  The Court should transfer this case to Oregon for consolidation with the pending proceeding there, which concerns the administrative proceeding underlying Kroger's constitutional claims here.

Courts regularly transfer cases where a related case is pending in another district.  *See, e.g.*, *Tresler Oil Co. v. Champlin Petroleum Co.*, 530 F. Supp. 696 (S.D. Ohio 1982) (transferring oil company's challenge to recover sales by petroleum in excess of those permitted by price control regulations to district where oil company was engaged in related litigation regarding the price control regulations); *Proctor & Gamble Co. v. Team Techs., Inc.*, No. 1:12-CV-552, 2012 WL 5903126, at *7 (S.D. Ohio Nov. 26, 2012) ("[T]he existence of multiple lawsuits involving the same issues is a *paramount consideration* when determining whether a transfer is in the interests of justice." (quoting *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)).  That interest is especially strong here, where Kroger's claim could have been brought as a counterclaim in the Section 13(b) proceeding.  *See Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 76 (D.D.C. 2004) (transferring case to district with pending case in which "there is no question that the

11

[plaintiffs] could have originally brought this action as a counterclaim").

In considering whether to transfer a case to another district where a related case is pending, "it is not necessary that the case[s] . . . be identical." *Limited Serv. Corp. v. M/V APL PERU*, 2010 WL 2105362, *5 (S.D. Ohio May 25, 2010). The relevant inquiry is whether "substantial savings of judicial time and resources . . . can result from the transfer and the conduct of coordinated proceedings." *Id.* This consideration is given "great weight" even if only "'a portion of [the Court's] labor may be duplicative of the work . . . already done' by another judge." *Id.* (quoting *Federal Ins. Co. v. CVS Revco D.S., Inc.*, 2009 WL 1707898, *5 (N.D. Ohio June 16, 2009)).

Here, transfer would conserve substantial judicial time and resources given both the risk of conflicting or overlapping judgments and the labor the District of Oregon has already expended on familiarizing itself with the underlying facts of this case. *See, e.g.*, *North v. McNamara*, 47 F. Supp. 3d 635, 648 (S.D. Ohio 2014) ("Having the two cases decided in the same forum not only is the most efficient but it avoids inconsistent judgments on the same or a similar set of facts and claims."). First, the claims in this case and the claims in the Section 13(b) proceeding bear directly upon each other such that resolution of one set of claims (preliminarily or otherwise) may preclude or at the very least disrupt proceedings on the other set of claims and lead to confusion and conflicting judgments. For example, allowing both cases to proceed separately could result in both a preliminary injunction barring Kroger and Albertsons from consummating the proposed acquisition, and a preliminary injunction barring the Commission from moving forward with the administrative proceeding.[5] Such a result would lead to further proceedings in both courts and

---

[5] As Defendants explain in their simultaneously filed opposition to Kroger's motion for a preliminary injunction, ECF No. 15, Kroger is not entitled to a preliminary injunction because Kroger fails to establish likely success on the merits of either of its constitutional claims; fails to establish irreparable harm, especially given the possibility that the administrative proceeding may never occur; and fails to establish that the balance of equities counsel in favor of a preliminary injunction.

could also result in parallel appeals in two different circuits. Allowing the same district court to consider both sets of claims would thus reduce the prospect of inconsistent adjudications. *See, e.g.*, *Tresler Oil Co.*, 530 F. Supp. at 696. Given that the Oregon case has now been ongoing for seven months, including three weeks of evidentiary hearing presumptively set to conclude on September 17, that case should take precedence.

Furthermore, a decision in the Section 13(b) proceeding could directly affect the justiciability of Kroger's constitutional claims. For example, as Kroger admitted in the Section 13(b) hearing, "the outcome of this [Section 13(b)] hearing is going to most certainly be dispositive of whether this merger goes through or not," and "[t]his merger will not occur if this injunction is in place." ECF No. 10-5 at PageID 217, 267 (Rough Tr. at 100:6–7, 150:10–17 (Aug. 26, 2024), *FTC v. The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.)). If Kroger and Albertsons abandon the proposed acquisition following an adverse decision in Oregon, that may render moot Kroger's constitutional claims challenging the administrative proceeding. *See Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969))). It makes little sense to allow this case to proceed on an entirely separate but simultaneous track when resolution of the Section 13(b) proceeding may ultimately moot or obviate the need for further proceedings here. *See, e.g.*, *Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 13 (D.D.C. 2001) (transferring case to district with related case because the two cases were "inextricably related").[6]

---

[6] In the status conference on September 13, 2024, Kroger suggested that this case may remain live even if Kroger and Albertsons abandon the proposed merger because the Commission may still pursue prospective relief in the administrative proceeding. Although the Commission has the authority to maintain an administrative case after the parties abandon a merger, it has historically done so only in rare circumstances. *See, e.g.*, *In the Matter of the Coca-Cola Company*, 117 F.T.C. 795, 1994 WL 16011006,

Finally, this Court is certainly well equipped to adjudicate Kroger's constitutional claims against the Commission, but so is the transferee court, which has the benefit of being able to do so as an addendum to the Section 13(b) proceeding. The District of Oregon court has been managing that proceeding for seven months, including three weeks of evidentiary hearing. That litigation has moved expeditiously: the parties have filed their respective pleadings; completed full fact discovery, including depositions and multiple resolved discovery disputes; participated in multiple scheduling and status conferences; completed briefing on the Commission's motion for a preliminary injunction; and nearly completed a three-week evidentiary hearing on that motion. The District of Oregon court is thus already intimately familiar with the statutory background of the Clayton Act and the FTC Act; the factual history of this broader matter, including the parties and the proposed acquisition; the procedural history of the matter, including the administrative proceeding and the various related state proceedings in Colorado and Washington; the factual and legal issues to be decided in the administrative proceeding; and the various public and private equities involved, including the public interest in preventing harm to competition.

Accordingly, the public interest factors favor transfer given the substantial risk of overlapping or conflicting judgments and the District of Oregon court's familiarity with the background of this case.

### B. The private interest factors make the District of Oregon no less convenient for the parties than this District.

The private interest factors include "the relative ease of access to sources of proof" and

---

¶ 376 (1994). Thus, if Kroger and Albertsons were to abandon the merger following an adverse decision in Oregon, there is at the very least a substantial possibility that the Commission will terminate the administrative proceeding on the grounds that it is no longer needed to protect the public interest. Such a determination would moot this case. Kroger's baseless speculation that it may still be subject to an administrative proceeding seeking prospective relief does not overcome the strong interest in a transfer or stay.

witnesses "and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 850 (S.D. Ohio 2007) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). With respect to those factors, the District of Oregon is just as convenient for the parties as this District.

First, although a plaintiff's choice of forum is generally entitled to substantial weight, "this factor is not dispositive." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998) (citing *DeMoss v. First Artists Prod. Co.*, 571 F. Supp. 409, 413 (N.D. Ohio 1983)). Where, as here, "the cause of action has little connection with the chosen forum, the Plaintiff's choice of forum is to be given less weight than such choice would be given otherwise." *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 902–03 (S.D. Ohio 2013) (citation omitted).

Indeed, here, the sole connection between this case and this district is that Kroger is incorporated in Ohio and maintains its principal place of business in Cincinnati. *See* Compl. ¶ 14. But "this fact alone is not dispositive"—rather, Kroger's "choice to locate its headquarters in Ohio is potentially significant for present purposes only to the extent that it implicates other factors" relevant to the venue inquiry. *Kay*, 494 F. Supp. 2d at 851 (finding private factors neutral where plaintiff's residence was case's only connection to Ohio). And no other factor is relevant here. None of the core events giving rise to Kroger's constitutional claims took place in Ohio. Rather, the underlying administrative proceeding occurred exclusively in the District of Columbia. Kroger conducts business throughout the nation, including in Oregon, so the residents of Ohio have no greater interest than those of Oregon. And this case involves purely legal questions, with no need for corporate witnesses who may or may not be located in Ohio. Even to the extent that declarations may be required to support Kroger's assertion of irreparable harm, both parties have preliminarily represented at status conferences with this Court on August 22 and September 13,

15

2024, that they did not anticipate the need for witnesses. And given that this case primarily involves questions of constitutional review of federal statutes, the District of Oregon court is just as capable of deciding those questions as this Court. Finally, the Commission itself resides in the District of Columbia.[7] Accordingly, the private factors are neutral.

### C. The interest of justice counsels in favor of transfer.

The interest of justice favors transferring Kroger's belated constitutional challenge for consolidation with the ongoing Section 13(b) proceeding in Oregon, thus allowing one court to adjudicate both parties' respective requests for injunctive relief related to the Commission's administrative proceeding. "[T]he interest of justice is a factor . . . to be considered on its own" and may be "decisive . . . even when the other statutory factors of convenience of the parties and witnesses point in a different direction." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) (collecting cases); *see also Van Dusen v. Barrack*, 376 U.S. 612, 626–27 (1964); *cf. Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (noting the public factors collectively "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result"). Here, the interest of justice strongly favors transferring this case to Oregon.

Kroger filed suit here seeking to immediately enjoin the administrative proceeding despite the *Commission's* ongoing Section 13(b) suit in the District of Oregon seeking injunctive relief

---

[7] *See Zhang v. Chertoff*, No. 08-cv-2589, 2008 WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) ("Federal defendants are generally deemed to reside in the District of Columbia."); *accord Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980), *rev'd on other grounds*, *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981) ("The general rule in suits against public officials is that a defendant's residence for venue purpose[s] is the district where he performs his official duties."); *Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978) ("To hold that a federal agency can be sued . . . wherever it maintains an office would, as a practical matter, render [§ 1391(e)'s other subsections] superfluous" because most federal agencies likely maintain offices in "most, if not all, judicial districts.").

against *Kroger* related to the same administrative proceeding. Kroger has long had knowledge of both proceedings. Kroger learned that it would be subject to both the administrative proceeding and the Section 13(b) proceeding on February 26, 2024—six months before Kroger filed the instant suit. Kroger also learned on February 26, 2024, that the Section 13(b) evidentiary hearing in Oregon would begin on August 26, 2024. Nonetheless, Kroger neglected to raise its constitutional claims as counterclaims in the Oregon Section 13(b) proceeding, and instead waited until seven days before the Oregon hearing began to seek emergency relief in this district.

Kroger also delayed seeking any relief even as the clock ran down on the administrative evidentiary hearing. Although the administrative evidentiary hearing is stayed, that stay was granted only recently. The administrative complaint filed on February 26 indicated that the administrative evidentiary hearing would begin on July 31. But Kroger sought no relief from any federal court in advance of the original hearing date. Instead, Kroger asked only that the ALJ stay the administrative hearing, which request the ALJ granted on July 12. *See* Or. on Resps.' Mot. to Recess the Ev. Hearing Portion of the Part 3 Admin. Hearing at 3, *In re Kroger Co.*, Dkt. No. 9428 (FTC July 12, 2024), https://perma.cc/J6LV-EQBD (continuing the evidentiary hearing until the conclusion of the Section 13(b) hearing).

There is no reason for Kroger to have delayed bringing its constitutional claims in federal court until now, nor for it to have filed this delayed action as a separate lawsuit rather than as a counterclaim in the preexisting Section 13(b) proceeding. The pendency of *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), does not justify its delay. Kroger raised the same claims it brings here as affirmative defenses in the administrative proceeding, and it filed those defenses on March 11, 2024—well in time to have included those arguments as counterclaims to the Commission's complaint in the District of Oregon. *See* Kroger's Administrative Answer at 27 ¶¶ 9–10. Despite

17

that, Kroger made no mention in the Section 13(b) proceeding of its constitutional objections to the administrative proceeding. In any event, the Supreme Court decided *Jarkesy* on June 27, 2024, yet Kroger still waited to file until the week before the Section 13(b) evidentiary hearing began.

Nor can Kroger justify its delay or the separate lawsuit by relying on the Commission's positions in prior Section 13(b) cases regarding the impropriety of bringing collateral constitutional challenges as affirmative defenses. That position is not indicative of any position regarding the parties' ability to assert constitutional claims as counterclaims. Counterclaims assert distinct legal claims against the agency, *see* Fed. R. Civ. P. 13, and thus are different from affirmative defenses, *see, e.g.*, *Starnes Fam. Off., LLC v. McCullar*, 765 F. Supp. 2d 1036, 1048 (W.D. Tenn. 2011) ("An affirmative defense is an 'assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." (quoting *Black's Law Dictionary* (9th ed. 2009))). Indeed, the Commission has explained—and courts have agreed—that such constitutional challenges cannot be brought as affirmative defenses and instead must be evaluated as counterclaims. *See e.g.*, *FTC v. IQVIA Holdings Inc.*, No. 23-cv-06188, 2023 WL 7152577, at *6 (S.D.N.Y. Oct. 31, 2023) (distinguishing plaintiff's constitutional affirmative defenses from potential constitutional counterclaims); *FTC v. Meta Platforms Inc.*, No. 5:22-CV-04325-EJD, 2022 WL 16637996, at *3 (N.D. Cal. Nov. 2, 2022) (same); *see also* Pl.'s Mem. of Law in Support of its Mot. to Strike at 18, *FTC v. IQVIA Holdings Inc.*, No. 23-cv-06188 (S.D.N.Y. Sept. 20, 2023) ("*IQVIA* Mot. to Strike") (attached as Exhibit H). Moreover, to the extent the Commission has previously suggested that collateral constitutional claims could be brought as separate lawsuits, that suggestion did not contemplate a separate lawsuit brought in an entirely different district six months after the administrative proceeding and the Section 13(b) proceeding had already begun and days before the Section 13(b) evidentiary hearing was set to begin.

Parties should not be encouraged to seek emergency relief in an entirely separate court while related claims are pending—let alone six months after initiation of those related claims and on the eve of the hearing in such proceeding. Condoning such tactics would give defendants in Commission merger cases two bites at the apple: arguing to one court that they will likely succeed on the antitrust merits in the administrative proceeding, and then arguing to another court that regardless of the antitrust merits, the administrative proceeding is unconstitutional. Accordingly, the interest of justice favors transferring Kroger's belated claims to the District of Oregon, where they can be consolidated with the preexisting proceeding.

## II.   In the alternative, the Court should stay this case pending resolution of the Section 13(b) proceeding.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *FTC v. EMA Nationwide*, 767 F.3d 611 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Ct., S.D. Ohio*, 565 F.2d 393, 396 (6th Cir. 1977)); *see also Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Although there is no precise test for considering when a stay of further proceedings is appropriate, courts often consider "(1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (4) whether a stay will simplify the issues; and (5) whether burden of litigation will be reduced for both the parties and the court." *Griffith v. Menard, Inc.*, No. 2:18-CV-81, 2018 WL 1907348, at *2 (S.D. Ohio Apr. 23, 2018).

For similar reasons as explained above, if the Court declines to transfer this case to the District of Oregon, it should stay further proceedings pending resolution of the Section 13(b) proceeding. Courts regularly stay proceedings pending resolution in similar cases in the interest

19

of judicial economy.  *See, e.g.*, *N.B. by Bray v. HealthSource of Ohio, Inc.*, No. 1:23-CV-386, 2024 WL 476959, at *2 (S.D. Ohio Jan. 24, 2024).  A stay could significantly reduce the burden on both the Court and the parties, as resolution of the Section 13(b) proceeding may result in adjournment or dismissal of the administrative proceeding, thus negating the need for further proceedings here.  Kroger would not be prejudiced by a modest stay.  As previously explained, there is no date currently set for the administrative proceeding to recommence.  And a decision in the Section 13(b) proceeding is expected reasonably soon after the September 17, 2024 evidentiary hearing and post-hearing briefing, if any, directed by that court.  Waiting for resolution in the Section 13(b) proceeding will thus conserve both judicial and party resources.

The principle of constitutional avoidance also counsels in favor of a stay here.  *See United States v. Elkins*, 300 F.3d 638, 647 (6th Cir. 2002) ("Courts should avoid unnecessary constitutional questions."); *Bowman v. Tenn. Valley Auth.*, 744 F.2d 1207, 1211 (6th Cir.1984) ("[W]e follow the longstanding practice of the Supreme Court . . . [in declining] to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." (quotation marks and citation omitted)); *Siler v. Louisville & Nashville R.R. Co.*, 213 U.S. 175, 193 (1909) ("Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons.").  As explained, a modest stay may negate the need for further proceedings and thereby allow this court to avoid an unnecessary constitutional ruling.

## CONCLUSION

For the foregoing reasons, the Court should transfer this case to the District of Oregon or, alternatively, stay further proceedings pending resolution in *FTC v. The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.).

Dated: September 16, 2024     Respectfully submitted,

            BRIAN M. BOYNTON
            Principal Deputy Assistant Attorney General
            Civil Division

            BRIAN D. NETTER
            Deputy Assistant Attorney General

            CHRISTOPHER R. HALL
            Assistant Branch Director

            */s/ Cassandra M. Snyder*
            CASSANDRA SNYDER
            Trial Attorney
            Department of Justice
            Federal Programs Branch
            1100 L Street, N.W., Washington, DC 20005
            Tel: (202) 451-7729
            Email: cassandra.m.snyder@usdoj.gov

            *Counsel for Defendants*