**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

THE KROGER CO.,

     *Plaintiff*,

v.

THE FEDERAL TRADE COMMISSION, *et al.*,

     *Defendants*.

No. 1:24-cv-00438-DRC
Hon. Douglas R. Cole

**DEFENDANTS' OPPOSITION TO KROGER'S
MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION........................................................................................................ 1

BACKGROUND ......................................................................................................... 3

ARGUMENT .............................................................................................................. 3

I.      Kroger cannot establish a likelihood of success on its ALJ removal claim. ................ 3

      A.      Kroger fails to establish harm, as required under *Collins*. ................................ 4

Kroger's removal claim fails at the outset because Kroger does not establish harm, as required under the Supreme Court's decision in *Collins v. Yellen*, 594 U.S. 220, 259 (2021). The Sixth Circuit recently confirmed that *Collins* "provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause' harm; to the challenging party." *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023). Kroger has not even attempted to establish the requisite harm here. And Kroger's assertions of irreparable harm in support of preliminary injunctive relief do not suffice.

      B.      Commission ALJs' removal protections are constitutional. .............................. 6

            a.      The MSPB's review for "good cause" does not render the ALJs' protections unconstitutional. ................................................... 8

The removal protections for MSPB members does not create an additional layer of removal protection for Commission ALJs. An ALJ is removable "by the agency in which the [ALJ] is employed," 5 U.S.C. § 7521(a), not by the MSPB. The MSPB's role is merely to hold a hearing and determine whether the requisite "good cause" exists if the agency removes an ALJ and the ALJ challenges that removal decision.

            b.      Regardless, Commission ALJs' removal protections are constitutional. .......................................................................... 9

Plaintiffs' attempt to compare Commission ALJs' removal protections to those found unconstitutional in *Free Enterprise Fund. v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), fails. The Sixth Circuit explained in *Calcutt* that *Free Enterprise Fund* "provides weak support" for removal claims like Kroger's because it "explicitly excludes ALJs from its prohibition on multiple levels of for-cause removal protection." 37 F.4th at 318. And indeed, the limited removal protections afforded to Commission ALJs fall comfortably within the bounds of Congress's authority. Commission ALJs perform adjudicative rather than enforcement or

policymaking functions; the Commission has significant control over the ALJs, including the ability to modify or set aside any portion of the ALJs' recommendations; and the "good cause" standard for removing ALJs gives the Commission more control over the removal of ALJs than the protections invalidated in *Free Enterprise Fund*.

**C.** **Kroger is not entitled to injunctive relief because the removal protections are severable in any event.** ............................................................... **13**

Even if Kroger had shown harm (which it has not), and even if it had established that the removal protections were unconstitutional (which it has not), the proper remedy would be severance of the offending removal provisions, not injunctive relief. The Supreme Court has taken this approach in every instance over the past fifteen years in which it has found a structural constitutional defect in the appointment or removal provisions of a statute.

**II.** **Kroger fails to establish likelihood of success on its Article III claim.** ...................... **14**

**A.** **The Commission adjudicates public rights under the Clayton Act and the FTC Act.** ........................................................................................................ **15**

The Supreme Court established long ago that Commission proceedings to enforce the FTC Act and the Clayton Act involve public rights that may be adjudicated administratively. *See, e.g.*, *Crowell v. Benson*, 285 U.S. 22, 50–51 & n.13 (1932). Moreover, Congress's careful delineation of the Commission's role relative to that of the courts further establishes that the Commission did not intend to encroach on the judicial branch.

**B.** ***Jarkesy* does not upend this century-old statutory scheme.** ............................ **17**

The Supreme Court's recent decision in *Securities and Exchange Commission v. Jarkesy*, 144 S. Ct. 2117 (2024), did not upend this century-old statutory scheme. *Jarkesy* was a Seventh Amendment case that did not consider how Article III applies to administrative adjudication where, as here, the claims do not implicate the right to a jury trial. In any event, *Jarkesy* held only that an SEC securities fraud enforcement action to recover civil money penalties was not a public-rights matter, and civil penalties are not at issue here.

**C.** **The Clayton Act and the FTC Act created rights distinct from the common law.** ........................................................................................................ **19**

The novelty of the statutory scheme under the Clayton Act and the FTC Act further confirms that this matter involves public rights. The Clayton Act and the FTC Act "did not borrow . . . cause[s] of action from the common law," nor was their "purpose" "to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law." *Jarkesy*, 144 S. Ct. at 2137. Instead,

both statutes created novel statutory duties as between the Government and private parties to protect the public by preserving competition. Indeed, Congress "explicitly considered, and rejected" the idea of tying the FTC Act "to a common-law or statutory standard." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 243 (1972). Similarly, Congress enacted the Clayton Act in response to deficiencies in the Sherman Act, which itself was distinct from the common law. The Clayton Act and the FTC Act were therefore intended to address a far broader scope of conduct not previously considered by the common law.

D.      **Kroger's arguments to the contrary are unavailing.** ........................................ 21

First, Kroger fails to establish any serious similarity between the common-law concept of "restraints of trade" and the violations of which it has been accused— "an unfair method of competition" in violation of Section 5 of the FTC Act and a proposed acquisition, which, "if consummated, may substantially lessen competition" in violation of Section 7 of the Clayton Act. Second, the administrative proceeding does not involve private rights merely because they implicate Kroger's property rights, as "[m]any matters that involve the application of legal standards to facts and affect private interests are routinely decided by agency action with limited or no review by Article III courts." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 583 (1985). Third, overturning more than a century of precedent allowing the Commission to adjudicate these types of claims would indeed "dismantle the statutory scheme" and "impede swift resolution" of the statutory claims. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 60–63 (1989).

III.     **Kroger has not established irreparable harm.** ............................................................... 25

Kroger articulates three purportedly irreparable harms. First, the burden of being subject to further proceedings is not an irreparable harm. Kroger's reliance on *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), is misplaced, as that case involved a jurisdictional inquiry that "did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief." *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 758 (10th Cir. 2024). Moreover, Kroger's assertion that the administrative proceeding will restart at all is speculative given the risk that those proceedings may be rendered moot depending on the resolution of the preliminary injunction proceeding in the District of Oregon. Second, the Supreme Court has repeatedly confirmed that litigation costs of further administrative proceedings is not an irreparable harm. *See, e.g.*, *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974). Third, Kroger fails to explain how alleged "ongoing uncertainty" regarding the fate of the proposed acquisition is an imminent or irreparable injury requiring the Court to grant relief now. Indeed, a preliminary injunction would not even resolve this alleged "uncertainty." Finally, Kroger's own delay in filing for injunctive relief counsels against any finding that Kroger is entitled to relief now.

**IV.    The balance of the equities and the public interest weigh in the Government's favor.** ................................................................................................................... **29**

The balance of equities and the public interest weigh against relief here because the public has a strong interest in enforcement of the FTC Act, which protects the public from "unfair or deceptive acts or practices," 15 U.S.C. § 45(a), and the Clayton Act, which protects the public from transactions which "may substantially lessen competition," 15 U.S.C. § 18. And Kroger has not shown that it will suffer any harm from proceeding through the scheduled hearing, especially since Kroger may seek review of the outcome in federal court.

**CONCLUSION** ................................................................................................................. **30**

# TABLE OF AUTHORITIES

## Cases

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935) ................................................................................ 17, 19, 24

*Abrams v. SSA*,
  703 F.3d 538 (Fed. Cir. 2012) ............................................................................. 11

*Alivio Medical Center v. Jennifer Abruzzo*,
  No. 24-cv-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024) ............................................ 12

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*,
  511 F. App'x 398 (6th Cir. 2013) ............................................................................. 28

*Am. Airlines v. N. Am. Airlines*,
  351 U.S. 79 (1956) ....................................................................................... 16

*AMG Cap. Mgmt., LLC v. FTC*,
  593 U.S. 67 (2021) ................................................................................ 16, 18, 25

*Apex Hosiery Co. v. Leader*,
  310 U.S. 469 (1940) ....................................................................................... 22

*Arkansas Wholesale Grocers' Ass'n v. FTC*,
  18 F.2d 866 (8th Cir. 1927) ............................................................................. 17

*Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023) ................................................................................ 2, 25, 26

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) ................................................................................ 15, 21

*Calcutt v. FDIC*,
  37 F.4th 293 (6th Cir. 2022) ............................................................................. *passim*

*Calcutt v. FDIC*,
  598 U.S. 623 (2023) ....................................................................................... 4

*City of Arlington, Tex. v. FCC*,
  569 U.S. 290 (2013) ................................................................................ 16, 17

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) ............................................................................. 5

*Collins v. Yellen*,
  594 U.S. 220 (2021) ....................................................................................... *passim*

*Commodity Futures Trading Comm'n v. Schor*,
  478 U.S. 833 (1986) ....................................................................................... 23

*Commonwealth v. Biden*,
    57 F.4th 545 (6th Cir. 2023) ........................................................................ 27

*Consumer Fin. Prot. Bureau v. Law Offices of Crystal Moroney, P.C.*,
    63 F.4th 174 (2d Cir. 2023) ............................................................................ 5

*Crowell v. Benson*,
    285 U.S. 22 (1932) ............................................................................... *passim*

*D.T. v. Sumner Cnty. Sch.*,
    942 F.3d 324 (6th Cir. 2019) ................................................................. 25, 27

*Decker Coal Co. v. Pehringer*,
    8 F.4th 1123 (9th Cir. 2021) ....................................................................... 12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    537 F.3d 667 (D.C. Cir. 2008) ................................................................. 9, 10

*Free Enter. Fund. v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ............................................................................. *passim*

*Friendship Materials, Inc. v. Mich. Brick, Inc.*,
    679 F.2d 100 (6th Cir. 1982) ....................................................................... 25

*FTC v. Algoma Lumber Co.*,
    291 U.S. 67 (1934) ...................................................................................... 20

*FTC v. Cement Institute*,
    333 U.S. 683 (1943) ............................................................................... 15, 25

*FTC v. Colgate-Palmolive Co.*,
    380 U.S. 374 (1965) .................................................................................... 20

*FTC v. Dean Foods Co.*,
    384 U.S. 597 (1966) .................................................................................... 18

*FTC v. Eastman Kodak Co.*,
    274 U.S. 619 (1927) .................................................................................... 15

*FTC v. Morton Salt Co.*,
    334 U.S. 37 (1948) ............................................................................. 15-16, 25

*FTC v. Procter & Gamble Co.*,
    386 U.S. 568 (1967) .................................................................................... 20

*FTC v. R.F. Keppel & Bro.*,
    291 U.S. 304 (1934) ............................................................................... 19, 20

*FTC v. Radalam Co.*,
    283 U.S. 643 (1931) ............................................................................... 19, 20

*FTC v. Sperry & Hutchinson Co.*,
    405 U.S. 233 (1972) ............................................................................................ 19

*FTC v. Standard Oil Co. of Calif.*,
    449 U.S. 232 (1980) ............................................................................................ 27

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33–63 (1989) .................................................................................. 24, 25

*H&R Block Inc. v. Himes*,
    No. 24-00198-CV-W-BP, 2024 WL 3742310 (W.D. Mo. Aug. 1, 2024) ....... 10, 12

*Holloway v. Bristol-Myers Corp.*,
    485 F.2d 986 (D.C. Cir. 1973) ........................................................................... 16

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) ............................................................................................ 20

*Huron Mountain Club v. U.S. Army Corps of Engineers*,
    545 F. App'x 390 (6th Cir. 2013) ....................................................................... 28

*International Shoe Co. v. FTC*,
    280 U.S. 291 (1930) .................................................................................. 14-15, 24

*Jacob Siegel Co. v. FTC*,
    327 U.S. 608 (1946) ............................................................................................ 18

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ............................................................................... 12

*K & R Contractors, LLC v. Keene*,
    86 F.4th 135 (4th Cir. 2023) ................................................................................. 5

*Kaufmann v. Kijakazi*,
    32 F.4th 843 (9th Cir. 2022) ................................................................................. 5

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
    103 F.4th 748 (10th Cir. 2024) ................................................................. 5, 12, 26

*Maryland v. King*,
    567 U.S. 1301 (2012) .......................................................................................... 29

*McNeilly v. Land*,
    684 F.3d 611 (6th Cir. 2012) ................................................................................. 3

*Meta Platforms, Inc. v. FTC*,
    No. 23-cv-3562 (RDM), 2024 WL 1121424 (D.D.C. Mar. 15, 2024) ........... 23, 24

*Mistretta v. United States*,
    488 U.S. 361 (1989) ............................................................................................ 16

*Morrison v. Olson*,
    487 U.S. 654 (1988) ........................................................................... 7, 8, 11

*Murray v. Hoboken Land & Imp. Co.*,
    59 U.S. 272 (1855) ..................................................................................... 14

*Myers v. United States*,
    272 U.S. 52 (1926) ....................................................................................... 6

*Nash v. Califano*,
    613 F.2d 10 (2d Cir. 1980) ......................................................................... 7

*Nat'l Harness Mfrs.' Ass'n v. FTC*,
    268 F. 705 (6th Cir. 1920) ............................................................. 15, 17, 24

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................... 3, 28

*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937) ...................................................................................... 18

*Oregon Steam Nav. Co. v. Winsor*,
    87 U.S. 64 (1873) .................................................................................. 22-23

*Ostler Candy Co. v. FTC*,
    106 F.2d 962 (10th Cir. 1939) ................................................................. 17

*Pan Am. World Airways, Inc. v. United States*,
    371 U.S. 296 (1963) ............................................................................ 15, 20

*Priorities USA v. Nessel*,
    860 F. App'x 419 (6th Cir. 2021) ........................................................... 29

*Ramspeck v. Fed. Trial Exam'rs Conf.*,
    345 U.S. 128 (1953) ................................................................................... 7

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
    415 U.S. 1 (1974) ...................................................................................... 27

*Sears, Roebuck & Co. v. FTC*,
    258 F. 307 (7th Cir. 1919) ........................................................................ 17

*Securities Exchange Commission v. Jarkesy*,
    144 S. Ct. 2117 (2024) ...................................................................... *passim*

*Seila Law v. CFPB*,
    591 U.S. 197 (2020) ......................................................................... 6, 13, 26

*SSA v. Levinson*,
    2023 M.S.P.B. 20–38 (2023) ..................................................................... 8

*Stern v. Marshall,*
    564 U.S. 462 (2011) ........................................................................ 21

*Thomas v. Union Carbide Agricultural Products Co.,*
    473 U.S. 568 (1985) ................................................................... 18, 23

*United States v. Addyston Pipe & Steel Co.,*
    85 F. 271 (6th Cir. 1898) ............................................................... 22

*United States v. Arthrex, Inc.,*
    594 U.S. 1 (2021) ......................................................................... 13

*United States v. Cavazos,*
    950 F.3d 329 (6th Cir. 2020) ........................................................... 4

*United States v. Elkins,*
    300 F.3d 638 (6th Cir. 2002) ........................................................... 6

*United States v. Perkins,*
    116 U.S. 483 (1886) ....................................................................... 6

*United States v. Philadelphia Nat. Bank,*
    374 U.S. 321 (1963) ..................................................................... 23

*Walmart Inc. v. King, No. CV 623-040,*
    2024 WL 1258223 (S.D. Ga. Mar. 25, 2024) .................................. 12

*YAPP USA Automotive Sys., Inc. v. Nat. Labor Rel. Bd.,*
    No. 24-cv-12173, 2024 WL 4119058 (E.D. Mich. Sept. 9, 2024) ........................ 6, 10, 12, 26

## Statues

5 U.S.C. § 1202 ........................................................................................ 7

5 U.S.C. § 7521 ..................................................................................... 7, 8

15 U.S.C. § 18 ........................................................................................ 29

15 U.S.C. § 21 .................................................................................... 16, 18

15 U.S.C. § 45 ......................................................................... 16, 18, 19, 29

15 U.S.C. § 53 .................................................................................... 24, 25

15 U.S.C. § 57 ........................................................................................ 16

## Regulations

16 C.F.R. § 3.54 .................................................................................... 11

16 C.F.R. §§ 3.42, 3.51–.54 .................................................................... 11

## Other Authorities

16 C.F.R. § 3.54 .................................................................................... 11

16 C.F.R. §§ 3.42, 3.51–.54 ................................................................................ 11

H.R. Conf. Rep. No. 1142, 63d Cong., 2d Sess. 19 (1914) ................................ 19, 20

S. Rep. No. 63-698 (1913) ................................................................................ 20, 21

S. Rep. No. 221, 75th Cong., 1st Sess. (1937) ................................................... 16

S. Rep. No. 597, 63d Cong., 2d Sess. (1914) .................................................... 20

**INTRODUCTION**

Plaintiff The Kroger Company ("Kroger") seeks to prevent the Federal Trade Commission ("Commission") from examining its proposed acquisition of Albertsons Companies, Inc. ("Albertsons")—and to disrupt a parallel preliminary injunction proceeding in the District of Oregon—by seeking a belated preliminary injunction before this Court.  As set forth in Defendants' simultaneously filed Motion to Transfer or, Alternatively, to Stay, ECF No. 14, this Court should transfer this case to the District of Oregon or stay it pending resolution of that proceeding.  If the court declines to do so, the Court should deny Kroger's motion for a preliminary injunction because Kroger has not shown either a likelihood of success or that it will suffer irreparable injury absent an injunction.

Kroger first alleges that the double-layer removal protection afforded to Commission Administrative Law Judges ("ALJs") violates Article II of the Constitution.  But Kroger's removal claim fails at the outset because Kroger does not establish any harm, as required under the Supreme Court's decision in *Collins v. Yellen*, 594 U.S. 220, 259 (2021).  Even were the Court to reach the constitutional merits—which it need not—the Sixth Circuit has already explained that ALJ removal protections are constitutional.  In any event, Kroger would not be entitled to an injunction on its ALJ claim regardless because the proper remedy for any unconstitutional removal provision would be severance of that provision, not an injunction of the administrative proceeding.

Kroger next alleges that the Supreme Court's recent decision in *Securities and Exchange Commission v. Jarkesy*, 144 S. Ct. 2117 (2024), upends a century-old statutory scheme allowing the Commission to assess harm to competition through administrative adjudication.  Kroger's argument that such administrative proceedings involve adjudication of private rights within the executive branch is contrary to Supreme Court precedent.  The Supreme Court established long

ago that Commission proceedings to enforce the Clayton Act, 15 U.S.C. §§ 12–27, and the Federal Trade Commission Act, 15 U.S.C. §§ 41–58 ("FTC Act"), involve public rights that may be adjudicated administratively. Moreover, both Acts created new causes of action that did not derive from the common law. Thus, even if *Jarkesy* implicated Article III questions—which the Supreme Court made clear it did not—Kroger's Article III claim would still fail.

This Court should deny Kroger's motion for a preliminary injunction for the additional, independent reason that Kroger has not shown that it will suffer irreparable harm absent an injunction. First, Kroger's assertion of irreparable harm based on the burden of being subject to further administrative proceedings is premised on a misreading of *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). Moreover, resolution of the parallel preliminary injunction proceeding in the District of Oregon may preclude further administrative proceedings anyway. Second, Kroger's invocation of the litigation costs of further administrative proceedings fails because the Supreme Court has conclusively determined that such costs do not constitute irreparable injury. Finally, Kroger's vaguely alleged harm regarding "uncertainty" about the fate of the proposed acquisition would not even be resolved by preliminary injunctive relief. In addition, Kroger has undermined any assertion of imminent harm by waiting six months to seek this preliminary injunction, and belatedly filing this lawsuit only seven days before commencement of the preliminary injunction hearing in the District of Oregon. Finally, the balance of the equities weighs against relief here given the public's substantial interest in enforcement of the nation's antitrust laws.

Accordingly, if this Court does not transfer this case to the District of Oregon or alternatively stay further proceedings pending resolution in the related case in the District of Oregon, it should deny Kroger's motion for a preliminary injunction.

## BACKGROUND

Defendants have laid out the relevant background in their simultaneously filed Motion to Transfer or, Alternatively, to Stay, ECF No. 14 at 2–9, PageID 349–56. Defendants reincorporate that background here.

## ARGUMENT

Kroger is not entitled to preliminary injunctive relief on either of its two constitutional claims. In evaluating Kroger's motion for a preliminary injunction, this Court must consider: "(1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). The third and fourth factors, the balance of equities and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, Kroger fails to establish that it is likely to succeed on the merits of either of its constitutional claims; fails to establish any irreparable injury in the absence of a preliminary injunction; and fails to establish that issuance of a preliminary injunction would serve the public interest.

## I. Kroger cannot establish a likelihood of success on its ALJ removal claim.

Kroger's removal claim fails at the outset because Kroger does not establish harm resulting from the removal restrictions, as required under the Supreme Court's decision in *Collins*, 594 U.S. at 259. Even were the Court to reach the constitutional merits, the Sixth Circuit has already explained that ALJ removal protections are constitutional. In any event, Kroger would not be entitled to an injunction on its removal claim regardless of success on the constitutional merits because the proper remedy for an unconstitutional removal provision is severance.

### A.  Kroger fails to establish harm, as required under *Collins*.

Under the Supreme Court's decision in *Collins*, a plaintiff challenging a removal protection is entitled to relief only when the challenged protection "inflict[ed] compensable harm" on the plaintiff.  594 U.S. at 259.  The Sixth Circuit recently confirmed that "*Collins* thus provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause' harm to the challenging party."  *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023).[1]  That inquiry "remains the same whether the petitioner seeks retrospective or prospective relief."  *Id.*

A plaintiff cannot establish the requisite harm simply by claiming that an officer took—or may take in the future—adverse action against him while subject to an unconstitutional removal protection.  Rather, the "constitutional violation must have *caused* the harm."  *Id.* at 316.  Nor is it sufficient to invoke the mere "*possibility*" that the agency may have acted differently if it were constituted differently.  *See id*.  Rather, "a more concrete showing [is] needed" because, otherwise, "a petitioner could always assert a possibility that an agency with different personnel might have acted differently."  *Id.* at 317.

The Supreme Court provided two "clear-cut" examples of harm attributable to a removal restriction: (1) where "the President had attempted to remove [the officer] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal," or (2) where "the President had made a public statement expressing displeasure with actions taken by [the

---

[1] *Calcutt* was reversed in part by the Supreme Court, but the Court specifically declined to grant certiorari as to the constitutional claims, *see Calcutt v. FDIC*, 598 U.S. 623, 630 (2023), and the reversal had nothing to do with *Calcutt*'s holdings regarding the Take Care Clause, *see generally id*.  *Calcutt* therefore remains good law as to these issues.  A judicial decision that overrules aspects of a prior decision does not overrule a holding that it "d[oes] not discuss."  *United States v. Cavazos*, 950 F.3d 329, 336 (6th Cir. 2020) (approvingly quoting proposition that a "decision that a court has overruled in part or reversed in part maintains precedential value to the extent that the earlier opinion doesn't conflict with the overruling or reversing opinion" (quoting Bryan A. Garner *et al.*, *The Law of Judicial Precedent* 308 (2016))).

officer] and had asserted that he would remove [the officer] if the statute did not stand in the way." *Collins*, 594 U.S. at 259–60. The Sixth Circuit has further suggested that a plaintiff could show that a removal restriction "inflicted harm" by "preventing superior officers from removing [an inferior officer] when they attempted to do so, or possibly by altering the [inferior officer]'s behavior." *Calcutt*, 37 F.4th at 316.[2]

In addition to the Sixth Circuit and the Fifth Circuit, *see supra* note 2, four other courts of appeal have rejected removal claims for lack of harm under *Collins*. *See, e.g.*, *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 756 (10th Cir. 2024); *Consumer Fin. Prot. Bureau v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 179–80 (2d Cir. 2023); *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022).

Kroger has not even attempted to establish the requisite harm here. Neither its complaint nor its preliminary injunction motion even mentions *Collins* or *Calcutt*. *See generally* Compl.; Mem. of Law in Support of Kroger's Mot. for Prelim. Inj., ECF No. 3 ("Mot."). Kroger's sole contention of harm arises in the context of the irreparable harm necessary to obtain preliminary injunctive relief. *See* Compl. ¶¶ 60–63, PageID 9; Mot. 16–18, PageID 52–54. But Kroger cannot rely on these assertions of irreparable harm to establish the requisite harm for a removal claim. The "key inquiry" in establishing the harm for a removal claim is whether the allegedly "unconstitutional removal protection specifically *caused*" Kroger to be subject to the allegedly

---

[2] Similarly, the Fifth Circuit has explained that a plaintiff generally must show: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022), *rev'd on other grounds*, 601 U.S. 416 (2024) (affirming summary judgment for CFPB on a removal power claim because the plaintiffs "fail[ed] to show that the Act's removal provision inflicted a constitutional harm").

illegitimate administrative proceeding.  *Calcutt*, 37 F.4th at 315 (emphasis added).  None of Kroger's alleged irreparable harms—(1) the burden of being subject to further administrative proceedings; (2) litigation costs of such proceedings; and (3) "ongoing uncertainty" regarding the fate of the proposed acquisition, *see* Mot. 17, PageID 53—were "caused" by the removal protections, *Calcutt*, 37 F.4th at 315; *see also, e.g.*, *YAPP USA Automotive Sys., Inc. v. Nat. Labor Rel. Bd.*, No. 24-cv-12173, 2024 WL 4119058, *9 (E.D. Mich. Sept. 9, 2024) (rejecting plaintiff's reliance on "'here and now' injury" pursuant to *Axon* for purpose of establishing harm under *Collins*).

Even if Kroger attempts to argue that the removal protections somehow caused such harms, the Sixth Circuit has explained that "vague, generalized allegations" of harm do not suffice. *Calcutt*, 37 F.4th at 317.  Thus, for example, *Calcutt* explicitly rejected the plaintiff's argument that it was harmed by the mere "*possibility* that the FDIC would have taken different actions in his case, if the Board had not been unconstitutionally shielded from removal." *Id.* at 316–17.  Kroger has therefore failed to state a removal claim.

### B.  Commission ALJs' removal protections are constitutional.

This Court need not reach the constitutional merits of Kroger's removal claim given Kroger's failure to establish harm resulting from the removal protection.  *See United States v. Elkins*, 300 F.3d 638, 647 (6th Cir. 2002) ("Courts should avoid unnecessary constitutional questions.").  Should the Court decide to reach that issue, however, Kroger's removal claim would fail regardless.

Article II empowers the President to appoint "lesser officers," which power "includes the ability to remove" those officers.  *Seila Law v. CFPB*, 591 U.S. 197, 213 (2020).  Just as the "power to remove" is considered "an incident of the power to appoint," "the power of Congress to regulate removals [is] incidental to the exercise of its constitutional power to vest appointments."

*Myers v. United States*, 272 U.S. 52, 161 (1926); *see also United States v. Perkins*, 116 U.S. 483, 485 (1886).  Thus, the key inquiry in removal claims is whether Congress has "interfere[d] with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II." *Morrison v. Olson*, 487 U.S. 654, 690 (1988) (citation omitted).

Congress has not so interfered by setting removal protections for ALJs.  Congress created ALJs when it enacted the Administrative Procedure Act ("APA") in 1946.  *See* An Act, Pub. L. No. 79-404 § 11, 60 Stat. 237, 244 (1946).  That provision is now codified in 5 U.S.C. § 7521(a), which provides that all ALJs—including Commission ALJs—may be removed by their appointing agency "only for good cause established and determined by the Merit Systems Protection Board [('MSPB')]."  MSPB members, in turn, are removable by the President "only for inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202(d).  This longstanding scheme gives ALJs a "qualified right of decisional independence," *Nash v. Califano*, 613 F.2d 10, 15 (2d Cir. 1980), and was designed to rebut allegations that ALJs might be "mere tools of the agency" who were "subservient to the agency heads in making their proposed findings of fact and recommendations." *Ramspeck v. Fed. Trial Exam'rs Conf.*, 345 U.S. 128, 131 (1953).

Kroger argues that Commission ALJs thus enjoy "two layers of for-cause protection from presidential removal" allegedly in violation of the Supreme Court's decision in *Free Enterprise Fund. v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010).  Compl. ¶ 2, PageID 1; *see also* Mot. 7–11, PageID 43–47.  But Kroger's argument misunderstands the role of the MSPB and, as the Sixth Circuit has already confirmed, stretches *Free Enterprise Fund* beyond its reach.

### a. The MSPB's review for "good cause" does not render the ALJs' protections unconstitutional.

Preliminarily, although MSPB members have removal protections, *see* 5 U.S.C. § 1202(d), Kroger is incorrect to assume that this creates an additional layer of removal protection for Commission ALJs. An ALJ is removable "by the agency in which the [ALJ] is employed," 5 U.S.C. § 7521(a), not by the MSPB. The MSPB's role is merely to hold a hearing and determine whether the requisite "good cause" exists if the agency removes an ALJ and the ALJ subsequently challenges that removal decision. *See id.* The MSPB makes no policy judgment as to whether an ALJ should be removed. *See SSA v. Levinson*, 2023 M.S.P.B. 20, ¶¶ 37–38 (2023).

The MSPB's function thus mirrors that of a court reviewing claims that an officer has been improperly removed. The Supreme Court has perceived "no constitutional problem" with "judicial review of the removal decision" because judicial review to ensure that removals occur only in accordance with a statute neither "inject[s] the Judicial Branch into the removal decision" nor "put[s] any additional burden on the President's exercise of executive authority." *Morrison*, 487 U.S. at 693 n.33. If it is constitutional for a court—wholly beyond the control of the President—to adjudicate whether cause for removal has been demonstrated, it is constitutional for the MSPB (which is *more* accountable to the President) to conduct the same adjudication.

Indeed, the Court of Appeals for the Eighth Circuit recently denied a motion for an injunction pending appeal that raised an MSPB-based removal challenge to Commission ALJs. In *H&R Block Inc. v. Himes*, No. 24-2626 (8th Cir.), the plaintiffs argued that Commission ALJs enjoy unconstitutional "triple-insulated" removal protections because "the President lacks at-will removal power over the MSPB members and FTC Commissioners who must concur to remove FTC ALJs." Appellants' Mot. for Inj. Pending Appeal at 11, *H&R Block*, No. 24-2626 (8th Cir. Aug. 12, 2024) (attached as Exhibit A). The Eighth Circuit rejected that argument in denying the

plaintiffs' motion for an injunction pending appeal. *See* Order, *H&R Block*, No. 24-2626 (8th Cir. Sept. 13, 2024) (attached as Exhibit B). This Court should similarly reject Kroger's argument that MSPB removal protections add an additional layer of removal protection or otherwise have any bearing on the constitutional inquiry here.

> **b. Regardless, Commission ALJs' removal protections are constitutional.**

Regardless of whether MSPB removal protections add an additional layer of removal protection for ALJs, the Sixth Circuit has already explained that ALJ removal protections are distinguishable from the removal protections held unconstitutional in *Free Enterprise Fund*.

In *Free Enterprise Fund*, the Supreme Court invalidated the "highly unusual" and "sharply circumscribed" removal standard for members of the Public Company Accounting Oversight Board ("PCAOB"), a regulatory body overseen by the Securities and Exchange Commission ("SEC"). *See* 561 U.S. at 492–508. Given the Court's understanding that SEC Commissioners also have tenure protections, it found that "the President [wa]s no longer the judge of the [PCAOB]'s conduct" because he lacked "the ability to oversee the [PCAOB], or to attribute the [PCAOB]'s failings to those whom he *can* oversee." *Id.* at 492, 496. Accordingly, the Court invalidated and severed the PCAOB's removal protections. *Id.* at 509. The Court took pains, however, to explain that it was not making "general pronouncements on matters neither briefed nor argued here." *Id.* at 506. In particular, the Court clarified that its holding did "not address that subset of independent agency employees who serve as administrative law judges." *Id.* at 507 n.10.

Subsequently, the Sixth Circuit explained that *Free Enterprise Fund* "provides weak support" for ALJ removal claims like Kroger's because *Free Enterprise Fund* "explicitly excludes ALJs from its prohibition on multiple levels of for-cause removal protection." *Calcutt*, 37 F.4th at 318. Additionally, the Sixth Circuit distinguished the removal protections for ALJs from those

in *Free Enterprise Fund* "because agencies can choose not to use ALJs in adjudications . . . and many ALJs perform adjudicatory functions that are subject to review by higher agency officials." *Id.* (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 537 F.3d 667, 699 n.8 (D.C. Cir. 2008) (Kavanaugh, J., dissenting)). Thus, "though [Kroger] is correct that *Free Enterprise Fund* left open whether it applied to ALJs, that decision's reasoning for exempting ALJs still extends to" the Commission ALJs here. *Id.*; *see also, e.g.*, *YAPP USA Automotive Sys., Inc.*, 2024 WL 4119058, *7–8 (applying *Calcutt* to find claim challenging double-layer removal protections for National Labor Relations Board ("NLRB") ALJs unlikely to succeed).

Indeed, consistent with the Sixth Circuit's explanation in *Calcutt*, the limited removal protections afforded to Commission ALJs fall comfortably within the bounds of Congress's authority. *See, e.g.*, *H&R Block Inc. v. Himes*, No. 24-00198-CV-W-BP, 2024 WL 3742310, at *3–6 (W.D. Mo. Aug. 1, 2024) (finding double-layer removal challenge to Commission ALJs not likely to succeed). *First*, Commission ALJs "perform adjudicative rather than enforcement or policymaking functions." *Free Enter. Fund*, 561 U.S. at 507 n.10; *see also Calcutt*, 37 F.4th at 318. Commission ALJs are a far cry from PCAOB members, which the Supreme Court described as "the regulator of first resort and the primary law enforcement authority for a vital sector of [the] economy" with authority to "take significant enforcement actions" and "regulate every detail of an accounting firm's practice." *Free Enter. Fund*, 561 U.S. at 504, 508. Providing tenure protections for Commission ALJs thus does not raise the same concern about wresting policy and enforcement decisions from the hands of the President that restrictions on removal of PCAOB members did.

*Second*, the statutory scheme here leaves the Commission significantly more control than the SEC had in *Free Enterprise Fund*. In *Free Enterprise Fund*, the PCAOB had "significant

independence in determining its priorities and intervening in the affairs" of the parties it regulated, and the SEC had no "effective power to start, stop, or alter individual [PCAOB] investigations." *Id.* at 501, 504–05. Here, in stark contrast, the Commission has no obligation to use ALJs at all, is not bound by their recommended decisions when it does, and reviews those recommendations with the freedom to request new information and to "modify" or "set aside" any portion. *See* 16 C.F.R. §§ 3.42, 3.51–.54; *see also Calcutt*, 37 F.4th at 318. Any concerns are particularly misplaced here because Commission ALJs hearing cases under the Clayton Act and the FTC Act issue only recommended decisions that are subject to the Commission's plenary review—ensuring that private parties will be governed by the Commission's own policy judgments, not those of an ALJ. 16 C.F.R. §§ 3.52–.54. And in reaching those policy judgments, the Commission is free to expand the record beyond that compiled by the ALJ. *See id.* § 3.54(b). The Commission thus retains ultimate control over the matter.

*Third*, the "good cause" standard for removing ALJs is less demanding than that invalidated in *Free Enterprise Fund*. PCAOB members were removable only for "willful violations" of certain laws and rules, "willful abuse of authority," or "unreasonable failure to enforce compliance." *Free Enter. Fund*, 561 U.S. at 503. That "unusually high standard," when combined with SEC Commissioners' removal protections, posed a "more serious threat to executive control than an 'ordinary' dual-for-cause standard." *Id.* at 502–03. Commission ALJs, in contrast, may be removed for "all matters which affect the ability and fitness of the ALJ to perform the duties of office." *Abrams v. SSA*, 703 F.3d 538, 543 (Fed. Cir. 2012) (quotation marks omitted). "Good cause" thus encompasses an ALJ's disregard for the Commission's binding legal and policy judgments, *cf. Morrison*, 487 U.S. at 724 n.4 (Scalia, J., dissenting); significant misconduct, *id.* at 692 (majority opinion); and substantially deficient job performance, including failure to follow

instructions, *Abrams*, 703 F.3d at 543.

Given that ALJ removal protections do not implicate the same concerns outlined in *Free Enterprise Fund*, multiple other courts of appeals have rejected similar challenges, agreeing with the Sixth Circuit that ALJs "'perform[] a purely adjudicatory function'" and not a policymaking one. *Leachco*, 103 F.4th at 763–64; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1135 (9th Cir. 2021). And as noted above, the Eighth Circuit recently denied an injunction pending appeal specifically raising a removal challenge to Commission ALJs. *See* Ex. B (Order, *H&R Block*, No. 24-2626 (8th Cir. Sept. 13, 2024)). The district court in that same case explained that the plaintiffs' removal challenge to Commission ALJs was not likely to succeed for all the same reasons that Defendants have explained here—including "differences between the [PCAOB members] in that case and the FTC ALJs," and the Supreme Court's suggestion in *Free Enterprise Fund* that its holding "did not apply" to ALJs. *See H&R Block Inc.*, 2024 WL 3742310, at *3–6; *see also YAPP USA Automotive Sys., Inc.*, 2024 WL 4119058, *7–8 (finding plaintiff not likely to succeed on NLRB ALJ removal claim); *Alivio Medical Center v. Jennifer Abruzzo*, No. 24-cv-7217, 2024 WL 4188068, at *10 (N.D. Ill. Sept. 13, 2024) (same).

Only one court of appeals—the Fifth Circuit—has held that ALJ removal protections are unconstitutional. *See Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022) (concluding in a divided opinion that SEC ALJ removal protections are unconstitutional), *aff'd on other grounds*, 144 S. Ct. 2117 (2024). But as the Tenth Circuit noted, the Fifth Circuit "seemed to disregard the distinction between the PCAOB members in *Free Enterprise Fund*, who exercised executive functions, and ALJs, who perform adjudicatory functions." *Leachco*, 103 F.4th at 764 (citing *Jarkesy*, 34 F.4th at 465); *see also H&R Block Inc.*, 2024 WL 3742310, at *5 n.7 (explaining that

*Jarkesy* relies on "reasoning that has been rejected by other courts that have addressed the issue").[3]

Accordingly, consistent with the Sixth Circuit's discussion in *Calcutt*, this Court should hold that Kroger has failed to establish likely success on the merits of its removal claim.

### C. Kroger is not entitled to injunctive relief because the removal protections are severable in any event.

Even if Kroger had shown harm (which it has not), and even if it had established that the good-cause protections were unconstitutional (which it has not), the proper remedy would be severance of the offending removal provisions—not injunctive relief barring the administrative adjudication from taking place. "[W]hen confronting a constitutional flaw in a statute," courts generally "limit the solution to the problem," severing the "problematic portions while leaving the remainder intact." *Free Enter. Fund*, 561 U.S. at 508 (citation omitted). The Supreme Court has taken this approach in every instance over the past fifteen years in which it has found a structural constitutional defect in the appointment or removal provisions of a statute. *See id.* at 508 (rejecting argument that unconstitutionally structured PCAOB should be precluded from exercise of authority and instead excising removal protections); *Seila Law*, 591 U.S. at 237 (severing removal protections, thereby using "a scalpel rather than a bulldozer in curing the constitutional defect"); *see also Collins*, 594 U.S. at 256; *United States v. Arthrex, Inc.*, 594 U.S. 1, 23–25 (2021) (plurality opinion).

Thus, even if plaintiffs were to succeed on the merits of their claim, the proper relief would be severance of the offending provision. The Court should not enter preliminary injunctive relief that would not be obtainable upon final resolution of the merits.

---

[3] Kroger also cites a single district court case that the Government has appealed—and which failed to contend with *Collins*. *See Walmart Inc. v. King*, No. CV 623-040, 2024 WL 1258223, at *4 (S.D. Ga. Mar. 25, 2024), *appeal filed*, No. 24-11733 (11th Cir. June 16, 2024).

## II. Kroger fails to establish likelihood of success on its Article III claim.

Kroger similarly fails to establish likely success on its Article III claim, as the claims raised in the Commission's administrative complaint involve longstanding public rights that may be adjudicated by an agency. *See* Compl. ¶¶ 72–76, PageID 11; Mot. 11–16, PageID 47–52. The Supreme Court has long recognized that "no involvement by an Article III court in the initial adjudication is necessary" in cases involving "public rights," as opposed to "private rights." *Jarkesy*, 144 S. Ct. at 2132. While the Court "has not definitively explained the distinction between" private rights and public rights, a "hallmark" of a private-rights matter is whether "it is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789." *Id.* at 2132 (cleaned up and citation omitted). On the other hand, public-rights matters include those that "historically could have been determined exclusively by the executive and legislative branches, even when they were presented in such form that the judicial power was capable of acting on them." *Id.* (quoting *Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 284 (1855)) (cleaned up); *see also Crowell v. Benson*, 285 U.S. 22, 51 (1932) (describing public rights matters as those "matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it").

The adjudication of harm to competition under the Clayton Act and the FTC Act is a public-rights matter. Pursuant to Congressional direction, the Commission has been adjudicating merger cases in administrative proceedings for 110 years. Supreme Court precedent confirms that these cases involve public rights that may properly be adjudicated by an agency, and nothing in *Jarkesy* upends that long-settled determination. Moreover, both the Clayton Act and the FTC Act created new causes of action that did not derive from the common law.

## A. The Commission adjudicates public rights under the Clayton Act and the FTC Act.

The Supreme Court has long recognized that the Government's adjudication of harm to competition pursuant to the Clayton Act and the FTC Act is a paradigmatic example of a "public rights" matter.  In *Crowell v. Benson*, the Court specifically pointed to a Clayton Act case involving the Commission as one of the "[f]amiliar illustrations of administrative agencies created for the determination of [public-rights] matters."  285 U.S. at 51 & n.13.  The Commission case that *Crowell* invoked, *International Shoe Co. v. FTC*, 280 U.S. 291, 297 (1930), "explained that Section 7 of the Clayton Act, as its terms and the nature of the remedy prescribed plainly suggest, was intended for the protection of the public against the evils which were supposed to flow from the undue lessening of competition."  *Id.* at 297–98 (emphasis added); *see also, e.g.*, *FTC v. Eastman Kodak Co.*, 274 U.S. 619, 623 (1927) ("The Commission exercises only the administrative functions delegated to it by the [FTC] Act, not judicial powers." (citing *Nat'l Harness Mfrs.' Ass'n v. FTC*, 268 F. 705, 707 (6th Cir. 1920))).

The Supreme Court has also repeatedly emphasized that the Clayton Act and the FTC Act are "concern[ed] with the protection of *competition*, not *competitors*."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) (emphasis added).  The Clayton Act "seek[s] to protect the public from abuses arising in the course of competitive interstate and foreign trade."  *Pan Am. World Airways, Inc. v. United States*, 371 U.S. 296, 307 (1963) (citation omitted).  It "do[es] not embrace a remedy for private wrongs but only a means of vindicating the public interest."  *Id.* at 306.  Similarly, the FTC Act is concerned "with protection of the public interest," not "punishment of wrongdoing or protection of injured competitors."  *Am. Airlines v. N. Am. Airlines*, 351 U.S. 79, 85–86 (1956).

Moreover, the Supreme Court has highlighted the public import of administrative

adjudication of potentially anticompetitive activities.  Congress created the Commission as a nonpartisan body of experts who could bring their specialized expertise to bear on competition issues that affected the public.  *See, e.g.*, *FTC v. Cement Institute*, 333 U.S. 683, 726 (1943) ("Congress when it passed the Trade Commission Act felt that courts needed the assistance of men trained to combat monopolistic practices in the framing of judicial decrees in antitrust litigation.  Congress  envisioned a commission trained in this type of work by experience in carrying out the functions imposed upon it."); *FTC v. Morton Salt Co.*, 334 U.S. 37, 54 (1948) ("One of the reasons for entrusting enforcement of this Act primarily to the Commission, a body of experts, was to authorize it to hear evidence . . . and to make findings concerning possible injury to competition.").  In short, the Supreme Court has long recognized that administrative adjudication of Clayton Act and FTC Act claims is proper because those claims involve public rights, not private rights.

Congress's careful delineation of the Commission's role relative to that of the courts further confirms that the Commission does "not employ its powers to vindicate private rights."  *Am. Airlines*, 351 U.S. at 83.  In other words, as noted in the Senate Report for the FTC Act: "It was never the intention of Congress that the Commission should be a forum where private disputes or controversies . . . should be settled."  *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 1000 n.63 (D.C. Cir. 1973) (quoting S. Rep. No. 221, 75th Cong., 1st Sess. at 2 (1937)).  That intent is evident throughout the Clayton Act and the FTC Act.  For example, only a court can provide monetary redress to injured consumers under the FTC Act.  *See AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 77–78 (2021) (discussing 15 U.S.C. §§ 45, 53(b), and 57b(b)).  And if a company violates a cease-and-desist order under the Clayton Act or the FTC Act, only a court can impose civil penalties or a mandatory injunction to enforce the order.  *See* 15 U.S.C. §§ 21(*l*), 45(*l*).  Both statutes also provide for judicial review of the Commission's cease-and-desist orders.  *See* 15

U.S.C. § 21(b), (c); *see id.* § 45(b), (c).

These features of the Clayton Act and the FTC Act prevent the executive branch from encroaching on the judicial branch or otherwise aggrandizing executive powers. *See Mistretta v. United States*, 488 U.S. 361, 382 (1989) ("It is this concern of encroachment and aggrandizement that has animated our separation-of-powers jurisprudence[.]"); *see also City of Arlington, Tex. v. FCC*, 569 U.S. 290, 305 n.4 (2013) ("Agencies make rules . . . and conduct adjudications . . . and have done so since the beginning of the Republic. These activities take 'legislative' and 'judicial' forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'"); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 533 (1935) (noting Commission administrative procedure comports with separation of powers because judicial review "give[s] assurance that the action of the commission is taken within its statutory authority").[4]

**B. *Jarkesy* does not upend this century-old statutory scheme.**

Kroger's reliance on *Jarkesy* to upend over a century of Commission adjudication is unavailing. Preliminarily, *Jarkesy* was a Seventh Amendment case; the Supreme Court did not consider how Article III applies to administrative adjudication where, as here, the claims do not implicate the right to a jury trial. *See, e.g.*, *Jarkesy*, 144 S. Ct. at 2139–40 (Gorsuch, J., concurring) ("The Court decides a single issue: Whether the Securities and Exchange Commission's use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial."). Thus,

---

[4] In the years following the FTC Act's passage, many courts of appeals—including the Sixth Circuit—explicitly confirmed that the FTC Act does not usurp the power of Article III courts. *See, e.g.*, *Nat'l Harness Mfrs.' Ass'n*, 268 F. at 707 ("The act delegates to the commission no judicial powers, nor does it, in our opinion, confer invalid executive or administrative authority."); *Sears, Roebuck & Co. v. FTC*, 258 F. 307, 311 (7th Cir. 1919) (rejecting argument that FTC Act "brings about an unconstitutional delegation of legislative and judicial power to the commission"); *Arkansas Wholesale Grocers' Ass'n v. FTC*, 18 F.2d 866, 870 (8th Cir. 1927); *Ostler Candy Co. v. FTC*, 106 F.2d 962, 964 (10th Cir. 1939).

*Jarkesy* lends no support to Kroger's Article III claim.

Even if *Jarkesy*'s discussion of the public-rights exception to the Seventh Amendment implicated Article III questions that the Supreme Court did not address, Kroger's Article III claim would still fail.  Contrary to Kroger's assertion, nothing in *Jarkesy* upsets the long-settled determination that Clayton Act and FTC Act claims involve public rights that can properly be adjudicated in administrative proceedings.  Indeed, *Jarkesy* expressly cited to *Crowell*'s discussion of such "familiar" examples of public rights.  *Jarkesy*, 144 S. Ct. at 2133 (citing *Crowell*, 285 U.S. at 51).  Moreover, *Jarkesy* held only that an SEC securities fraud enforcement action to recover civil money penalties was not a public-rights matter, as civil penalties are a "punitive remedy" that may be enforced only in courts of law.  *Id.* at 2136.  Civil penalties are not at issue here: the Commission has no power to impose civil penalties in Section 5 or Section 7 proceedings.  *See* 15 U.S.C. § 45(b), (*l*); *id.* § 21(b), (*l*).  *Jarkesy* did not purport to upend the long history of administrative adjudication outside the narrow context of civil penalties.  *See, e.g.*, *Crowell*, 285 U.S. at 50–51 (1932); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937); *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 583 (1985).

Further, while the securities fraud statute in *Jarkesy* was "barely over a decade old," 144 S. Ct. at 2134 n.2, the Commission has adjudicated claims under the Clayton Act and the FTC Act for over a century, and the Supreme Court has reaffirmed the Commission's authority to do so many times.  *See, e.g.*, *AMG*, 593 U.S. at 72 ("Ever since the Commission's creation in 1914, it has been authorized to enforce the [FTC] Act through its own administrative proceedings."); *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612–14 (1946) ("The Commission is the expert body to determine what remedy is necessary to eliminate the unfair or deceptive trade practices which have been disclosed.  It has wide latitude for judgment and the courts will not interfere except where the

remedy selected has no reasonable relation to the unlawful practices found to exist."); *FTC v. Dean Foods Co.*, 384 U.S. 597, 606 (1966) ("[T]he Commission is a governmental agency to which Congress has entrusted, inter alia, the enforcement of the Clayton Act, granting it the power to order divestiture in appropriate cases."). *Jarkesy* does not purport to overturn these well-established precedents. The Commission's administrative adjudication of the legality of mergers involves public-rights matters.

### C. The Clayton Act and the FTC Act created rights distinct from the common law.

The Clayton Act and the FTC Act are further distinguishable from the securities fraud statute in *Jarkesy* because they were "self-consciously novel" in "both concept and execution." *Jarkesy*, 144 S. Ct. at 2137. They "did not borrow . . . cause[s] of action from the common law," nor was their "purpose" "to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law." *Id.*

When enacted in 1914, the FTC Act prohibited "unfair methods of competition." 15 U.S.C. § 45(a)(2). It was intended "to stop in their incipiency those methods of competition which fall within the meaning of the word 'unfair.'" *FTC v. Raladam Co.*, 283 U.S. 643, 647 (1931). The common law did not recognize such actions to stop unfair practices in their incipiency. Indeed, as the Supreme Court observed, "[i]t would not have been a difficult feat of draftsmanship to have restricted the operation of the [FTC] Act to those methods of competition in interstate commerce which are forbidden at common law . . . , if that had been the purpose of the legislation." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 243 (1972) (quoting *FTC v. R.F. Keppel & Bro.*, 291 U.S. 304, 310 (1934)). But codifying the common law was not its purpose. Instead, Congress "explicitly considered, and rejected" the idea of "tying the concept of unfairness to a common-law or statutory standard." *Id.* at 240. Congress found the common law "too narrow," and thus instead chose to prohibit "unfair methods of competition"—"an expression new in the law." *Schechter*

*Poultry Corp.*, 295 U.S. at 532; *see also Keppel*, 291 U.S. at 310–12 (noting Congress declined to use the term "unfair competition" because "the meaning which the common law had given to those words was deemed too narrow," and so "the broader and more flexible phrase 'unfair methods of competition' was substituted").

As the House Conference Report explained: "It is impossible to frame definitions which embrace all unfair practices.  There is no limit to human inventiveness in this field.  Even if all known unfair practices were specifically defined and prohibited, it would be at once necessary to begin over again." *Id.* at 240 (quoting H.R. Conf. Rep. No. 1142, 63d Cong., 2d Sess. 19 (1914). So Congress chose to, "by a general declaration condemning unfair practices, leave it to the commission to determine what practices were unfair." *Id.* (quoting S. Rep. No. 597, 63d Cong., 2d Sess., at 13 (1914)); *see also Pan Am.*, 371 U.S. at 306 (describing FTC Act's proscription on "unfair methods of competition" as "a broader concept than the common-law idea of unfair competition" (citation and quotation marks omitted)).  Congress thus created the Commission— "a body of experts" with "proper knowledge of both the public requirements and the practical affairs of industry," *Humphrey's Ex'r v. United States*, 295 U.S. 602, 624–25 (1935)—and gave it "an influential role in interpreting § 5 [of the FTC Act] and in applying it to the facts of particular cases arising out of unprecedented situations," *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385 (1965); *see also FTC v. Algoma Lumber Co.*, 291 U.S. 67, 78–81 (1934) (describing the Commission as the "champion at hand to put an end" to abuses "not actionable" at common law).

Just as the FTC Act was intended "to stop in their incipiency those methods of competition which fall within the meaning of the word 'unfair,'" *Radalam Co.*, 283 U.S. at 647, so too was the Clayton Act intended "to arrest the creation of trusts, conspiracies, and monopolies in their incipiency and before consummation."  S. Rep. No. 63-698 at 1 (1913); *see also FTC v. Procter*

*& Gamble Co.*, 386 U.S. 568, 577 (1967) ("[T]here is certainly no requirement that the anticompetitive power manifest itself in anticompetitive action before § 7 [of the Clayton Act] can be called into play. If the enforcement of § 7 turned on the existence of actual anticompetitive practices, the congressional policy of thwarting such practices in their incipiency would be frustrated.").

Congress enacted the Clayton Act in response to deficiencies in the Sherman Act (which itself was distinct from the common law, *see infra* pp. 22–23). The Clayton Act was intended not "to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law," *Jarkesy*, 144 S. Ct. at 2137, but to address a far broader scope of conduct not previously considered by the Sherman Act or by the common law, *see* S. Rep. No. 63-698 at 1 (1913) (intending "to prohibit and make unlawful certain trade practices which, as a rule, singly and in themselves, are not covered by the [Sherman Act] . . . or other existing antitrust acts"). Thus, "Congress rejected, as inappropriate to the problem it sought to remedy, the application to § 7 cases of the standards for judging the legality of business combinations adopted by the courts in dealing with cases arising under the Sherman Act." *Brown Shoe Co.*, 370 U.S. at 317–18.

Accordingly, the history of the Clayton Act and the FTC Act confirm that adjudication of the legality of mergers implicates public rights, not private rights.

### D. Kroger's arguments to the contrary are unavailing.

*First*, Kroger's assertion that "competition claims have a common-law history" mischaracterizes both the common-law history and the relevant inquiry. As explained above, both the Clayton Act and the FTC Act created causes of action distinct from the common law. *See supra* pp. 19–21. Relevant here, they created new statutory duties that exist between regulated parties and the Government to protect the public by preserving competition. *Cf. Stern v. Marshall*, 564 U.S. 462, 489, 493 (2011) (explaining that private rights involve disputes between "two

private parties" regarding the "the liability of one individual to another under the law as defined" (quoting *Crowell*, 285 U.S. at 50)).

Kroger's sole argument to the contrary is reference to "common law actions for unlawful 'restraints of trade,'" which Kroger alleges were "partially codified" in the Sherman Act.  Mot. 13, PageID 49.  But the administrative proceeding challenged here involves alleged violations not of the Sherman Act but of the Clayton Act—which Congress enacted explicitly in response to the perceived deficiencies of the Sherman Act, *see supra* p. 21—and of the FTC Act.  Any alleged common-law history of the Sherman Act's prohibition on unlawful restraints of trade is therefore irrelevant, and Kroger fails to explain how the Clayton Act or the FTC Act derive from common-law causes of action.

In any event, the Sherman Act was also not born of common law.  While "'restraint of trade' . . . had a well-understood meaning at common law," *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 490 (1940), "[c]ontracts that were unreasonable restraint of trade at common law were not unlawful in the sense of being criminal, or giving rise to a civil action of damages in favor of one prejudicially affected thereby, but were simply void, and were not enforced by the court," *United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 279 (6th Cir. 1898) (Taft, J.).  Thus, "[t]he effect of the [Sherman] act of 1890 [wa]s to render such contracts unlawful in an affirmative or positive sense, and punishable as a misdemeanor, and to create a right of civil action for damages in favor of those injured thereby, and a civil remedy by injunction in favor of both private persons and the public against the execution of such contracts and the maintenance of such trade restraints."  *Id.*[5]

---

[5] *See also* Areeda & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and their Application* ¶ 301a (2024) (noting that the Sherman Act "neither specifically adopted any particular [common law] doctrines nor those of any state" and "at the time the Sherman Act was passed the common law was in an unsettled state, and there was little consensus about its meaning"); 1 *Antitrust Laws & Trade Regulation* § 8.04 (2d ed. 2024) ("[T]he common law was inadequate to cope with the restraints, unfair

In other words, the common law did not give the public any rights to relief against restraints of trade; rather, Congress created such rights when it passed the Sherman Act, and later the Clayton Act and the FTC Act. *Compare Oregon Steam Nav. Co. v. Winsor*, 87 U.S. 64, 65 (1873) (noting only the "well-settled rule of [common] law that an agreement in general restraint of trade is illegal and void") *with United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 364–65 (1963) (explaining that the Clayton Act's "intense" "concern with the trend towards concentration warrants dispensing, in certain cases, with elaborate proof of market structure, market behavior, or probable anticompetitive effects"). Thus, even assuming the historical roots of the Sherman Act were relevant here, those historical roots highlight the public-rights nature of the Clayton Act and the FTC Act. Kroger fails to establish any serious similarity between the common-law concept of "restraints of trade" and the violations of which it has been accused—"an unfair method of competition" in violation of Section 5 of the FTC Act and a proposed acquisition, which, "if consummated, may substantially lessen competition" in violation of Section 7 of the Clayton Act. *See* Compl., *In re Kroger Co.*, Dkt. No. 9428 (FTC), https://perma.cc/3T6W-EC3V.

*Second*, the administrative proceeding does not involve private rights merely because it implicates Kroger's property rights. "Many matters that involve the application of legal standards to facts and affect private interests are routinely decided by agency action with limited or no review by Article III courts." *Thomas*, 473 U.S. at 583; *see also, e.g.*, *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 853 (1986) (allowing CFTC to adjudicate debit balance claims between commodity futures brokers and customers, which involved "private rights" "assumed to be at the 'core' of matters normally reserved to Article III courts"); *Crowell*, 285 U.S. at 51–53

---

trade practices, monopolies, trusts, and the like which emerged in the nineteenth century. . . . [T]here was no uniform, national body of case law. Instead, each state was developing its own, often conflicting system of judicial precedent, and it soon became apparent that there was no federal common law on which to rely.").

(replacing injured longshore workers' traditional negligence cause of action against employers with an administrative workers' compensation system requiring employers to pay compensation to injured workers).  Thus, as one district court has explained in rejecting the same argument that Kroger makes here, "[t]he dividing line between private rights and public rights is not whether an adjudication might have some impact on a person's property; indeed, most administrative adjudications have such an effect."  *Meta Platforms, Inc. v. FTC*, No. 23-cv-3562 (RDM), 2024 WL 1121424, at *19 (D.D.C. Mar. 15, 2024).

Kroger protests that Supreme Court and Sixth Circuit public-rights cases have not explicitly applied the public-rights doctrine to Clayton Act or FTC Act administrative proceedings. *See* Mot. 14, PageID 50.  But this ignores the Supreme Court's decisions in *Crowell*, 285 U.S. at 51, and *International Shoe*, 280 U.S. at 297, both of which recognized the public-rights nature of the Commission administrative adjudication, *see supra* p. 15; and *Schechter Poultry Corp.*, which noted that Commission administrative procedure comports with separation of powers, *see* 295 U.S. at 533; *see also supra* p. 17.  And indeed, the Sixth Circuit did explicitly reject a separation-of-powers challenge to the Commission's enforcement of the FTC Act through administrative adjudication shortly after its enactment.  *See Nat'l Harness Mfrs.' Ass'n*, 268 F. at 707.  Regardless, the relevant inquiry is not whether the matter involves regulatory fines, public benefits or compensation, or private claims embedded in regulatory proceedings, *see* Mot. 14, PageID 50, but whether the matter "'historically could have been determined exclusively by the executive and legislative branches,' even when they were 'presented in such form that the judicial power was capable of acting on them.'" *Jarkesy*, 144 S. Ct. at 2132 (cleaned up and citations omitted).  And here, Kroger challenges causes of action under the Clayton Act and the FTC Act that had no common-law equivalent and were actionable by the Commission only in administrative courts

until the introduction of Section 13(b) in 1973.  *See* 15 U.S.C. § 53(b).

*Third*, overturning more than a century of precedent allowing the Commission to adjudicate these types of claims would indeed "dismantle the statutory scheme" and "impede swift resolution" of the statutory claims.  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 60–63 (1989); *see* Mot. 15, PageID 51.  Although Section 13(b) authorizes the Commission to seek permanent injunctions, *see* 15 U.S.C. § 53(b), Congress plainly did not intend for permanent injunction proceedings to displace administrative proceedings.  The Commission had been conducting administrative proceedings for nearly sixty years when Congress enacted Section 13(b) in 1973.  And the bulk of the statute deals with preliminary injunctions to halt potentially unlawful practices while the Commission assesses their legality, confirming Congress's intent that the Commission continue to enforce the Clayton Act and the FTC Act through administrative adjudication.  *See AMG Capital Mgmt.*, 593 U.S. at 77 (noting the "historical importance of administrative proceedings").  Indeed, as explained above, the Supreme Court has specifically recognized the importance of a nonpartisan body of experts to administratively adjudicate potential harm to competition.  *See supra* pp. 15–16; *see, e.g., FTC v. Cement Institute*, 333 U.S. at 726; *FTC v. Morton Salt Co.*, 334 U.S. at 54.  Suddenly rescinding the Commission's authority to administratively adjudicate claims under the Clayton Act and the FTC Act, reversing a century of precedent, would doubtless "impede swift resolution" of those claims.  *Granfinanciera*, 492 U.S. at 63.

### III.  Kroger has not established irreparable harm.

Kroger's motion for a preliminary injunction should also be denied because it has shown no likelihood of irreparable harm absent an injunction.  *See D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) ("[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982))).  Kroger articulates three purportedly irreparable harms: (1) the

burden of being subject to further proceedings; (2) litigation costs of further administrative proceedings; and (3) "ongoing uncertainty" regarding the fate of the proposed acquisition.  Mot. 17, PageID 53.  None suffices.

*First*, Kroger misplaces its reliance on a statement in *Axon Enterprise*, 598 U.S. at 191, when it alleges that "being subjected to an illegitimate proceeding is a 'here-and-now injury' that . . . 'is impossible to remedy once the proceeding is over."  Mot. 16, PageID 52 (quoting *Axon Enterprise*, 598 U.S. at 191).  Kroger overreads *Axon*, which stands only for the proposition that federal district courts have jurisdiction to hear certain structural constitutional challenges to the conduct of an ongoing administrative proceeding.  *See* 598 U.S. at 180.  *Axon* does not hold, as Kroger wrongly contends, that a plaintiff's structural challenges entail irreparable harm warranting preliminary relief.  As the Tenth Circuit explained, "*Axon* did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief."  *Leachco*, 103 F.4th at 758.  It thus "does not help [Kroger] establish irreparable harm" here.  *Id.*; *see also id.* at 759 (noting that the plaintiff's alternative reading of *Axon* would convert that decision "into a broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised"); *see also, e.g.*, *YAPP USA Automotive Sys., Inc.*, 2024 WL 4119058, *9 (explaining that *Axon* "did not address issues of relief or injury").

Moreover, *Seila Law*—the origin of the "here-and-now injury" language, *see Axon Enterprise*, 598 U.S. at 191 (quoting *Seila Law*, 591 U.S. at 212)—also says nothing about entitlement to injunctive relief; that portion of *Seila Law* concerned standing, *see Seila Law*, 591 U.S. at 212; *see also Leachco*, 103 F.4th at 759.  The Supreme Court recognized as much in *Collins*: "What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction."  *Collins*, 594 U.S.

at 258 n.24.

More fundamentally, Kroger's assertion that the administrative proceeding will restart at all—much less that it will restart any time soon—is speculative. Kroger admitted in the preliminary injunction hearing in the District of Oregon that "the outcome of this [Section 13(b)] hearing is going to most certainly be dispositive of whether this merger goes through or not," and "[t]his merger will not occur if this injunction is in place." ECF No. 10-5 at PageID 217, 267 (Rough Tr. at 100:6–7, 150:10–17 (Aug. 26, 2024), *FTC v. The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.)). If Kroger and Albertsons abandoned the proposed acquisition following a federal court order, the administrative proceeding may be rendered moot.[6] Given such uncertainty regarding whether the administrative proceeding will even occur, Kroger cannot establish any irreparable harm arising from the administrative proceeding.

*Second*, Kroger's assertion of irreparable harm in the form of litigation costs and attorneys' fees is a non-starter. The Supreme Court has often reiterated that "[m]ere litigation expense, even substantial and *unrecoupable* cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *see also FTC v. Standard Oil Co. of Calif.*, 449 U.S. 232, 244 (1980) (same). Kroger's assertion that its litigation expenses cannot be recovered from the Government, *see* Mot. 16–17, PageID 52–53, thus provides no support to its claim of

---

[6] In the status conference on September 13, 2024, Kroger suggested that this case may remain live even if Kroger and Albertsons abandon the proposed merger because the Commission may still pursue prospective relief in the administrative proceeding. Although the Commission has the authority to maintain an administrative case after the parties abandon a merger, it has historically done so only in rare circumstances. *See, e.g.*, *In the Matter of the Coca-Cola Company*, 117 F.T.C. 795, 1994 WL 16011006, ¶ 376 (1994). Thus, if Kroger and Albertsons were to abandon the merger following an adverse decision in Oregon, there is at the very least a substantial possibility that the Commission will terminate the administrative proceedings on the grounds that they are no longer needed to protect the public interest. Such a determination would moot this case. *See Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969))).

irreparable harm. Rather than distinguish *Renegotiation Board* or *Standard Oil*, Kroger looks to a Sixth Circuit case finding irreparable harm based on the costs of complying with a federal requirement, together with the prospect of a loss of funding on a contract with the Government. *See Commonwealth v. Biden*, 57 F.4th 545, 555–56 (6th Cir. 2023) (cited at Mot. 17, PageID 53). But those scenarios are far different from a claim of irreparable harm based on litigation costs, which the Supreme Court has repeatedly rejected as insufficient—even when such costs are "unrecoupable." *Bannercraft*, 415 U.S. at 24.

*Third*, Kroger alleges irreparable harm in the form of "ongoing uncertainty" as to the prospect of the proposed acquisition should Kroger prevail in the Section 13(b) proceeding but remain subject to future administrative proceedings. *See* Mot. 17, PageID 53. But Kroger fails to explain how this is an "imminent and irreparable injury" requiring the Court "to grant relief *now* as opposed to at the end of the lawsuit." *D.T.*, 942 F.3d at 327. Moreover, a preliminary injunction would not even resolve this alleged injury. Kroger alleges that it "must be able to operate its business without the looming specter of a post-merger divestiture of assets years down the line." Mot. 17, PageID 53. But even were this Court to preliminary enjoin the administrative proceeding, Kroger would still face the same alleged "uncertainty" from the prospect of losing on the ultimate merits in this case. Regardless, the specter of future enforcement proceedings—and a plaintiff's own choices in light of such proceedings—is not an irreparable injury.

Finally, Kroger's own delay in filing for injunctive relief weighs against finding irreparable harm. *See, e.g.*, *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 405 (6th Cir. 2013) ("[A]n unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm."); *Huron Mountain Club v. U.S. Army Corps of Engineers*, 545 F. App'x 390, 397 (6th Cir. 2013) (finding district court did not err in considering delay as a factor

weighing against injunction). Kroger waited to file this motion until six months after the Commission initiated both the administrative proceeding and the Section 13(b) proceeding in the District of Oregon, and seven days before the three-week evidentiary hearing on the preliminary injunction began in Oregon. Kroger knows that the administrative proceeding is recessed only pending resolution of the Section 13(b) proceeding. Its unjustified delay weighs strongly against a finding of irreparable harm.

Because Kroger has not alleged any recognized irreparable harm—and because it delayed seeking preliminary injunctive relief until the final hour—Kroger has failed to satisfy the irreparable-harm requirement, and its preliminary-injunction request should be denied on that basis alone.

## IV. The balance of the equities and the public interest weigh in the Government's favor.

The third and fourth injunctive factors, the balance of equities and the public interest, "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. These combined factors weigh against relief here because the public has a strong interest in enforcement of the Clayton Act, which protects the public from transactions which "may substantially lessen competition," 15 U.S.C. § 18, and the FTC Act, which protects the public from "unfair or deceptive acts or practices," 15 U.S.C. § 45(a). Enjoining the administrative proceeding at issue would frustrate those Congressional objectives, preventing the Commission from "effectuating statutes enacted by representatives of [the] people," and causing the United States to "suffer[] a form of irreparable injury" as a result. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *cf. Priorities USA v. Nessel*, 860 F. App'x 419, 423 (6th Cir. 2021) ("[T]he public interest necessarily weighs against enjoining a duly enacted statute.").

On the other hand, as explained above, Kroger has not shown that it will suffer any harm from proceeding with the scheduled administrative hearing, especially since Kroger may seek

review of the outcome in federal court. 15 U.S.C. § 45(c). Accordingly, the balance of the equities and the public interest counsel against Kroger's requested relief.

## CONCLUSION

For the foregoing reasons, the Court should deny Kroger's motion for a preliminary injunction.


Dated: September 16, 2024                    Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General
                                             Civil Division

                                             BRIAN D. NETTER
                                             Deputy Assistant Attorney General

                                             CHRISTOPHER R. HALL
                                             Assistant Branch Director

                                             */s/ Cassandra M. Snyder*
                                             CASSANDRA SNYDER
                                             Trial Attorney
                                             Department of Justice
                                             Federal Programs Branch
                                             1100 L Street, N.W., Washington, DC 20005
                                             Tel: (202) 451-7729
                                             Email: cassandra.m.snyder@usdoj.gov

                                             *Counsel for Defendants*