## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO – Cincinnati Division

| | |
|---|---|
| THE KROGER CO.<br>                    Plaintiff,<br><br>       vs.<br><br>THE FEDERAL TRADE COMMISSION<br>                    Defendant,<br><br>       and<br><br>LINA M. KHAN, REBECCA KELLY<br>SLAUGHTER, ALVARO BEDOYA, MELISSA<br>HOLYOAK, and ANDREW N. FERGUSON in their<br>official capacities as Commissioners of the Federal<br>Trade Commission<br>                    Defendants. | Civil Action No. 1:24-cv-00438-DRC<br><br><br>PLAINTIFF KROGER'S REPLY<br>MEMORANDUM OF LAW IN<br>SUPPORT OF KROGER'S MOTION<br>FOR PRELIMINARY INJUNCTION<br><br>**ORAL ARGUMENT REQUESTED** |

## <u>REPLY MEMORANDUM OF LAW<br>IN SUPPORT OF KROGER'S MOTION FOR PRELIMINARY INJUNCTION</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................. 1

ARGUMENT ....................................................................................................... 2

    I.      Kroger is likely to succeed in showing that the administrative proceeding
           is unconstitutional. ................................................................................ 2

          A.     The ALJ overseeing the proceeding is unconstitutionally insulated
                from removal. .............................................................................. 2

                1.     The FTC's defense of the removal structure fails. .......................... 3

                2.     *Collins* does not bar injunctive relief against an ongoing
                      unconstitutional proceeding. ........................................... 8

                3.     Severability is inappropriate and premature. ............................... 10

          B.     The administrative proceeding unconstitutionally usurps judicial
                power. ......................................................................................... 12

                1.     There is no basis to extend the public rights exception to
                      Part 3 merger proceedings. ............................................. 12

                2.     The FTC's remaining arguments are unavailing. ......................... 14

    II.     Kroger will suffer irreparable harm absent an injunction. ..................... 17

    III.    The equities favor Kroger. .................................................................... 20

CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Alpine Sec. Corp. v. FINRA*,
    2023 WL 4703307 (D.C. Cir. July 5, 2023) ..........................................................................18

*Apex Hosiery Co. v. Leader*,
    310 U.S. 469 (1940)..........................................................................................................15

*Aunt Bertha v. NLRB*,
    2024 WL 4202383 (N.D. Tex. Sept. 16, 2024)......................................................3, 10, 12, 18

*Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023)..................................................................................... *passim*

*Axon Enter., Inc. v. FTC*,
    986 F.3d 1173 (9th Cir. 2021) ........................................................................................13

*Calcutt v. FDIC*,
    37 F.4th 293 (6th Cir. 2022) .....................................................................................6, 7, 8

*CFPB v. Law Offices of Crystal Moroney, P.C.*,
    63 F.4th 174 (2d Cir. 2023) ...........................................................................................10

*CFTC v. Schor*,
    478 U.S. 833 (1986)......................................................................................................17

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*,
    363 F.3d 427 (6th Cir. 2004) ..........................................................................................20

*City of Arlington v. FCC*,
    569 U.S. 290 (2013).......................................................................................................5

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
    51 F.4th 616 (5th Cir. 2022) ..........................................................................................10

*Cochran v. SEC*,
    20 F.4th 194 (5th Cir. 2021) ...........................................................................................9

*Collins v. Yellen*,
    594 U.S. 220 (2021)..................................................................................... *passim*

*Crowell v. Benson*,
    285 U.S. 22 (1932)......................................................................................................14

*Decker Coal Co. v. Pehringer*,
    8 F.4th 1123 (9th Cir. 2021) ...........................................................................................4

*Energy Transfer, LP v. NLRB,*
— F. Supp. 3d —, 2024 WL 3571494 (S.D. Tex. July 29, 2024) ..........................3, 10, 12, 18

*FCC v. Fox Television Stations, Inc.,*
567 U.S. 239 (2012) ................................................................................................18

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) ........................................................................................ *passim*

*Freytag v. Comm'r,*
501 U.S. 868 (1991) ..................................................................................................7

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,*
23 F.3d 1071 (6th Cir. 1994) ..................................................................................20

*Granfinanciera, S.A. v. Nordberg,*
492 U.S. 33 (1989) ..................................................................................................13

*Humphrey's Executor v. United States,*
295 U.S. 602 (1935) ..................................................................................................5

*Jarkesy v. SEC,*
34 F.4th 446 (5th Cir. 2022) ............................................................................ *passim*

*Kelso v. U.S. Dep't of State,*
13 F. Supp. 2d 12 (D.D.C. 1988) ..............................................................................7

*Kendall Holdings, Ltd. v. Eden Cryogenics LLC,*
630 F. Supp. 2d 853 (S.D. Ohio 2008) ...................................................................20

*Kentucky v. Biden,*
57 F.4th 545 (6th Cir. 2023) ...................................................................................19

*Leachco, Inc. v. Consumer Prod. Safety Comm'n,*
103 F.4th 748 (10th Cir. 2024) ...........................................................................4, 18

*Lucia v. SEC,*
585 U.S. 237 (2018) ........................................................................................ *passim*

*Morrison v. Olson,*
487 U.S. 654 (1988) ..................................................................................................7

*Myers v. United States,*
272 U.S. 52 (1926) ..........................................................................................2, 4, 5, 7

*N. Pipeline Constr.. Co. v. Marathon Pipe Line Co.,*
458 U.S. 50 (1982) ..................................................................................................13

*N. Secs. Co. v. United States*,
    193 U.S. 197 (1904)........................................................................................15

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
    415 U.S. 1 (1974)............................................................................................19

*Scottsdale Cap. Advisors Corp. v. FINRA*,
    678 F. Supp. 3d 88 (D.D.C. 2023) ...............................................................18

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020)................................................................................ *passim*

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985).......................................................................................17

*United States v. Addyston Pipe & Steel Co.*,
    85 F. 271 (6th Cir. 1898) ..............................................................................15

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021)..........................................................................................11

*Walmart Inc. v. King*,
    2024 WL 1258223 (S.D. Ga. Mar. 25, 2024) ................................................3

*Wright v. Spaulding*,
    939 F.3d 695 (6th Cir. 2019) .......................................................................4, 7

**Statutes and Regulations**

5 U.S.C. § 1202...............................................................................................2, 6, 11

5 U.S.C. § 7521...............................................................................................2, 3, 11

15 U.S.C. § 41.........................................................................................................4

15 U.S.C. § 53.......................................................................................................17

16 C.F.R. § 4.7......................................................................................................13

**Other Authorities**

William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511 (2020)......................13

Jeffrey W. Brennan & Sean P. Pugh, *Inova and the FTC's Revamped Merger
    Litigation Model*, 23 Antitrust 28 (2008)................................................................17

Linda D. Jellum, *"You're Fired!" Why the ALJ Multi-Track Dual Removal
    Provisions Violate the Constitution & Possible Fixes*, 26 Geo. Mason L. Rev.
    705 (2019)............................................................................................................11

S. Rep. No. 95-969 (1978) ........................................................................................................12

Supreme Court of the United States, Office of the Reporter of Decisions, *The Supreme Court's Style Guide* (2016) .......................................................................................7

## **INTRODUCTION**

To maintain that the challenged administrative proceeding does not transgress the separation of powers, the FTC asks this Court to ignore controlling Supreme Court precedent and break new constitutional ground.  First, the FTC proposes a new exception to the President's removal power, even though the Supreme Court has repeatedly rebuffed efforts to treat certain Officers of the United States differently because they may perform adjudicatory functions as part of their executive duties.  Second, the FTC proposes a new application of the public rights exception that would allow agencies to adjudicate private rights in-house so long as the underlying statute was enacted for the public good—an exception that would swallow the rule.

Invoking Supreme Court precedent regarding the retrospective relief available to parties *previously* the subject of an unconstitutional proceeding, the FTC also contends that Kroger must somehow show that the outcome of a pending administrative proceeding would change under a different removal framework.  But Kroger challenges an unconstitutional proceeding happening *now*; it is not seeking to void final agency action in the past or future.  The difficulty of obtaining relief after the conclusion of an unconstitutional proceeding is precisely why the Supreme Court in *Axon* allowed for a private right of action like this one.

Contrary to the FTC's hyperbole, Kroger does not seek to "prevent the [FTC] from examining [the] proposed acquisition" or "to disrupt a parallel preliminary injunction proceeding in the District of Oregon."  Opp'n 1.  And Kroger does not challenge the authority of the FTC generally to conduct administrative proceedings.  Kroger asks only to be relieved from a pending proceeding that violates both Article II and Article III of the Constitution.  The Court should grant the preliminary injunction.

## ARGUMENT

I.   **Kroger is likely to succeed in showing that the administrative proceeding is unconstitutional.**

    A.   **The ALJ overseeing the proceeding is unconstitutionally insulated from removal.**

Officers of the United States generally must be removable at will by the President.  *See Myers v. United States*, 272 U.S. 52, 135 (1926).  The Supreme Court has recognized "*only two* exceptions" to that rule:  (1) for-cause removal protection for "expert agencies led by a *group* of principal officers removable by the President only for good cause," *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020) (first emphasis added) (citing *Humphrey's Executor v. United States*, 295 U.S. 602 (1935)); and (2) for-cause removal protection for "certain *inferior* officers with narrowly defined duties," *id.* (citing *Morrison v. Olson*, 487 U.S. 654 (1988)).  "These two exceptions . . . represent what up to now have been the *outermost constitutional limits* of permissible congressional restrictions on the President's removal power."  *Id.* at 218 (emphasis added; quotation marks omitted).  The Court has repeatedly rejected efforts to introduce more exceptions, including by striking down a scheme that afforded inferior Officers two layers of for-cause removal protection.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010).

This case requires nothing more than a straightforward application of that settled precedent.  The FTC does not dispute, because it cannot, that FTC ALJs are "Officers of the United States." *See Lucia v. SEC*, 585 U.S. 237, 241 (2018).  And those ALJs can be removed only for cause "established and determined" by members of the MPSB, 5 U.S.C. § 7521(a), who themselves may be removed only for cause, *id.* § 1202.  Under *Free Enterprise Fund*, that structure does not fall within either of the recognized exceptions to the removal power and thus "contravene[s] the Constitution's separation of powers."  561 U.S. at 492.

2

This Court would not be the first to reach this inevitable conclusion.  As set forth in Kroger's moving brief, *see* Mot. 10, the Fifth Circuit squarely held that ALJs of the Securities and Exchange Commission, who likewise are protected by two layers of for-cause removal, are unconstitutionally insulated from the President's oversight.  *Jarkesy v. SEC*, 34 F.4th 446, 463–65 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024).  A federal court in Georgia came to the same conclusion with respect to the ALJs within the Department of Justice.  *See Walmart Inc. v. King*, 2024 WL 1258223, at *3-4 (S.D. Ga. Mar. 25, 2024), *appeal filed*, No. 24-11733 (11th Cir. May 22, 2024).  And three federal courts in Texas have now concluded that ALJs of the National Labor Relations Board are unconstitutionally protected from removal.  *See Aunt Bertha v. NLRB*, 2024 WL 4202383, at *2 (N.D. Tex. Sept. 16, 2024); *Energy Transfer, LP v. NLRB*, — F. Supp. 3d —, 2024 WL 3571494, at *2 (S.D. Tex. July 29, 2024); *Space Expl. Technolo-Gies Corp. v. NLRB*, — F. Supp. 3d —, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024), *appeal filed*, No. 24-50627 (5th Cir. Aug. 1, 2024).  The same result should obtain here with respect to the FTC's ALJs.

### 1.    The FTC's defense of the removal structure fails.

In attempting to defend the constitutionality of giving its ALJs two layers of removal protections, the FTC offers a scattershot of arguments.  None hits the mark.

*First*, the FTC urges that *Free Enterprise Fund* does not apply here because an FTC ALJ is removable only by the FTC itself and not by the MSPB.  Opp'n 8.  As support, the FTC cites a one-line summary motion order from the Eighth Circuit denying a motion for an injunction pending appeal.  *See* Opp'n 8–9 (citing Dkt. 15-2).  But that order provides no reasoning and certainly does not indicate that the Eighth Circuit "rejected" any particular argument.

In any event, the relevant statute is clear that an ALJ may be removed "only for good cause *established and determined*" by the MSPB.  5 U.S.C. § 7521(a) (emphasis added).  Moreover, even

were the FTC correct in describing the MSPB's role, it would not matter, because the FTC admits

that the removal action must be initiated "by the agency in which the administrative law judge is

employed," Opp'n 8 (citing 5 U.S.C. § 7521(a)), and the Commissioners of the FTC enjoy the

*exact same* for-cause removal protection as members of the MSPB, *see* 15 U.S.C. § 41. Thus, in

the FTC's telling, there are at least two, and possibly *three*, layers of for-cause protection insulating

the FTC ALJs from the President's oversight as required by Article II. That exacerbates, rather

than alleviates, the constitutional problem identified in *Free Enterprise Fund*.

*Second*, citing a footnote of dicta in *Free Enterprise Fund*, the FTC argues that ALJs are

different from other types of executive Officers because they may "perform adjudicative rather

than enforcement or policymaking functions." Opp'n 10 (citing *Free Enter. Fund*, 561 U.S. at 507

n.10). Although some courts have accepted a similar argument, *see Leachco, Inc. v. Consumer

Prod. Safety Comm'n*, 103 F.4th 748, 764 (10th Cir. 2024), *petition for cert. docketed*, No. 24-156

(U.S. Aug. 13, 2024); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133–35 (9th Cir. 2021), the

Sixth Circuit has correctly recognized that such dicta is "liable to misinterpretation with

snowballing consequences," *Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019). And indeed,

since *Free Enterprise Fund*, the Supreme Court has clarified that the single layer of for-cause

removal protection allowed for "certain *inferior* officers with narrowly defined duties" is already

at the "outermost constitutional limits." *Seila Law*, 591 U.S. at 204, 218 (quotation marks

omitted). The mere fact that *Free Enterprise Fund* reserved the issue in this case does not answer

the question whether the combined holdings of *Myers*, *Free Enterprise Fund*, *Lucia*, and *Seila Law*

foreclose the new exception the FTC advocates for here. They do.

The performance of "adjudicative rather than enforcement or policymaking functions" by

ALJs does not justify the creation of a new exception to the removal power. The Supreme Court

has recognized that the activities of administrative agencies sometimes "take 'legislative' and 'judicial' forms, but they are exercises of—indeed, under our constitutional structure they *must* be exercises of—the 'executive Power.'" *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013). As the Supreme Court observed in its "landmark" decision on removal, *Seila Law*, 591 U.S. at 204; *Free Enter. Fund*, 561 U.S. at 492, even when there are "duties of a quasi judicial character imposed on executive officers and members of executive tribunals whose decisions after hearing affect interests of individuals," Article II demands that the President retain the authority to remove an officer exercising those duties "on the ground that the discretion regularly entrusted to that officer by statute has not been on the whole intelligently or wisely exercised," *Myers*, 272 U.S. at 135. ALJs are within the Executive Branch, not the Judiciary; they exercise only Executive power (even if loosely termed quasi-adjudicative) and thus must be subject to control by the President.[1]

The FTC also overlooks the origins of the removal power and its relationship to the appointment power. In *Myers*, the Court explained that "the power of appointment to executive office carries with it, as a *necessary incident*, the power of removal." 272 U.S. at 126 (emphasis added). Accordingly, "in the absence of any express limitation respecting removals, . . . as [the President's] selection of administrative officers is essential to the execution of the laws by him, so must be his power of removing those for whom he cannot continue to be responsible." *Id.* at 117. Accordingly, because ALJs are subject to the *appointment* power of the Executive, *see Lucia*, 585 U.S. at 251, the "necessary incident" to that conclusion is that those ALJs also are subject to the *removal* power of the Executive, *Myers*, 272 U.S. at 126. And while that removal power is not unlimited, it cannot be reduced to a nullity. *See Free Enter. Fund*, 561 U.S. at 496–97.

---

[1] To the extent any discussion in *Humphrey's Executor* could be read to suggest otherwise, the Court has long since "back[ed] away from the reliance in *Humphrey's Executor* on the concepts of 'quasi-legislative' and 'quasi-judicial' power." *Seila Law*, 591 U.S. at 217.

*Third*, the FTC urges that it has more control over the functions of FTC ALJs than the SEC did over the Public Company Accounting Oversight Board ("PCAOB") functions at issue in *Free Enterprise Fund*.  Opp'n 10–11.  *Free Enterprise Fund* forecloses that argument:  "Broad power over [PCAOB] functions is not equivalent to the power to remove Board members."  561 U.S. at 504.  Instead, the level of independence an ALJ enjoys goes to the question of whether that ALJ is an Officer of the United States *at all*.  *See Lucia*, 585 U.S. at 248–49 (discussing the "independent effect" of the decisions made by SEC ALJs).  Since there is no dispute that FTC ALJs are inferior Officers, the relative independence of the FTC ALJs is immaterial.

*Fourth*, the FTC claims that the "good cause" standard for removing FTC ALJs is not as onerous as that at issue in *Free Enterprise Fund*.  Opp'n 11.  This argument ignores the top layer of removal protection, which permits removal of the MSPB members "only for inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202.  And it also ignores that a single layer of for-cause removal for inferior Officers, however articulated, is already at the "outermost constitutional limits."  *Seila Law*, 591 U.S. at 218 (quotation marks omitted).  In *Collins v. Yellen*, 594 U.S. 220 (2021), the Court rejected the exact same distinction between "for cause" removal and removal for "inefficiency, neglect of duty, or malfeasance" the FTC advances here.  *Id.* at 255–56 ("'[F]or cause' does not mean the same thing as 'at will.'" (alteration and quotation marks omitted)).  And even in *Free Enterprise Fund*, the Court described the scheme before it as "not only protect[ing] Board members from removal except for *good cause*, but withdraw[ing] from the President any decision on whether that *good cause* exists."  561 U.S. at 495 (emphases added).  That is the precise structure here.

*Finally*, the FTC relies on dicta from *Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022), *rev'd*, 598 U.S. 623 (2023) (per curiam).  *See* Opp'n 9–10.  The Supreme Court summarily *reversed* that

opinion and judgment—in full, not "in part," Opp'n 4 n.1—based on a threshold error regarding the legal rationales the panel was permitted to consider, *see Calcutt*, 598 U.S. 623 (per curiam). And an opinion reversed by the Supreme Court has no precedential significance: "To reverse a judgment means to overthrow it by contrary decision, make it void, undo or annul it for error." *Kelso v. U.S. Dep't of State*, 13 F. Supp. 2d 12, 18 (D.D.C. 1988); *see also* Supreme Court of the United States, Office of the Reporter of Decisions, *The Supreme Court's Style Guide* X-12 (2016) (Supreme Court's internal guidelines stating that the Court "reverse[s]" a decision "if it deems the judgment below to be absolutely wrong").

Additionally, the relevant passage from *Calcutt* is dicta. While the panel in that nullity of a decision expressed some "doubt" as to the Article II question raised, it ultimately rejected relief on the ground that the petitioner could establish no injury arising out of the constitutional violation. 37 F.4th at 301, 318–19; *see also Wright*, 939 F.3d at 701 (the rules of dicta "help[] distinguish a case of true independent holdings . . . from one in which a court *decides* one issue and merely *opines* about another"). The portion of the reversed panel decision in *Calcutt* on which the FTC relies is thus twice removed from anything even approaching binding precedent.

This single paragraph of overruled dicta in *Calcutt* is not persuasive. For example, nowhere did the panel address *Myers* or the Court's more recent pronouncements that an Officer's "quasi-judicial" functions are not relevant to the removal analysis. *See Morrison*, 487 U.S. at 689. The panel noted that FDIC ALJs "file a recommended decision that is subject to review by the FDIC Board." *Calcutt*, 37 F.4th at 319. But as discussed above, *Free Enterprise Fund* rejects that reasoning. 561 U.S. at 504; *see also Freytag v. Comm'r*, 501 U.S. 868, 881 (1991) (administrative judge's inability to enter final decision is immaterial to Officer analysis). The panel also suggested that Congress had not "tied the President's hands" because FDIC ALJs must conduct "hearings in

accordance with the provisions of the APA." *Calcutt*, 37 F.4th at 319 (alteration and quotation marks omitted). But of course, *all* Officers of the United States act pursuant to some structure of process and authority; those Officers still are subject to removal by the President.

> **2.** **Collins does not bar injunctive relief against an ongoing unconstitutional proceeding.**

Perhaps recognizing that the removal restrictions render the administrative proceeding unconstitutional, the FTC seeks to sidestep the merits by arguing that Kroger is entitled to no prospective injunctive relief because it cannot prove that the removal restrictions are likely to alter the outcome in the administrative proceeding. Opp'n 4–6. This argument fundamentally misunderstands *Collins*, *Axon*, and the ongoing injury Kroger faces.

In *Collins*, the Supreme Court considered a challenge to the removal protection afforded to the Director of the Federal Housing Finance Agency. 594 U.S. at 226–27. After concluding that the Director's for-cause removal protection violated Article II, the Court examined the "remedial question[s] concern[ing] retrospective relief." *Id.* at 257. The Court held that the constitutional defect did not render prior Directors' actions void *ab initio*, because those Directors had been "properly *appointed*." *Id.* at 257–58. Instead, the Court instructed that in order to obtain relief, the challengers would have to prove on remand that the "unconstitutional restriction on the President's power to remove a Director of the FHFA" caused harm redressable through retrospective relief. *Id.* at 259–60. Following *Collins*, the panel in *Calcutt* correctly opined that to "*invalidate an agency action* due to a removal violation, [the] constitutional infirmity must 'cause harm' to the challenging party." *Calcutt*, 37 F.4th at 316 (emphasis added).

Kroger is not seeking to "invalidate an agency action"; it is seeking prospective equitable relief from an *ongoing* unconstitutional proceeding. Unlike the challengers in *Collins*, who "no longer ha[d] a live claim for prospective relief," 594 U.S. at 257, Kroger *does* have a live claim

for prospective relief. And under both *Seila Law* and *Axon*, there is no question that Kroger's subjection to an unconstitutional proceeding is a cognizable "here-and-now injury" that justifies prospective relief. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023); *Seila Law*, 591 U.S. at 212. And for *that* injury, the general requirement in *Collins* and other cases that the constitutional injury be tied to the relief sought is easily met. Otherwise, *Axon* would be rendered a dead letter.

Indeed, had Kroger waited to bring this lawsuit until after the conclusion of the Part 3 proceeding, it would have faced a steep hill in order to obtain retrospective relief. But as the Supreme Court explained in *Axon*, that is *precisely* why injunctive relief is needed:

> The harm [the plaintiffs] allege is being subjected to unconstitutional agency authority—a proceeding by an unaccountable ALJ. That harm may sound a bit abstract; but this Court has made clear that it is a here-and-now injury. And—here is the rub—*it is impossible to remedy once the proceeding is over*, which is when appellate review kicks in. . . . A proceeding that has already happened cannot be undone.

*Axon*, 598 U.S. at 191 (emphasis added) (quotation marks omitted); *see also Cochran v. SEC*, 20 F.4th 194, 233 (5th Cir. 2021) (Oldham, J., concurring) (noting that *Collins* may leave "challengers with meritorious removability claims . . . without any remedy if they are forced to wait until after enforcement proceedings conclude"), *aff'd sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). If the Court does not grant prospective injunctive relief now, Kroger will have to endure an unconstitutional proceeding—a "here-and-now" injury, *Axon*, 598 U.S. at 191—but will have limited prospects for retrospective relief.

Unsurprisingly, then, courts have held that *Collins* does not bar prospective injunctive relief against ongoing administrative proceedings. Three courts striking down comparable removal schemes have rejected the exact argument raised by the FTC here, explaining that the harm of "having to participate in a constitutionally defective administrative process," "is both directly caused by the unconstitutional removal provisions and directly redressed by the requested

relief." *Energy Transfer*, 2024 WL 3571494, at *4; *see also Aunt Bertha*, 2024 WL 4202383, at *3; *Space Expl.*, 2024 WL 3512082, at *6.  Even the FTC's *own* authority agrees:  The district court in *H&R Block Inc. v. Himes* summarily rejected the same argument raised by the FTC here. 2024 WL 3742310, at *2 n.2 (W.D. Mo. Aug. 1, 2024) (*Collins* presents no bar to relief "because Plaintiffs allege they face the 'here-and-now-injury' of 'being subject to unconstitutional agency authority—a proceeding by an unaccountable ALJ"), *appeal filed*, No. 24-2626 (8th Cir. Aug. 9, 2024).

To be sure, not all requests for prospective relief automatically satisfy the requirement in *Collins* that the relief be tied to the injury.  For example, if a party seeks to "void an agency action" that applies prospectively (e.g., a cease-and-desist order), the challenge is still fundamentally to the *outcome* of an administrative proceeding or decision, and therefore does not give rise to the kind of ongoing "here-and-now injury" examined in *Axon*.  *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023); *see also Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 631–33 (5th Cir. 2022) (*Collins* standard not satisfied by plaintiff seeking vacatur of rule), *rev'd*, 601 U.S. 416.  The difference here is that Kroger is challenging the proceeding itself (as authorized by *Axon*), not the power of the FTC to take or enforce final agency action.  Because Kroger is suffering a live injury redressable through injunctive relief, *Collins* is no impediment.

### 3.    Severability is inappropriate and premature.

Finally, the FTC urges that if the FTC ALJs are unconstitutionally protected from removal, the solution for the Court should be to "sever[]" the "offending removal provisions."  Opp'n 13. Conspicuously, though, the FTC does not actually identify *which* "offending removal provision[]" should be severed—the one applying to the FTC ALJs or the one applying to members of the MSPB (or the one applying to the Commissioners themselves).  That is for good reason.

Unlike in other contexts—where a discrete statutory provision is unconstitutional in its entirety and can be stricken without disrupting the larger statutory scheme, *see United States v. Arthrex, Inc.*, 594 U.S. 1, 24–25 (2021)—"there is no easy fix" for the FTC ALJ removal provisions, Linda D. Jellum, *"You're Fired!" Why the ALJ Multi-Track Dual Removal Provisions Violate the Constitution & Possible Fixes*, 26 Geo. Mason L. Rev. 705, 707 (2019). The removal provision of 5 U.S.C. § 7521(a) applies to *all* ALJs, not just those within the FTC; and the removal provision of 5 U.S.C. § 1202 applies to the members of the MPSB regardless of what kind of civil servant is the subject of the removal proceeding. Neither of those provisions could be stricken based solely on the fact that the FTC ALJs are unconstitutionally protected from removal, as doing so would have ramifications far beyond the scope of this case. *See* Jellum, *supra*, at 707 (a decision striking 5 U.S.C. § 7521(a) would "ha[ve] the potential to affect all ALJs"); *see also Free Enter. Fund*, 561 U.S. at 509 (severance appropriate only where "[t]he remaining provisions are not 'incapable of functioning independently'"). And the Court cannot exercise "editorial freedom" or "blue-pencil" the statute in order to craft an alternative statutory structure that would carve FTC ALJs out from these removal provisions. *Free Enter. Fund*, 561 U.S. at 509–10.

Moreover, even if the Court could devise a remedy that affected *only* the FTC ALJs, there are at least two different layers of removal protection here, and the statute gives no indication "which, if any, Congress would be willing to give up." *Space Expl.*, 2024 WL 3512082, at *5. There are policy justifications for both layers of for-cause removal protection. With respect to the bottom layer for ALJs, "[t]he substantial independence that the Administrative Procedure Act's removal protections provide to administrative law judges is a *central part* of the Act's overall scheme." *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment and dissenting in part) (emphasis added). As for the MSPB, the removal provision was explicitly designed to "ensure[]"

11

that the Merits System Protection Board *will be independent* of the direction and control of the President." *See* S. Rep. No. 95-969, at 29 (1978) (emphasis added). In light of those express congressional objectives, this Court cannot determine whether Congress would have implemented the current ALJ or MSPB systems without these removal provisions, and certainly cannot determine *which* of the two removal provisions should be severed.

In any event, any discussion of severance is premature. As other courts have recognized, severance is appropriate as a form of declaratory judgment only *after* a provision has been finally determined to be unconstitutional. *See Aunt Bertha*, 2024 WL 4202383, at *3; *Energy Transfer*, 2024 WL 3571494, at *4; *Space Expl.*, 2024 WL 3512082, at *5. But this motion will produce no final declaration of unconstitutionality—Kroger seeks a *preliminary* injunction based on a *likelihood* of success on the merits. There is no "preliminary declaratory relief."

> **B.    The administrative proceeding unconstitutionally usurps judicial power.**

The parties agree that the likelihood of success on Kroger's second claim—arising under Article III—depends on whether the Part 3 proceeding concerns private rights (which must be adjudicated by an Article III court) or public rights (which may sometimes be adjudicated by an administrative tribunal). And the FTC does not dispute that the "public rights exception" is just that: "an *exception*" to the general requirement that the government must proceed in an Article III court when it attempts to curtail or restrict its citizens' rights. *Jarkesy*, 144 S. Ct. at 2134. The only question is whether the FTC has established that the exception applies here. It has not.

> **1.    There is no basis to extend the public rights exception to Part 3 merger proceedings.**

The FTC agrees that cases concerning "public rights" are those that "historically could have been determined *exclusively* by the executive and legislative branches." *Jarkesy*, 144 S. Ct. at 2132 (emphasis added) (alteration and quotation marks omitted). At the same time, it cannot be

seriously questioned that the Part 3 proceeding seeks to adjudicate Kroger's "private rights to life, liberty, or property." William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511, 1542 (2020). Indeed, as in *Jarkesy*, "[t]he object of this [administrative] action is to regulate transactions between private individuals interacting in a pre-existing market." *Jarkesy*, 144 S. Ct. at 2136.[2]

Noticeably, the FTC has no response to the fact that it "has not lost *a single case* in the past quarter-century" brought in its administrative court. *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021) (emphasis added), *rev'd*, 598 U.S. 175 (2023). The FTC's self-preferencing is already on display in the proceeding against Kroger: Although FTC complaint counsel is formally walled off from conferring with the Commissioners after an administrative complaint has been filed, *see* 16 C.F.R. § 4.7, Chair Khan recently issued a separate opinion offering *advice* to complaint counsel about evidentiary considerations that might arise during the evidentiary hearing, *see* Ex. A, at 2 n.2. As Chair Khan will preside over any appeal from the ALJ's decision, this instruction is tantamount to a Sixth Circuit judge telling this Court how to rule on an evidentiary matter while trial is ongoing. This kind of blurring between the prosecutorial and adjudicative functions, unfortunately prevalent in administrative adjudication, is precisely why the Constitution contemplates that *independent* Article III courts will adjudicate private rights like those here. *See N. Pipeline Constr.. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 59–60 (1982) (plurality op.).

---

[2] The FTC argues that *Jarkesy* is inapposite because the case addressed the Seventh Amendment right to a jury trial. *See* Opp'n 17–18. But while the Supreme Court ultimately held that the administrative adjudication at issue there violated the Seventh Amendment, the government's argument was based on the application of the public rights exception. *Jarkesy*, 144 S. Ct. at 2131. "[T]he question whether the Seventh Amendment permits Congress to assign its adjudication to a tribunal that does not employ juries as factfinders requires the same answer as the question whether Article III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989) (analyzing Article III authorities in addressing Seventh Amendment question).

Despite bearing the burden of proving that the exception applies, the FTC is unable to offer any case arising under the public rights exception upholding an administrative proceeding even remotely resembling the kind at issue here. The FTC cites to *Crowell v. Benson*, 285 U.S. 22 (1932), but *Crowell* simply pointed to the FTC as an example of an "administrative agenc[y] created for the determination of" public rights. 285 U.S. at 51 & n.13. Just because the agency *itself* was created principally for the determination of public rights does not mean that every proceeding brought by (or before) that agency's captive tribunal falls within the public rights exception. Moreover, the Court's observation was premised on the view in *Crowell* that public rights are "those which arise between the government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Id.* at 50. But as *Jarkesy* makes clear, the Court has "never held that the presence of the United States as a proper party to the proceeding is sufficient by itself to trigger the exception." 144 S. Ct. at 2136 (alteration and quotation marks omitted).

Beyond *Crowell*, the FTC cites only to cases generally upholding the FTC's administrative proceeding structure against separation-of-powers challenges, *see* Opp'n 24, and discussing the FTC's role in promoting the public interest, *see id.* at 15–17. Kroger, however, is not making a broadside attack against the FTC itself or even FTC administrative proceedings outside the context of merger challenges: Kroger is arguing only that *this* claim in *this* context unconstitutionally deprives Kroger of an Article III forum. The fact that the FTC generally may adjudicate some administrative proceedings is no answer to the scores of cases cited by Kroger showing that the public rights exception has been confined to a narrow set of cases regarding government-created rights or comprehensive regulatory schemes. *See* Mot. 14–15 (collecting cases).

### 2. The FTC's remaining arguments are unavailing

The FTC's other efforts to justify application of the public rights exception uniformly fail.

*First*, the FTC cites the public interest goals of the antitrust laws.  Opp'n 15–17.  Almost by definition, though, all government legislation or regulation is intended to benefit the public good.  *See Federalist No. 41* (James Madison) ("[I]n all cases where power is to be conferred [on the federal government], the point first to be decided is, whether such a power be necessary to the public good . . . .").  The public rights exception turns on, naturally, the *rights* at issue, not the underlying *purpose* of the legislative scheme effected:  "What matter[s] . . . [is] the substance of the suit."  *Jarkesy*, 144 S. Ct. at 2135.

*Second*, the FTC contends that merger claims have no common-law origins.  Opp'n 21–23.  The FTC also admits, however, that "'restraint of trade' . . . had a well-understood meaning at common law," *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 494–95 (1940), and that "[c]ontracts that were unreasonable restraint of trade at common law . . . were simply void," *United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 279 (6th Cir. 1898) (Taft, J.), *aff'd as modified*, 20 S. Ct. 96 (1899); *see also* Opp'n 22.  The Sherman Act created some new *remedies*, but the principal remedy the FTC seeks here—to enjoin enforcement of the merger agreement—is functionally equivalent to the remedy available at common law to render restraints against trade void.

The FTC further argues that while the Sherman Act may have some common-law origins, the Clayton Act does not.  *See* Opp'n 22.  The FTC overlooks the authority cited by Kroger showing that prior to the Clayton Act, parties used the *Sherman Act* to successfully challenge mergers and acquisitions based on these common-law principles.  *See N. Secs. Co. v. United States*, 193 U.S. 197, 325–28 (1904); *see also* Mot. 13.  The Clayton Act did not fundamentally alter the

underlying nature of the action or the rights implicated. *See Jarkesy*, 144 S. Ct. at 2136 (observing that the private rights claims in *Jarkesy* were "modeled on common law fraud").[3]

More broadly, the FTC incorrectly assumes that any minor deviation from common law is sufficient to invoke the public rights exception. It is not. If Congress could avoid Article III just by targeting a slightly different form of conduct than that addressed by the common law, the distinction between private and public rights would have little meaning. *Cf. Jarkesy*, 144 S. Ct. at 2139 (rejecting interpretation that would render public rights exception "nothing more than a game"). Instead, the Supreme Court has applied the public rights exception only when the statutes and regulations at issue do not simply "reiterate common law terms of art," but "instead resemble[] a detailed building code." *Id.* at 2137. But "[t]he antecedents of antitrust regulation lie in the common law doctrine of 'restraint of trade,'" and "[e]nsuring market competition had once been the province of judges through their enforcement of common law prohibitions against 'restraints of trade.'" Laura Phillips Sawyer, *U.S. Antitrust Law & Policy in Historical Perspective* 2, 5, Harv. Bus. Sch., working paper 19-110 (2019). The Clayton Act "target[s] the same basic conduct as common law [restraint of trade], employ[s] the same terms of art, and operate[s] pursuant to similar legal principles." *Jarkesy*, 144 S. Ct. at 2136. Adjudication of Kroger's rights under a statutory scheme with that common law pedigree cannot be wrested away from Article III courts.

*Third*, the FTC argues that "the administrative proceeding does not involve private rights merely because it implicates Kroger's property rights." Opp'n 23. That superficial rejoinder ignores the Supreme Court's directive that "where private, common law rights are at stake, [the

---

[3] The FTC also discusses the origins of the FTC Act. Opp'n 19–20. But the administrative proceeding *here* seeks, among other things, to enjoin a merger on the basis of the Clayton Act. And the FTC of course cannot remove a proceeding from the ambit of Article III simply by *adding* an additional theory of "unfair" competition (which in this context is indistinguishable from the Clayton Act standard).

Court's] examination of the congressional attempt to control the manner in which those rights are adjudicated has been *searching*." *CFTC v. Schor*, 478 U.S. 833, 854 (1986) (emphasis added). And the problem here is not simply that the Part 3 proceeding may "affect private interests," *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 583 (1985), but rather that the proceeding will *directly adjudicate* Kroger's property and liberty interests by enjoining the consummation of a private business contract. The private, $25-billion merger agreement here implicates the interests of customers, shareholders, and tens of thousands of employees. The private rights at stake are both manifold and manifest.

*Finally*, the FTC contends that removing Clayton Act merger claims from the FTC's administrative proceedings would "impede" the agency's enforcement efforts. Opp'n 25. Not so. The FTC does not dispute that it has the power to pursue in federal court a permanent injunction of a merger that may substantially lessen competition in a relevant antitrust market. *See* 15 U.S.C. § 53(b)(2). The Department of Justice brings merger challenges *exclusively* in federal court; there is no reason the FTC could not do otherwise. And the FTC cites no authority indicating that Part 3 proceedings move more swiftly than federal court proceedings. *Cf.* Jeffrey W. Brennan & Sean P. Pugh, *Inova and the FTC's Revamped Merger Litigation Model*, 23 Antitrust 28, 31 (2008) (describing multi-year administrative process). The FTC cannot use its own administrative proceeding as an end-run around Article III and the significant protections afforded by an independent Judiciary.

## II. Kroger will suffer irreparable harm absent an injunction.

Kroger identified three forms of irreparable harm it will suffer if the Part 3 proceeding goes forward: (1) being subjected to an unconstitutional proceeding, (2) incurring unrecoverable compliance costs, and (3) facing uncertainty. The FTC does not refute Kroger's evidence of irreparable injury and instead makes a series of legal arguments. None has merit.

*First*, the FTC contends that Kroger "overreads *Axon*," because that case did not directly address irreparable harm. Opp'n 26. *Axon*, however, stated in unequivocal terms that a party subject to an unconstitutional proceeding suffers a "here-and-now injury" that "is impossible to remedy once the proceeding is over." 598 U.S. at 191. That is the language of irreparable harm, as numerous courts have recognized in comparable circumstances. *See Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307, at *2 (D.C. Cir. July 5, 2023) (Walker, J., concurring); *Aunt Bertha*, 2024 WL 4202383, at *4; *Space Expl.*, 2024 WL 3512082, at *6; *Energy Transfer*, 2024 WL 3571494, at *4; *Scottsdale Cap. Advisors Corp. v. FINRA*, 678 F. Supp. 3d 88, 110–11 (D.D.C. 2023), *appeal filed*, No. 23-5129 (D.C. Cir. June 8, 2023).

The FTC cites the Tenth Circuit's decision in *Leachco*, Opp'n 26, which relied on the Supreme Court's statement in *Collins* that the "here-and-now" language in *Seila Law* should "not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction," *Leachco*, 103 F.4th at 759 (quotation marks omitted). But that statement in *Collins* was in the context of the Court's explanation that *Seila Law*'s "holding on standing does not mean that actions taken by [an unconstitutional] officer are void *ab initio* and must be undone." 594 U.S. at 258 n.24. *Collins* was concerned with what kind of remedy is appropriate for a *past* proceeding before an unconstitutional Officer, not with whether an ongoing unconstitutional proceeding presents irreparable harm. That is the issue *Axon* addressed.

The FTC continues to raise the possibility that the Part 3 proceeding might be delayed, *see* Opp'n 27, while ignoring that Kroger sought precisely that relief *from the Commission itself*— which denied Kroger's request, *see* Dkt. 16, at 14–15. Unless and until there is an enforceable commitment or order by the FTC (a named defendant in this action) staying the proceeding, the threat of harm to Kroger is real. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 255

(2012) (government's "assurance" not to act "is insufficient to remedy the constitutional violation").

*Second*, the FTC challenges Kroger's assertion of irreparable injury arising out of the cost of litigating in an unconstitutional forum. Opp'n 27–28. The FTC misunderstands the harm claimed by Kroger: The issue is not that Kroger will incur "[m]ere litigation expense" as an incident of the Part 3 proceeding. *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974). Instead, the unconstitutional proceeding *itself* compels Kroger to appear and litigate the FTC's claims; that is an irreparable injury regardless of cost. Moreover, Kroger is incurring substantial compliance costs; and as those costs are unrecoverable, they are irreparable. *See Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023). The record in the Oregon proceeding establishes that *thousands* of people at Kroger have been working for months to close this transaction before the contractual outside date of October 9, 2024. If the FTC is permitted to use its unconstitutional administrative proceeding as a stalling tactic, that effort and expense could all be for naught.

*Third*, the FTC argues that a preliminary injunction will not relieve Kroger of the "uncertainty" of the Part 3 proceeding. Opp'n 28. But while a *preliminary* injunction will not provide Kroger with complete relief, Kroger is entitled to *some* amount of greater certainty as to whether it may consummate the merger without fear of later action by the FTC in an unconstitutional tribunal. And Kroger will seek permanent injunctive relief down the road to ensure that its constitutional rights are not further infringed (unless the FTC dismisses the entire challenge once the Oregon court rules).

*Finally*, the FTC contends that Kroger's purported delay in seeking relief weighs against irreparable harm. Opp'n 28–29. Kroger did not delay—it filed suit after *Jarkesy* was decided and

before the commencement of the evidentiary hearing in the Part 3 proceeding. *See* Dkt. 14. In any event, the reason delay can sometimes mitigate against a finding of irreparable harm is that where one party discovers that another party is engaging in harmful conduct (e.g., the use of trade secrets), "[a] delay between the discovery of the allegedly infringing conduct and the request for injunctive relief can support an inference that the alleged harm is not sufficiently severe or irreparable to justify injunctive relief." *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 867 (S.D. Ohio 2008). But here, the principal harm from which Kroger seeks relief—the evidentiary portion of the Part 3 hearing—has not yet started. Where preliminary relief is sought *before* the threatened harm has manifested, alleged delay is not a basis for denying relief.

### III.    The equities favor Kroger.

Regarding the equities, the FTC does not respond to Kroger's authorities holding that "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994), or that "no substantial harm can be shown in the enjoinment of an unconstitutional policy," *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004). It instead argues only that a preliminary injunction would impair the FTC's ability to protect the public from anticompetitive mergers. Opp'n 29. This argument rings hollow given that the Department of Justice exercises parallel authority without an administrative tribunal of its own, securing relief (where warranted) exclusively in federal court. The fact that the FTC might find it harder to win in an independent court than in its own captive tribunal is a reason for granting relief, not withholding it.

### CONCLUSION

For the foregoing reasons, Kroger respectfully requests that the Court preliminarily enjoin the FTC from maintaining the administrative proceeding against Kroger.

Dated: September 23, 2024

Respectfully submitted,

Nathaniel Lampley, Jr. (0041543)
Petra G. Bergman (0097990)
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street, Suite 3500,
Cincinnati, Ohio 45202
(513) 723-4000
nlampley@vorys.com
pgbergman@vorys.com

*/s/  Mark A. Perry*

Mark A. Perry (*pro hac vice*)
Joshua M. Wesneski (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7248

Daniel M. Lifton (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Plaintiff The Kroger Co.*