**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

THE KROGER CO.,              :
                                   :

            *Plaintiff,*        :      Case No. 1:24-cv-00438-DRC
                                     :

                                     :      District Judge Douglas R. Cole

     v.                                     :
                                     :

THE FEDERAL TRADE       :
COMMISSION, et al.,         :
                                     :

            *Defendants.*      :
                                     :

---

**BRIEF OF *AMICI CURIAE* OHIO, ALABAMA, GEORGIA, IOWA,
LOUISIANA, MONTANA, NEBRASKA, OKLAHOMA, SOUTH
CAROLINA, TENNESSEE, TEXAS, AND WEST VIRGINIA IN
SUPPORT OF THE PLAINTIFFS**

---

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION AND STATEMENT OF *AMICI* INTERESTS ............................... 1

BACKGROUND ........................................................................................ 3

    I.    The Commission's ALJs hear the agency's administrative actions............ 3

    II.   The Commission filed an administrative action to enjoin Kroger's merger. .......................................................................................... 5

ARGUMENT ........................................................................................... 6

    I.    The ALJ overseeing Kroger's adjudication enjoys unconstitutional removal protection. ........................................................................ 7

        A.    Article II imposes a general rule that the President must have unrestricted power to remove executive officers. ................................... 7

        B.    The Supreme Court has permitted only two exceptions to Article II's requirement of unrestricted removal. ...................................... 8

        C.    The Commission's ALJs fit neither of the exceptions to Article II's requirement of unrestricted removal. ................................... 10

        D.    In any case, ALJ's multiple levels of removal protections violate Article II .......................................................................... 13

    II.   This Court should not recognize a new exception to Article II's general rule of unrestricted removal. ....................................................... 15

CONCLUSION ...................................................................................... 21

CERTIFICATE OF SERVICE .................................................................... 22

# TABLE OF AUTHORITIES

**Cases**             **Page(s)**

*A. Philip Randolph Inst. v. Husted,*
907 F.3d 913 (6th Cir. 2018) ................................................................................ 7

*Abrams v. Soc. Sec. Admin.,*
703 F.3d 538 (Fed. Cir. 2012) ........................................................................... 5, 13

*AMG Cap. Mgmt., LLC v. FTC,*
593 U.S. 67 (2021) ................................................................................................ 3

*In re Axon Enter., Inc.,*
2020 WL 5406806 (F.T.C. Sept. 3, 2020) ....................................................*passim*

*Brennan v. Dep't of Health & Human Servs.,*
787 F.2d 1559 (Fed. Cir. 1986) .......................................................................... 5

*Butz v. Economou,*
438 U.S. 478 (1978) .......................................................................................... 4, 11

*City of Arlington, Tex. v. FCC,*
569 U.S. 290 (2013) ............................................................................... 1, 2, 10, 16

*Collins v. Yellen,*
594 U.S. 220 (2021) ............................................................................................ 9

*Decker Coal Co. v. Pehringer,*
8 F.4th 1123 (9th Cir. 2021) ............................................................................. 15

*Dep't of Labor v. Avery,*
120 M.S.P.R. 150 (2013) ................................................................................... 13

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) ..........................................................................................*passim*

*FTC v. The Kroger Co.,*
No. 24-cv-00347 (D. Or.) ................................................................................... 6

*H&R Block Inc. v. Himes,*
2024 WL 3742310 (W.D. Mo. Aug. 1, 2024) .......................................... 18, 19, 20

*Humphrey's Executor v. United States,*
295 U.S. 602 (1935) ........................................................................................... 8

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) ........................................................... 3, 14, 15

*In re Kroger,*
    Dkt. No. 9428 (FTC) ....................................................................... 6

*Lucia v. SEC,*
    585 U.S. 237 (2018) ...................................................................*passim*

*Morrison v. Olson,*
    487 U.S. 654 (1988) ...................................................................*passim*

*Myers v. United States,*
    272 U.S. 52 (1926) ......................................................................... 8, 17

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.,*
    416 U.S. 267 (1974) ...................................................................... 4, 12

*NLRB v. SW Gen., Inc.,*
    580 U.S. 288 (2017) ...................................................................... 9

*Seila Law LLC v. CFPB,*
    591 U.S. 197 (2020) ...................................................................*passim*

*SSA v. Brennan,*
    27 M.S.P.R. 242 (1985) ................................................................ 13

*SSA v. Levinson,*
    2023 M.S.P.B. 20 (July 12, 2023) ................................................ 13

*United States v. Arthrex, Inc.,*
    594 U.S. 1 (2021) .............................................................. 9, 11, 14, 15

*United States v. Perkins,*
    116 U.S. 483 (1886) ...................................................................*passim*

*Walmart Inc. v. King,*
    2024 WL 1258223 (S.D. Ga. Mar. 25, 2024) .......................... 15

*Wiener v. United States,*
    357 U.S. 349 (1958) ...................................................................... 8

**Statutes, Rules, and Constitutional Provisions**

U.S. Const. art. II, §3 .......................................................................... 7

16 C.F.R. Part 3 .................................................................................. 4

16 C.F.R. §0.14 ................................................................................................ 4

16 C.F.R. §3.22 .............................................................................................. 11

16 C.F.R. §3.41 ................................................................................................ 3

16 C.F.R. §3.42 .............................................................................. 4, 8, 11, 20

16 C.F.R. §3.52-54 ........................................................................................ 11

16 C.F.R. §3.54 ........................................................................................ 4, 11

17 C.F.R. §200.14 .......................................................................................... 20

17 C.F.R. §201.111 ........................................................................................ 20

17 C.F.R. §201.360 ........................................................................................ 20

5 U.S.C. §556 .................................................................................................. 4

5 U.S.C. §557 .................................................................................................. 4

5 U.S.C. §1201 ................................................................................................ 5

5 U.S.C. §1202 ...................................................................................... 2, 5, 14

5 U.S.C. §7521 ........................................................................................... 2, 4

15 U.S.C. §18 .................................................................................................. 6

15 U.S.C. §41 ...................................................................................... 2, 3, 14

15 U.S.C. §45 .............................................................................................. 3, 6

15 U.S.C. §53 .................................................................................................. 3

**Other Authorities**

Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747 (1999) ............................. 9

Harold J. Krent, *Presidential Control of Adjudication Within The Executive Branch*, 65 Case W. Reserve L. Rev. 1083 (2015) ................................. 16

Jack Beermann, *The Future of Administrative Law Judge Selection*, The Regulatory Review (Oct. 29, 2019) ............................................................... 16

Neomi Rao, *Removal: Necessary and Sufficient for Presidential Control*, 65 Ala. L. Rev. 1205 (2014) ............................................................................. 17

iv

Sec'y of Educ. Review of ALJ Decisions, 15 Op. O.L.C. 8 (1991) ..................... 4, 12, 16

## INTRODUCTION AND STATEMENT OF *AMICI* INTERESTS

The Constitution divides authority between the legislative, executive, and judicial branches of government, but ordinary Americans might be forgiven for thinking that many facets of the federal bureaucracy seem to exist outside of the traditional three branches of government. "The collection of agencies housed outside the traditional executive departments," the Chief Justice once wrote in dissent, "is routinely described as the 'headless fourth branch of government,' reflecting not only the scope of their authority but their practical independence." *City of Arlington, Tex. v. FCC*, 569 U.S. 290, 314 (2013) (Roberts, C.J., dissenting) (quotation omitted). But there is no actual fourth branch of government. Indeed, the Supreme Court has explained that Administrative Law Judges who work for agencies like the Federal Communications Commission or the Federal Trade Commission might look like federal judges in many respects, especially since they "conduct adjudications"—but it has still emphasized that "under our constitutional structure" such Administrative Law Judges do not exercise the judicial power, and instead exercise "the executive Power" of Article II. *Id*. at 304 n.4.

This case arises from an administrative proceeding that defies the separation of powers. Kroger, a prominent grocery-store chain, is being subjected to proceedings before an Administrative Law Judge of an executive branch agency, the Federal Trade Commission. Although the presiding ALJ is part of an executive branch agency that must stand in the chain of command from the People to the President, Congress has legislated to insulate that officer from that chain of command. Specifically, Congress has prohibited the ALJ's removal except by the Attorney General "for good

cause established and determined by the Merit Systems Protection Board." 5 U.S.C. §7521(a). And both Merit Board members and Commissioners, in turn, may be removed by the President only "for inefficiency, neglect of duty, or malfeasance in office." *Id.* §1202(d); 15 U.S.C. §41. The Commission's ALJs are therefore *triply* insulated from presidential removal, and thus sit outside the three-branch structure like part of a "'headless fourth branch of government.'" *City of Arlington*, 569 U.S. at 314 (Roberts, C.J., dissenting).

This scheme violates Article II of the United States Constitution. "The President's power to remove"—"and thus supervise"—inferior officers must be "unrestricted," with two narrow exceptions: Congress may impose modest removal protections for principal officers of multimember commissions that do not wield significant executive authority, and for those inferior executive branch officials "with limited duties and no policymaking or administrative authority." *Seila Law LLC v. CFPB*, 591 U.S. 197, 204, 218 (2020). The ALJs who work for executive agencies like the Commission, however, fall outside that narrow exception. They hold continuing offices with wide-ranging duties, not temporary or minor positions. *See, e.g.*, *Lucia v. SEC*, 585 U.S. 237, 241–42, 247–49 (2018). And even if one layer of protection were permissible here, two layers is not. "[S]uch multilevel protection … is contrary to Article II's vesting of the executive power in the President." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 484 (2010). The Fifth Circuit held the Securities and Exchange Commission's analogous ALJ scheme invalid on precisely this ground.

*See Jarkesy v. SEC*, 34 F.4th 446, 463–65 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024). This Court should do the same.

As the chief law enforcement officers of the States of Ohio, Alabama, Georgia, Iowa, Louisiana, Montana, Nebraska, Oklahoma, South Carolina, Tennessee, Texas, and West Virginia, the undersigned Attorneys General have a strong interest in promoting the separation of powers among the federal government's three branches, which in turn, reinforces the vertical division of authority between the states and the federal government. This interest in defending structural, constitutional boundaries includes guarding against federal agency actions—like subjecting parties to adjudications before insulated ALJs—that stray beyond such boundaries.

## BACKGROUND

### I.   The Commission's ALJs hear the agency's administrative actions.

The Federal Trade Commission is an executive branch agency composed of five Commissioners appointed by the President, by and with the advice and consent of the Senate. *See* 15 U.S.C. §41. The President may remove Commissioners only for "inefficiency, neglect of duty, or malfeasance in office." *Id.* The agency has sweeping statutory authority. It may bring administrative proceedings against entities subject to its jurisdiction for allegedly engaging in unfair methods of competition as well as for alleged violations of the antitrust laws. *See id.* §45. It may also seek permanent injunctive relief against unfair methods of competition in federal court. *See id.* §53(b); *see also AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 71–74 (2021).

The Commission's administrative proceedings are first heard by an ALJ. *See* 16 C.F.R. §3.41. The Commission has delegated authority to ALJs to take evidence

and make initial findings of fact and conclusions of law.  *See* 5 U.S.C. §§556(b)(3), 557(b); 16 C.F.R. §0.14.  An ALJ's broad powers in shaping the evidentiary record and conducting the hearing are akin to those of a federal district judge.  *See generally* 16 C.F.R. Part 3; *In re Axon Enter., Inc.*, 2020 WL 5406806, at *3 (F.T.C. Sept. 3, 2020) (an ALJ's "position is 'functionally comparable to that of a judge'") (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)); *cf. Lucia*, 585 U.S. at 247–51 (similarly describing the analogous powers of SEC ALJs).  ALJs, for example, "issue subpoenas," "receive evidence," "conduct … hearings," "administer oaths," "rule upon … motions," and "regulate the course of the hearings and the conduct of the parties and their counsel."  16 C.F.R. §3.42(c).  And ALJs "make and file recommended decisions," which are reviewed by the full Commission.  *Id.* §§3.42(c)(9), 3.54(a).  ALJs "have all powers necessary" to "dispos[e] of" the proceedings over which they preside.  *Id.* §3.42(c).

The Department of Justice has noted, more generally, that ALJs "determine, on a case-by-case basis, the policy of an executive branch agency" through adjudications.  Sec'y of Educ. Review of ALJ Decisions, 15 Op. O.L.C. 8, 15 (1991).  In adjudications, ALJs "fill statutory and regulatory interstices comprehensively with [their] own policy judgments."  *Id.* at 14.  These adjudications, as with general rulemaking, also allow the agencies to formulate prospective policies that "govern future conduct." *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 292 (1974).

The Merits System Protection Board, another agency, may remove an ALJ "only for good cause."  5 U.S.C. §7521(a).   "Good cause" means that ALJs cannot be

removed for "reasons which constitute an improper interference with the ALJ's performance of his quasi-judicial functions." *Brennan v. Dep't of Health & Human Servs.*, 787 F.2d 1559, 1563 (Fed. Cir. 1986). So an agency cannot remove an ALJ just because it disagrees with her decisions. *See id.* But removal is allowed for failure to follow instructions "unrelated to ... decisional independence." *Abrams v. Soc. Sec. Admin.*, 703 F.3d 538, 545 (Fed. Cir. 2012). The Merits Board, in turn "is composed of 3 members appointed by the President, by and with the advice and consent of the Senate, not more than 2 of whom may be adherents of the same political party." 5 U.S.C. §1201. The President may remove members of the Merits Board "only for inefficiency, neglect of duty, or malfeasance in office." *Id.* §1202(d).

## II. The Commission filed an administrative action to enjoin Kroger's merger.

Kroger is a food retail company incorporated in Ohio, with its principal place of business in Cincinnati. Compl. ¶5, *The Kroger Co. v. FTC*, No. 24-cv-00438 (S.D. Ohio). The company describes its business strategy as competing "hard on price" by constantly investing in "process changes and other efficiencies." *Id.* at ¶26. But Kroger faces competition from massive rivals with similar strategies, including Walmart, Amazon, and Costco. *Id.* at ¶30. Seeking to better compete, Kroger entered into an agreement to acquire Albertsons Companies, Inc. ("Albertsons"), another American food retail company. *Id.* at ¶¶29–30.

The Commission filed an in-house administrative complaint against Kroger and Albertsons to prohibit Kroger and Albertson from "any transaction" that "combines their businesses, except as may be approved by the Commission." *Id.* at ¶¶35–

37; *In re Kroger*, Dkt. No. 9428 (FTC). The Commission alleged that the merger violates section 5 of the Federal Trade Commission Act, which bars "[u]nfair methods of competition in or affecting commerce," 15 U.S.C. §45(a)(1), as well as section 7 of the Clayton Act, which bars any acquisition, the effect of which "may be substantially to lessen competition, or to tend to create a monopoly," *id.* §18. The Commission also filed suit in federal court to enjoin preliminarily the acquisition pending resolution of the administrative proceeding. *See* Compl. ¶39 (referencing *FTC v. The Kroger Co.*, No. 24-cv-00347 (D. Or.)).

Kroger now seeks to enjoin the administrative proceeding in this court. It argues that the ALJ presiding over the administrative proceeding—an executive officer—unconstitutionally enjoys two layers of protection against removal by the President, in violation of Article II. Compl. ¶¶69–70. Kroger also argues that the Commission's administrative proceeding violates Article III by adjudicating Kroger's private rights in the Executive branch, rather than in federal court. *Id.* at ¶¶73–75. The first issue—whether the Commission's ALJs are unconstitutionally insulated from presidential removal and thus are unconstitutional officers—concerns the proper separation of the powers of the federal government, and is of tremendous interest to the States.

## ARGUMENT

A party seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits; (2) that it will be irreparably harmed absent the injunction; (3) that the injunction will not injure other parties; and (4) that the public interest

favors an injunction. *A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 917 (6th Cir. 2018). The States write to emphasize the strength of Kroger's merits argument.

## I. The ALJ overseeing Kroger's adjudication enjoys unconstitutional removal protection.

### A. Article II imposes a general rule that the President must have unrestricted power to remove executive officers.

The Constitution vests the President "alone" with the "entire" power to execute federal law. *Seila Law*, 591 U.S. at 213. And Article II entrusts the President with a corresponding duty to "take Care that the Laws be faithfully executed." *Id.* (quoting U.S. Const. art. II, §3). To fulfill this awesome duty, the President must be able to supervise his subordinates. *Id.* Supervision, in turn, requires "the ability to remove executive officials," because it is only the person who "can remove" such officials that subordinate officials will "obey" when "perform[ing] … their functions." *Id.* at 213–14 (alterations accepted, quotation omitted). Because the President must be "fully accountable for discharging his own responsibilities" through "a clear and effective chain of command," *Free Enter. Fund*, 561 U.S. at 498, 514, the "general rule" is that the President has "unrestricted removal power" over executive officers, *Seila Law*, 591 U.S. at 215.

These principles are not new. The Constitution has been understood this way "[s]ince 1789." *Id.* (quotation omitted). And the First Congress settled that the President must have the "power to remove—and thus supervise—those who wield executive power on his behalf" when it created the first cabinet departments. *Id.* at 204. As the Supreme Court later confirmed, the President's "control of those executing the

laws" includes the "essential" power of "removal." *Myers v. United States*, 272 U.S. 52, 117, 163–64 (1926).

## B. The Supreme Court has permitted only two exceptions to Article II's requirement of unrestricted removal.

There are "only two exceptions to the President's unrestricted removal power," *Seila Law*, 591 U.S. at 204, and they are narrow.

*First*, for principal officers whose direct superior is the President, Congress can limit the President's removal power only for those who head "multimember expert agencies that do not wield substantial executive power." *Id.* at 218. In *Humphrey's Executor v. United States*, the Court considered the constitutionality of the relatively young five-member Federal Trade Commission. 295 U.S. 602, 626 (1935). The Supreme Court viewed the FTC as a nonpartisan "administrative body" that exercised "quasi-judicial and quasi-legislative" functions but did not exercise any part of the "executive power." *Id.* at 624, 628. On the unstated premise that Congress could create administrative agencies that were not fully within any of the Constitution's three branches, the Court held that Congress could forbid the President from removing Commissioners absent "inefficiency, neglect of duty, or malfeasance in office." *See id.* at 620, 628; *see also Wiener v. United States*, 357 U.S. 349, 350, 354–56 (1958). While *Humphrey's Executor* has never been formally overruled, the Court has recently cast doubt over its continuing vitality. *See Seila Law*, 591 U.S. at 216 n.2. More recently, the Supreme Court has invalidated comparable restrictions on removal power—involving single-head agencies wielding substantial executive power.

*Id.* at 205 (Consumer Financial Protection Bureau); *Collins v. Yellen*, 594 U.S. 220, 251 (2021) (Federal Housing Finance Agency).

*Second*, as to inferior officers who are "directed and supervised at some level by" principal officers, *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021), Congress can limit the President's removal power only for those "with limited duties and no policymaking or administrative authority," *Seila Law*, 591 U.S. at 218. For example, the Supreme Court upheld a prohibition on the Secretary of the Navy's ability to discharge a naval cadet-engineer during peacetime without first finding misconduct or convening a court-martial. *United States v. Perkins*, 116 U.S. 483 (1886). And the Supreme Court sustained a "good cause" restriction on the Attorney General's ability to remove an independent counsel tasked with the narrow purview of investigating and prosecuting certain senior officials for specific crimes. *Morrison v. Olson*, 487 U.S. 654, 691–92 (1988). This "nebulous" holding, however, has since been cast into doubt. *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 315 n.4 (2017) (Thomas, J., concurring) (suggesting *Edmond v. United States*, 520 U.S. 651 (1997) implicitly overruled *Morrison*'s "nebulous approach"); *see Morrison,* 487 U.S. at 724 n.4 (Scalia, J., dissenting) (explaining "*cause*" would "include, of course, the failure to accept supervision"); *Free Enter. Fund*, 561 U.S. at 510–11 (resolving an Appointments Clause challenge under *Edmond* without discussing or citing *Morrison*); *Arthrex*, 594 U.S. at 23 (holding that officers whose decisions are not reviewed by a principal officers are principle officers themselves); Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747, 810–11 (1999)

(arguing that *Morrison* provided "a doctrinal test good for one day only" and that in *Edmond* the Supreme Court "apparently abandoned Morrison's ad hoc test").

In addition to the limited scope of these offices, the removal restrictions were relatively modest. In *Morrison*, the Attorney General could remove the counsel for misconduct. 487 U.S. at 692. And in *Perkins*, although the Court did not opine on the standard for misconduct (because the cadet-engineer had not engaged in any wrongdoing), insubordination by military officers would be punishable by removal. *Cf. Free Enter. Fund*, 561 U.S. at 507.

By contrast, the Supreme Court has rejected as unconstitutional more stringent removal restrictions for inferior officers. *Id.* at 495–96. In *Free Enterprise Fund*, the statutory scheme shielded inferior officers from removal via two layers of restrictions: Public Company Accounting Oversight Board (PCAOB) members could be removed by the SEC only for cause, and the President could remove SEC Commissioners only for cause. *Id.* at 486–87. This "added layer of tenure protection," the Court held, withdrew "from the President any decision" on whether board members could be removed, creating "a Board that is not accountable to the President, and a President who is not responsible for the Board." *Id.* at 495–96.

### C. The Commission's ALJs fit neither of the exceptions to Article II's requirement of unrestricted removal.

The ALJs in question here are executive branch officers. *See City of Arlington*, 569 U.S. at 305 n.4. They possess continuing positions and exercise significant, important discretion in overseeing adversarial proceedings. *See Lucia*, 585 U.S. at 247–51 (so holding for SEC ALJs); *Axon*, 2020 WL 5406806, at *3 n.7 (suggesting that

*Lucia* applies to the Federal Trade Commission's ALJs). ALJs, for example, "issue subpoenas," "receive evidence," "conduct … hearings," "administer oaths," "rule upon … motions," and "regulate the course of the hearings and the conduct of the parties and their counsel." 16 C.F.R. §3.42(c). Although ALJs "make and file recommended decisions," which the full Commission reviews, *id.* §§3.42(c)(9), 3.54(a), ALJ's power to shape an evidentiary record and conduct a hearing parallel those of federal district judges. *Axon*, 2020 WL 5406806, at *3 (an ALJ's "position is 'functionally comparable to that of a judge'") (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)). After all, ALJs "have all powers necessary" to "dispos[e] of" the proceedings over which they preside. 16 C.F.R. §3.42(c). Thus, they must be subject to unrestricted Presidential removal power unless they fit either of the exceptions to the rule of at-will removal.

These ALJs do not fit either of the exceptions to the constitutional rule of at-will removal. Consider first the *Humphrey's Executor* exception for principal officers. That exception does not apply here because the ALJs are inferior officers subject to supervision by "superior executive officer[s]" (i.e., Commissioners) who may generally "review" their actions. *See Arthrex*, 594 U.S. at 14; *see also* 16 C.F.R. §§3.22, 3.52–54. But the Commission's ALJs have more than "limited duties" and have "policy-making or administrative authority." *Seila Law*, 591 U.S. at 218. This means that the ALJs are not analogous to the inferior officers who received removal protections in *Morrison* and *Perkins*.

Consider these distinctions in greater depth. First, the Commission's ALJs' duties are not limited in the same durational or substantive manner as the officers'

duties in *Morrison* and *Perkins*. The Commission's ALJs serve indefinitely, unlike the independent counsel's temporary mandate in *Morrison* to fulfill a "single task." 487 U.S. at 672. And their rulings affect ordinary people, whereas in *Morrison* the counsel's power was "trained inward to high-ranking Governmental actors identified by others." *Seila Law*, 591 U.S. at 219. Likewise, *Perkins* involved a cadet primarily responsible for carrying out superiors' instructions. *See* 116 U.S. at 483. But the Commission's ALJs wield powerful "tools" in conducting "adversarial hearings" and exercise "significant discretion" when they preside. *Lucia*, 585 U.S. at 248 (quotation omitted).

Second, the Commission's ALJs have policymaking authority, unlike the inferior officers in *Morrison* and *Perkins*. ALJs, the Department of Justice has noted more generally, "determine, on a case-by-case basis, the policy of an executive branch agency." Sec'y of Educ. Review of ALJ Decisions, 15 Op. O.L.C. at 15. And in adjudications, ALJs "fill statutory and regulatory interstices comprehensively with [their] own policy judgments." *Id.* at 14. These adjudications, as with general rulemaking, also allow the agencies to formulate prospective policies that "govern future conduct." *Bell Aerospace Co.*, 416 U.S. at 292. And while the Commission recently modified its rules of practice so that ALJs render a "recommended decision" that parties may appeal instead of an "initial decision" that the Commissioners automatically review, ALJs still have powers akin to federal district judges. *Axon*, 2020 WL 5406806, at *3.

The Commission's ALJs also possess administrative authority. By "critically shap[ing] the administrative record," they exercise "significant authority" under

12

federal law.  *Lucia*, 585 U.S. at 245, 248 (quotation omitted).  Because ALJ's do not fall within the *Perkins*/*Morrison* exception, Article II's "general rule" of "unrestricted removal power" must apply.  *Seila Law*, 591 U.S. at 215.

### D. In any case, ALJ's multiple levels of removal protections violate Article II.

Even if Congress could give ALJs some tenure protection, the current scheme is too much.  In addition to the removal protections that exceed the ones in *Perkins* and *Morrison*, the President must obtain the consent of MSPB members and Commissioners.  But both these bodies have for-cause protections.  This triple-insulated violates *Free Enterprise Fund*.

Begin with the first layer.  The Merit Board's "baseline for evaluating good cause in any action against an ALJ is whether the action improperly interferes with the ALJ's ability to function as an independent and impartial decision maker."  *Dep't of Labor v. Avery*, 120 M.S.P.R. 150, 153 (2013).  So adjudicatory errors or failure to follow adjudicatory instructions can rarely be "good cause" for discipline.  *See Abrams v. SSA*, 703 F.3d 538, 545 (Fed. Cir. 2012).  And even when an ALJ engages in removable misconduct, the Merits Board can insist on lesser sanctions than full removal.  *See, e.g.*, *SSA v. Brennan*, 27 M.S.P.R. 242, 248–49, 251 (1985), *aff'd*, 787 F.2d 1559 (Fed. Cir. 1986); *SSA v. Levinson*, 2023 M.S.P.B. 20, ¶¶40–41 (July 12, 2023).  Because the restrictions in *Perkins* and *Morrison* allowed for removal for insubordination, *see* Part B above, the stronger protections that ALJs' enjoy necessarily transgress "the outermost constitutional limits" for inferior officers.  *See Seila Law*, 591 U.S. at 218 (quotation omitted).

13

The second and third layers stretch those limits even further. The President cannot remove at will either the Commissioners who must seek an ALJ's removal or the Merit Board members who must approve such removal. 5 U.S.C. §1202(d); 15 U.S.C. §41; *see also Seila Law*, 591 U.S. at 231. This arrangement violates *Free Enterprise Fund*. ALJs' "[multiple] for-cause [removal] limitations" deprive the President of "the ability to oversee [ALJs] or to attribute [their] failings to those whom he *can* oversee." *Free Enter. Fund*, 561 U.S. at 492, 496. The scheme "not only protects [ALJs] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists." *Id.* at 495. "That decision is vested instead in [the Commission and Merit Board]," and "if the President disagrees with their determination, he is powerless to intervene—unless th[e] determination is so unreasonable as to" itself constitute cause. *Id.* at 495–96. "The result is [ALJs who are] not accountable to the President, and a President who is not responsible for [ALJs]." *Id.* at 495. "[S]uch machinations blur the lines of accountability demanded by the Appointments Clause." *Arthrex*, 594 U.S. at 16.

The Fifth Circuit agreed with this conclusion. That court held that (in the context of the SEC's ALJs) the "[t]wo layers of for-cause protection" ALJ's enjoy are unconstitutional. *Jarkesy*, 34 F.4th at 463. The SEC's ALJs "can only be removed," the Fifth Circuit explained, "if good cause is found by the [Merit Board]," and "MSPB members can only be removed by the President for cause," which renders the ALJs "sufficiently insulated from removal that the President cannot take care that the laws are faithfully executed." *Id.* at 464–65.

14

The Fifth Circuit is not alone: at least one other court has held that an agency structured with doubly-insulated ALJs fails to pass constitutional muster. In Georgia, a federal court found ALJs in the Department of Justice's Office of the Chief Administrative Hearing Officer were impermissibly doubly insulated because the ALJs could only be removed for good cause as determined by the MSPB, which also receives for cause protections. *Walmart Inc. v. King*, 2024 WL 1258223, *4 (S.D. Ga. Mar. 25, 2024). The scheme should sound familiar. It was the same scheme *Jarkesy* invalidated, and it is the same scheme at issue here.

## II. This Court should not recognize a new exception to Article II's general rule of unrestricted removal.

The Commission has maintained elsewhere that its ALJs' removal protections are constitutional. They argue ALJs are executive-branch "adjudicators," distinguishing them from other executive officers. *See Axon*, 2020 WL 5406806, at *3–6; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133 (9th Cir. 2021). But *Seila Law* says that the "general rule" is that the President has "unrestricted removal power," 591 U.S. at 215, and that the "two exceptions" it identified are the "outermost" incursions on the general rule that the Supreme Court has recognized, *id.* at 218 (quotation omitted). If any court can recognize additional exceptions, it should be the Supreme Court—not this one.

But in any event, a novel "adjudicators exception" would be misguided. Even if "the duties of [ALJs] partake of a Judiciary quality as well as Executive, [ALJs] are still exercising executive power and must remain dependent upon the President." *Arthrex*, 594 U.S. at 17 (quotation omitted) (addressing analogous Administrative

Patent Judges). Indeed, adjudications by executive officers have occurred "since the beginning of the Republic," *City of Arlington*, 569 U.S. at 305 n.4, and it was common for those officers to be subject to presidential removal, Harold J. Krent, *Presidential Control of Adjudication Within The Executive Branch*, 65 Case W. Reserve L. Rev. 1083, 1089–91 (2015). This is unsurprising since they make executive policy through their adjudications. *See* Sec'y of Educ. Review of ALJ Decisions 15 Op. O.L.C. at 14–15. Today, executive adjudication "wields vast power and touches almost every aspect of daily life." *Free Enter. Fund*, 561 U.S. at 499; Jack Beermann, *The Future of Administrative Law Judge Selection*, The Regulatory Review (Oct. 29, 2019) (available at https://perma.cc/8PWN-4MWT). To prevent their exercise of executive authority from "slip[ping] from the [Chief] Executive's control," the use of "removal as a tool of supervision" cannot be further restricted beyond the recognized narrow exceptions. *Id.*

The purported adjudicator exception originates from a footnote in *Free Enterprise Fund*. *See Axon*, 2020 WL 5406806, at *3. But the footnote merely stated that the Court's holding did "not address" ALJs either way, 561 U.S. at 507 n.10, as part of a broader disavowal of "general pronouncements on matters neither briefed nor argued," *id.* at 506. The Court then observed that ALJs' status as "officers" was then unsettled, in part because their powers are "adjudicative" and sometimes "recommendatory." *Id.* at 507 n.10. But the Court has since concluded that ALJs are officers, *Lucia*, 585 U.S. at 248–51, that executive adjudication exercises executive power all the same, *Seila Law*, 591 U.S. at 216 n.2, and that "unrestricted removal" is the

16

"general rule," *id.* at 215.  Those holdings reaffirm *Myers*: "even" when "executive officers" have "quasi-judicial" duties, the President must be able to "consider a decision ... as a reason for removing [such an] officer," or he cannot "discharge his own constitutional duty of seeing that the laws be faithfully executed."  272 U.S. at 135.

The Commission also has claimed that it has constitutionally sufficient control over its ALJs because it can exercise plenary review over their decisions and because they have limited powers (as compared to PCAOB in *Free Enterprise*).  *See Axon*, 2020 WL 5406806, at *4–5.  Again, recent precedent forecloses this argument.  *Lucia* held that the features identified "make no difference" to ALJs' status as inferior officers. 585 U.S. at 249–51.  And *Free Enterprise Fund* held that "[b]road power over [an inferior officer's] functions is not equivalent to the power to remove" them.  561 U.S. at 504.  There, the SEC could "relieve the [PCAOB] of authority," "amend Board sanctions," "issue binding regulations" for the Board, and "enforce Board rules on its own," but all that "power over Board activities" was no "substitute for authority over its members."  *Id.*  Article II's "clear and effective chain of command" is not satisfied by the ability of a principal officer to do (or redo) inferiors' jobs for them.  *Id.* at 498. "Removal as both necessary and sufficient provides a judicially manageable rule and avoids free-ranging functional inquiries about the extent of a separation of powers violation."  Neomi Rao, *Removal: Necessary and Sufficient for Presidential Control*, 65 Ala. L. Rev. 1205, 1275 (2014).

A recent district court decision in Missouri, however, erroneously adopted the Commission's arguments and created a new removal exception for the Commission's

ALJs. *H&R Block Inc. v. Himes*, 2024 WL 3742310, at *6 (W.D. Mo. Aug. 1, 2024). That opinion made two analytical moves to reach its incorrect conclusion. For one thing, the court identified three factual differences between PCAOB and the Commission's ALJs that persuaded it *Free Enterprise Fund* did not apply. *First*, while the PCAOB was "empowered to take significant enforcement actions ... largely independently of the" SEC, which did not have the "power to start, stop, or alter [those] investigations," 561 U.S. at 504, the Commission's ALJs do not initiate proceedings, hear only those proceedings the Commission designates, and issue decisions that the Commission reviews de novo. *H&R Block*, 2024 WL 3742310, at *4. *Second*, unlike the PCAOB, the Commission's ALJs "have no regulatory authority." *Id. Third*, ALJs have existed since 1946, but PCAOB was a new body with "no historical analog." *Id.*

Next, the court concluded that *Free Enterprise Fund* did not apply to ALJs who perform purely adjudicative or recommendatory functions that are subject to independent review by the agency (as is the case here). *Id.* at *5. Because the Commission's ALJs cannot initiate an enforcement proceeding and cannot choose to hear one that the Commission does not assign to them, and because all their findings are reviewed by the Commissioners de novo, *H&R Block* concluded the officers possessed only adjudicatory functions. *Id.* Similarly, that decisions concluded that any "administrative" power the Commission's ALJs exercise is not substantial because Commissioners have the final word on their decisions. *Id.*

*H&R Block*'s reasoning is not persuasive. Most obviously, *Seila Law* forecloses the attempt to cabin *Free Enterprise Fund* to its particular facts. *Seila Law* described

18

*Free Enterprise Fund*'s holding broadly: "we declined to extend [removal] limits to ... an official insulated by *two* layers of for-cause removal protection." 591 U.S. at 215. And *Seila Law* did not even mention PCAOB design elements that *H&R Block* concludes limit *Free Enterprise Fund's* broader applicability. While discussing *Free Enterprise Fund*, by contrast, *Seila Law* underscores the factual context that limits *Morrison* and *Humphrey's Executor*. *See id.* at 215–18.

As to the second move, *Seila Law* said *Free Enterprise Fund* involved a statutory scheme that "effectively" "eliminate[d] the President's removal power altogether." *Id.* at 228. So too with the Commission's ALJs. The President is likewise "powerless" to reconsider the Commission's decision not to remove an ALJ, or the Merit Board's determination that good cause for removal is lacking, "unless th[ose] determination[s] [are] so unreasonable as to constitute 'inefficiency, neglect of duty, or malfeasance in office.'" *Free Enter. Fund*, 561 U.S. at 496.

And all of this analysis neglects that *Morrison* and *Perkins* set "the outermost constitutional limits" for inferior officers that that the Supreme Court has recognized, *see Seila Law*, 591 U.S. at 218 (quotation omitted). And *H&R Block* did not grapple with the fact that the Commission's ALJs enjoy a third layer of removal protection not present in *Free Enterprise*. Here, not only must the independent Commission choose to remove an ALJ, but the Merit System Protection Board—itself an executive agency—must also find good cause for the removal. When one tenure-protected executive agency blocks another executive agency from removing an inferior officer— leaving the President "powerless to intervene"—that "diffusion of power" within the

19

Executive Branch "carries with it a diffusion of accountability" that Article II forbids. *Free Enter. Fund*, 561 U.S. at 495–97.

Finally, *H&R Block* was wrong to conclude that the Commission's ALJs lack significant policymaking or administrative authority. *Lucia* held that ALJs are officers because they exercise "significant authority" within executive agencies. 585 U.S. at 246 (quotations omitted). The Commission's ALJs are not different in any relevant sense from the SEC's. As with the SEC's ALJs, the Commission's ALJs "take testimony," "conduct trials," "administer oaths, rule on motions, and generally 'regulat[e] the course of' a hearing, as well as the conduct of parties and counsel." *Id.* at 248 (SEC ALJs); *see* 16 C.F.R. §3.42(c) (empowering the Commission's ALJs to, among other things, "receive evidence," "conduct … hearings," "administer oaths," "rule upon … motions," and "regulate the course of the hearings and the conduct of the parties and their counsel"). Both are empowered to "make and file" presumptive decisions, which may then be appealed to the respective full Commission. *See* 16 C.F.R. §3.42(c)(9) (FTC); 17 C.F.R. §201.360(a)(1) (SEC). And both have all powers "necessary" to address the proceedings over which they preside. 16 C.F.R. §3.42(c) (FTC); 17 C.F.R. §§201.111, 200.14(a) (SEC). There is thus no apparent constitutional difference between the SEC's ALJs and the Commission's.

## CONCLUSION

This Court should hold that the Commission's adjudication of its claim against

Kroger by its ALJs is likely unconstitutional.

Respectfully submitted,

STEVE MARSHALL
Alabama Attorney General

CHRISTOPHER M. CARR
Georgia Attorney General

BRENNA BIRD
Iowa Attorney General

ELIZABETH B. MURRILL
Louisiana Attorney General

AUSTIN KNUDSEN
Montana Attorney General

MICHAEL T. HILGERS
Nebraska Attorney General

GENTNER DRUMMOND
Oklahoma Attorney General

ALAN WILSON
South Carolina Attorney General

JONATHAN SKRMETTI
Tennessee Attorney General
and Reporter

KEN PAXTON
Texas Attorney General

PATRICK MORRISEY
West Virginia Attorney General

DAVE YOST
Attorney General of Ohio

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER
Ohio Solicitor General
 *\*Counsel of Record*
MATHURA J. SRIDHARAN
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
thomas.gaiser@ohioago.gov

*Counsel for State of Ohio*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2024 a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER