**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

THE KROGER CO.,

     *Plaintiff,*

v.

THE FEDERAL TRADE COMMISSION, *et al.*,

     *Defendants.*

No. 1:24-cv-00438-DRC
Hon. Douglas R. Cole

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO TRANSFER OR, ALTERNATIVELY, TO STAY**

## TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

Argument .............................................................................................................................. 2

   I.   The Court should transfer this case to the District of Oregon for consolidation with the related Section 13(b) proceeding pending therein ........................................................ 2

      A.   Venue would be proper in the District of Oregon. .......................................................... 3

         i.   A substantial part of the events or omissions giving rise to the claim occurred in the District of Oregon pursuant to 28 U.S.C. § 1391(e)(1)(A). ................................... 3

         ii.   A substantial part of the property that is the subject of this action is located in the District of Oregon pursuant to 28 U.S.C. § 1391(e)(1)(B). ................................. 7

      B.   The public interest factors counsel in favor of transfer. .................................................. 9

      C.   The private interest factors make the District of Oregon no less convenient for the parties than this District. ................................................................................................ 13

      D.   The interest of justice counsels in favor of transfer. ...................................................... 13

   II.   In the alternative, the Court should stay this case pending resolution of the Section 13(b) proceeding. ................................................................................................................... 15

Conclusion ......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Airport Working Grp. of Orange Cnty., Inc. v. U.S. Dep't of Def.*,
    226 F. Supp. 2d 227 (D.D.C. 2002) ........................................................................ 8

*Alpha Servs., LLC v. Looman*,
    No. 23-cv-2988, 2023 WL 6795545 (E.D. La. Oct. 13, 2023) ................................ 5

*Barrow v. Sutton*,
    No. CV H-14-200, 2014 WL 12586346 (S.D. Tex. July 16, 2014) ...................... 7, 8

*Burns v. Burns*,
    No. 5:15-CV-2329-PSG, 2015 WL 5168475 (N.D. Cal. Sept. 2, 2015).................... 8

*CareFirst, Inc. v. Taylor*,
    235 F. Supp. 3d 724 (D. Md. 2017) ........................................................................ 4

*Continental Grain Co. v. Barge FBL–585*,
    364 U.S. 19 (1960) ................................................................................................ 13

*Cottman Transmission Sys., Inc. v. Martino*,
    36 F.3d 291 (3d Cir.1994)........................................................................................ 7

*E.V. v. Robinson*,
    200 F. Supp. 3d 108 (D.D.C. 2016) ........................................................................ 4

*Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu*,
    660 F. Supp. 1536 (S.D. Tex. 1987) ........................................................................ 7

*Fed. Nat'l Mortg. Ass'n v. River Houze, LLC*,
    596 F. Supp. 3d 925 (E.D. Mich. 2022) .................................................................. 3

*First of Mich. Corp. v. Bramlet*,
    141 F.3d 260 (6th Cir. 1998)............................................................................ 4, 5, 6

*FTC v. IQVIA Holdings Inc.*,
    No. 23-cv-06188 (ER), 2023 WL 7152577 (S.D.N.Y. Oct. 31, 2023) ................ 6, 14

*Gomez v. Dretke*,
    422 F.3d 264 (5th Cir. 2005)................................................................................ 17

*Int'l Paper Co. v. Goldschmidt*,
    872 F. Supp. 2d 624 (S.D. Ohio 2012).................................................................. 4, 5

*Kay v. Nat'l City Mortg. Co.*,
    494 F. Supp. 2d 845 (S.D. Ohio 2007)................................................................ 3, 13

*Kensu v. Michigan Dep't of Corr.*,
No. 21-cv-1802, 2022 WL 17348384 (6th Cir. Dec. 1, 2022) ................................... 3

*Limited Serv. Corp. v. M/V APL PERU*,
2010 WL 2105362 (S.D. Ohio May 25, 2010) ................................................. 12, 13

*Luckey v. U.S. Dep't of the Navy*,
No. 18-cv-06071-HSG, 2019 WL 4059855 (N.D. Cal. Aug. 28, 2019) ................. 16

*McPherson v. Kelsey*,
125 F.3d 989 (6th Cir. 1997) .................................................................................. 3

*Mitrano v. Hawes*,
377 F.3d 402 (4th Cir. 2004) .................................................................................. 4

*Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*,
672 F. Supp. 3d 538 (S.D. Ohio 2023) ................................................................. 12

*Parenteau v. Century Bank*,
No. 2:07-CV-851, 2008 WL 281626 (S.D. Ohio Jan. 31, 2008) ............................ 6

*Pavek v. Simon*,
No. 19-CV-3000 (SRN/DTS), 2020 WL 4013982 (D. Minn. July 16, 2020) .......... 16

*Pioneer Surgical Tech., Inc. v. Vikingcraft Spine, Inc.*,
2010 WL 2925970 (W.D. Mich. July 21, 2010) ................................................. 6, 7

*Reilly v. Meffe*,
6 F. Supp. 3d 760 (S.D. Ohio 2014) ...................................................................... 4

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
626 F.3d 973 (7th Cir. 2010) ................................................................................ 13

*Securities and Exchange Commission v. Jarkesy*,
144 S. Ct. 2117 (2024) ......................................................................................... 14

*Starnes Fam. Off., LLC v. McCullar*,
765 F. Supp. 2d 1036 (W.D. Tenn. 2011) .............................................................. 6

*Stewart v. Chesapeake Expl., LLC*,
No. 2:12-CV-270, 2012 WL 3151255 (S.D. Ohio Aug. 2, 2012) ....................... 9, 11

*Stinnie v. Holcomb*,
396 F. Supp. 3d 653 (W.D. Va. 2019) .............................................................. 16, 17

*Verizon Online Servs. v. Ralsky*,
203 F. Supp. 2d 601 (E.D. Va. 2002) ..................................................................... 8

iv

*World Holdings, LLC v. Fed. Republic of Germany*,
  No. 08-cv-20198, 2009 WL 10664174 (S.D. Fla. May 22, 2009) ............................................. 7

**Statutes**

15 U.S.C. § 53(b) ................................................................................................................... 4

28 U.S.C. § 1391(b) .............................................................................................................. 4

28 U.S.C. § 1391(b)(2) ......................................................................................................... 4

28 U.S.C. § 1391(e)(1) .................................................................................................. 2, 3, 9

28 U.S.C. § 1391(e)(1)(A) ............................................................................................... 1, 3

28 U.S.C. § 1391(e)(1)(B) ..................................................................................................... 7

28 U.S.C. § 1391(f) ................................................................................................................ 7

28 U.S.C. § 1404(a) ............................................................................................................... 2

**INTRODUCTION**

Kroger fails to explain why it waited until seven days before the three-week evidentiary hearing in the parallel preliminary injunction proceeding in the District of Oregon to bring this lawsuit. And Kroger does not deny that the resolution of that parallel preliminary injunction proceeding may moot this case. Accordingly, this Court should wield its broad discretion to either transfer this case to the District of Oregon for consolidation with the related proceeding therein, or alternatively stay this case pending resolution of that related proceeding.

Venue would be proper in the District of Oregon under both 28 U.S.C. § 1391(e)(1)(A) or (B) because a substantial part of the events giving rise to the claim occurred therein, and because a substantial amount of the property that is the subject of this action is located there. Kroger's overly narrow interpretation of the venue statute is contrary to binding precedent. Regardless, Kroger concedes that venue would be proper in the District of Oregon had Kroger brought its constitutional claims as counterclaims to the Section 13(b) proceeding.

Given that venue would be proper in the District of Oregon, this Court should transfer to that District based on the public-interest factors and the interest of justice. Kroger insists that transfer would be inappropriate because both venues would be equally convenient for the parties, but this improperly aggrandizes the private-interest factors (*i.e.*, the convenience of the parties) while ignoring judicial economy and systemic fairness. Judicial economy and systemic fairness counsel in favor of a transfer to the District of Oregon given Kroger's tactical decision to wait until only a week before the evidentiary hearing therein was set to begin, the labor the court in the District of Oregon has already expended, and the risk that this case could disrupt seven-months' worth of proceedings there.

Alternatively, the Court should stay this case pending resolution of the preliminary

injunction proceeding in Oregon. Courts routinely stay cases where imminent events may moot the case. That is precisely the circumstance here, as the resolution of the preliminary injunction proceeding in Oregon could moot this case. And Kroger faces no harm in the meantime—much less imminent, irreparable harm—as the Administrative Law Judge presiding over the administrative proceeding has granted the parties' joint motion to continue the recess of that proceeding until 21 days after the District of Oregon issues a ruling on the preliminary injunction. Kroger thus may never face an administrative proceeding, and Kroger indisputably does not imminently face an administrative proceeding. Indeed, Kroger has conceded that a stay of the administrative proceeding would merit a stay in this Court. Yet despite this concession, and despite the continued recess of the administrative proceeding, Kroger has inexplicably refused to agree to a stay in this case. Kroger offers no compelling reason to require this Court to decide the collateral constitutional challenges on an expedited basis when Kroger has explicitly and repeatedly emphasized in the Section 13(b) proceeding in Oregon that resolution of the Oregon proceeding may moot Kroger's claims here, and Kroger faces no alleged harm in the meantime.

**ARGUMENT**

I.    **The Court should transfer this case to the District of Oregon for consolidation with the related Section 13(b) proceeding pending therein.**

The Court should transfer this case to the District of Oregon for consolidation with the Section 13(b) proceeding regarding the same underlying administrative proceeding. In relevant part, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The threshold requirement is satisfied here, as Kroger "might have [] brought" these claims in the District of Oregon under 28 U.S.C. § 1391(e)(1). Kroger's arguments otherwise are unavailing for multiple reasons, including its concession that venue would

2

have been proper in the District of Oregon had it brought its constitutional claims as counterclaims to the Section 13(b) proceeding. And transfer is warranted on the facts, as the public-interest factors and the interest of justice strongly favor transferring the case to the District of Oregon, while the private-interest factors are neutral.

**A. Venue would be proper in the District of Oregon.**

Kroger's constitutional claims could have been brought in the District of Oregon under 28 U.S.C. § 1391(e)(1). *See Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007). Kroger's argument to the contrary relies on outdated, overly narrow interpretations of § 1391(e)(1). And just as importantly, Kroger does not dispute that this case could have been properly brought in the District of Oregon under the doctrine of "pendent venue." Defs.' Mot. to Transfer or, Alternatively, to Stay at 10 n.4, PageID 357 ("Mot."). Kroger's failure to dispute this argument constitutes a concession. *See Fed. Nat'l Mortg. Ass'n v. River Houze, LLC*, 596 F. Supp. 3d 925, 932 (E.D. Mich. 2022) (collecting cases); *Kensu v. Michigan Dep't of Corr.*, No. 21-cv-1802, 2022 WL 17348384, at *4 (6th Cir. Dec. 1, 2022) ("Issues addressed only 'in a perfunctory manner, unaccompanied by some effort at developed argumentation' are deemed waived." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)). Thus, even if this Court finds that venue would not be proper in the District of Oregon pursuant to § 1391(e)(1), transfer for consolidation with *FTC v. The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.), would be appropriate under the doctrine of pendent venue.

> **i. A substantial part of the events or omissions giving rise to the claim occurred in the District of Oregon pursuant to 28 U.S.C. § 1391(e)(1)(A).**

Kroger argues that this case could not have been brought in the District of Oregon despite its consent to venue in the ongoing Section 13(b) proceeding there relating to the same underlying

3

administrative proceeding.[1]  But the Sixth Circuit has confirmed that the substantiality language in § 1391(e)(1)(A) provides for venue in "*any* forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet,* 141 F.3d 260, 263 (6th Cir. 1998) (emphasis added) (construing § 1391(b)).[2]  Thus, courts considering whether venue is proper "'should not focus only on those matters that are in dispute or that directly led to the filing of the action,' but 'rather, . . . should review the entire sequence of events underlying the claim.'"  *Int'l Paper Co. v. Goldschmidt*, 872 F. Supp. 2d 624, 633–34 (S.D. Ohio 2012) (quoting *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (cleaned up); *accord Mitrano*, 377 F.3d at 405 (citing *Bramlet*, 141 F.3d at 264)).[3]

The Sixth Circuit addressed a similar situation in *First of Michigan Corporation v. Bramlet*, 141 F.3d at 263.  There, the Bramlets initiated an arbitration action in Florida against First of Michigan Corporation for allegedly failing to provide them with periodic updates on the value of

---

[1] *See* ECF No. 14-1 at PageID 383 (Compl. for Temp. Restraining Or. and Inj. Relief (Redacted) ¶ 32, *FTC v. The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.), ECF No. 1) ("Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b)."); ECF No. 14-2 at PageID 434 (Def. The Kroger Co.'s Answers and Affirmative Defs. ¶ 32, *FTC v. The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.), ECF No. 90) ("Kroger admits the allegations in Paragraph 32 that relate to Kroger.").

[2] The language in § 1391(b) is identical to the language in § 1392(e)(1), and courts therefore rely on cases construing either one to interpret the other.  *See, e.g.*, *E.V. v. Robinson*, 200 F. Supp. 3d 108, 113 n.2 (D.D.C. 2016) ("Because § 1391(e)(1)(B) is identical to 28 U.S.C. § 1391(b)(2), cases construing that general venue provision are 'helpful in construing this provision.'" (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3815 (4th ed.))).

[3] Kroger relies on *Reilly v. Meffe*, 6 F. Supp. 3d 760, 766 (S.D. Ohio 2014), for the outdated proposition that "only those acts or omissions with substantial, rather than tangential, connections to a plaintiff's claims can establish venue," Opp. 7, PageID 715.  But that proposition is contrary to the Sixth Circuit's broad reading of the venue statute.  *See Bramlet*, 141 F.3d at 264.  In particular, requiring that the relevant events be more than "tangential" is contrary to the Sixth Circuit's and other courts' expansion of "substantial" events (following an amendment to the venue statute) to include the entire sequence of events underlying a claim.  *See, e.g.*, *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017) (rejecting argument that "[e]vents that relate only tangentially to the claim cannot constitute a substantial part of the events or omissions giving rise to the claim" as contrary to proposition that "a court should not focus only on those matters that . . . directly led to the filing of the action" (quoting *Mitrano*, 377 F.3d at 405)); *see also Int'l Paper Co. v. Goldschmidt*, 872 F. Supp. 2d at 633–34.  Regardless, the alleged antitrust conduct underlying the challenged administrative proceeding is not "tangential" to Kroger's constitutional challenges to that same administrative proceeding.

their Individual Retirement Account ("IRA"). *See id*. at 261. First of Michigan then filed a separate lawsuit in the Eastern District of Michigan, seeking to enjoin and dismiss the Bramlets' arbitration claims as ineligible for arbitration under the terms of the parties' arbitration agreement (which barred arbitration of claims relating to investments more than six years old). *See id*. at 261–62. The district court dismissed First of Michigan's suit for improper venue, reasoning that "the most substantial event giving rise to plaintiffs' complaint . . . was the Bramlets' filing of an arbitration action" in Florida. *Id.* at 262–63. But the Sixth Circuit reversed, explaining that venue was proper in Michigan because that was "where the underlying transactions and investments took place." *Id*. at 264.

Here, similarly, "venue is proper where the underlying [alleged antitrust conduct] took place." *Id*. While the legality of the proposed acquisition may not be the "direct[]" focus of Kroger's constitutional claims, it is indisputably essential to "the entire sequence of events underlying [Kroger's] claim[s]." *Int'l Paper Co.*, 872 F. Supp. 2d at 633–34. Indeed, courts assessing venue in similar contexts consider the location of the alleged conduct underlying the administrative proceeding. *See, e.g.*, *Alpha Servs., LLC v. Looman*, No. 23-cv-2988, 2023 WL 6795545, at *5 (E.D. La. Oct. 13, 2023) (taking note in venue analysis, in collateral constitutional challenge to DOL proceeding, that "all of the events underlying the administrative proceedings occurred in Idaho and Washington State"). This case is no different.

Additionally, the fact that collateral constitutional claims cannot be brought as affirmative defenses in Section 13(b) district court proceedings has no bearing on the venue inquiry here. Neither the Commission nor any court has ever taken the position, as Kroger claims, that "there is *no* relationship between the constitutional arguments and the Section 13(b) proceeding." *Id.* Rather, constitutional claims cannot be brought as *affirmative defenses* to a Section 13(b)

proceeding because "the relevant metric of 'success' [in a Section 13(b) preliminary-injunction proceeding] concerns *the antitrust merits in the underlying [administrative] proceedings*." *FTC v. IQVIA Holdings Inc.*, No. 23-cv-06188 (ER), 2023 WL 7152577, at *3 (S.D.N.Y. Oct. 31, 2023) (emphasis added); *see also Starnes Fam. Off., LLC v. McCullar*, 765 F. Supp. 2d 1036, 1048 (W.D. Tenn. 2011) ("An affirmative defense is an 'assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." (quoting *Black's Law Dictionary* (9th ed. 2009))). Thus, such constitutional claims must be brought as a "separate action," *id.*—meaning an independent claim (including a counterclaim) as opposed to an affirmative defense. The fact that collateral constitutional challenges to an administrative antitrust proceeding must be brought as a "separate action" does not mean that such challenges are wholly unrelated to the alleged antitrust conduct that gave rise to the administrative proceeding in the first place.

Finally, Kroger is incorrect in its assertion that courts must "focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred." Mem. of L. in Opp. to Defs.' Mot. to Transfer or Stay at 7, PageID 715 "(Opp.") (quoting *Pioneer Surgical Tech., Inc. v. Vikingcraft Spine, Inc.*, 2010 WL 2925970, at *3 (W.D. Mich. July 21, 2010)). To the contrary, the Sixth Circuit considers the activities of both the plaintiff and the defendant when evaluating proper venue. *See Bramlet*, 141 F. 3d at 264 (considering both the plaintiffs and defendants' activities in evaluating proper venue under § 1391(b)(2)); *see also, e.g.*, *Parenteau v. Century Bank*, No. 2:07-CV-851, 2008 WL 281626, at *2 (S.D. Ohio Jan. 31, 2008) (rejecting argument "that this court is permitted to consider only the acts of the defendant" under § 1391(b), which "narrow approach" was "implicitly rejected by the Sixth Circuit in *Bramlet*" (citing *Bramlet*, 141 F. 3d at 264)). Regardless, the reason that other

courts focus on the defendant's conduct over the plaintiff's conduct is to "preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Pioneer Surgical Tech., Inc.*, 2010 WL 2925970, at *3 (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994)) (quoted at Opp. 7, PageID 715). There is no concern here that it would be unfair for Kroger to hale the Commission into the District of Oregon, nor that the District of Oregon lacks any "real relationship to the dispute," *id.*, given the ongoing Section 13(b) proceeding therein. In fact, such position runs counter to Kroger's admission before the District or Oregon that venue is proper for the Section 13(b) proceeding. *See supra* note 1.

Accordingly, venue would be proper in the District of Oregon pursuant to § 1391(e)(1)(A).

### ii. A substantial part of the property that is the subject of this action is located in the District of Oregon pursuant to 28 U.S.C. § 1391(e)(1)(B).

Venue would also be proper in the District of Oregon under § 1391(1)(B) because a substantial number of Albertsons' stores are located therein. Kroger's narrow interpretation of "substantial property" in § 1391(e)(1)(B) finds no support within this Circuit. *See* Mot. 6, PageID 353 (citing no district court or court of appeals decision within the Sixth Circuit).

Indeed, other courts have explicitly rejected the narrow interpretation of § 1391(e)(1)(B) on which Kroger relies. For example, one court disclaimed the proposition on which Kroger relies as "entirely dictum" that was "unsupported by reference to any other case law." *World Holdings, LLC v. Fed. Republic of Germany*, No. 08-cv-20198, 2009 WL 10664174, at *4 (S.D. Fla. May 22, 2009) (discussing original statement in *Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu*, 660 F. Supp. 1536, 1543 (S.D. Tex. 1987), that identical venue provision under Foreign Sovereign Immunities Act, 28 U.S.C. § 1391(f), is "applicable [only] to suits involving property disputes or in rem actions"); *see also Barrow v. Sutton*, No. CV H-14-200, 2014 WL 12586346, at *3 (S.D.

7

Tex. July 16, 2014) (explaining that *Falcoal*'s holding excludes only a corporation's financial assets from § 1391(b)(2), and finding § 1391(b)(2) did apply to "specifically identifiable, tangible personal property which was the subject of the [allegedly injurious] agreements and business dealings" between the parties).

Other courts have interpreted § 1391(b)(2) more appropriately to provide for proper venue in cases in which some property interest is at stake, directly or indirectly.  *See, e.g.*, *Barrow*, 2014 WL 12586346, at *3 (finding venue proper under § 1391(b)(2) in district in which automobile was located where plaintiff alleged fraud, breach of warranty, and breach of contract regarding work done on automobile); *Airport Working Grp. of Orange Cnty., Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 228 (D.D.C. 2002) (finding "it is beyond dispute that venue is proper" under § 1391(e) where plaintiff brought NEPA and Clean Air Act challenges to agency's environmental impact statement regarding proposed land use); *Burns v. Burns*, No. 5:15-CV-2329-PSG, 2015 WL 5168475, at *2 (N.D. Cal. Sept. 2, 2015) (finding venue proper under § 1391(b) in district in which trust instrument was executed where plaintiff alleged fraudulent misrepresentation and breach of fiduciary duty related to administration of trust); *Verizon Online Servs. v. Ralsky*, 203 F. Supp. 2d 601, 623 (E.D. Va. 2002) (finding venue proper under § 1391(b)(2) in district in which e-mail servers were located where plaintiff alleged trespass to chattel and statutory computer crime violations related to junk emails).

This case indisputably concerns a property interest: the Albertsons property that Kroger seeks to acquire in the proposed merger.[4]  According to Kroger, the administrative proceeding

---

[4] Kroger protests that it is acquiring the stock of Albertsons, not the stores.  *See* Mot. 6, PageID 353.  This is a distinction without meaning.  The venue statute requires only that a "substantial" part of the property is located in a particular venue.  Regardless of whether the proposed acquisition technically refers to Albertsons' stock or Albertsons' stores, Kroger is necessarily acquiring Albertsons' stores.  A substantial number of those stores are located in Oregon.

violates the Constitution *because* it supposedly imposes upon "Kroger's private right to use, purchase, and dispose of property." PI Mot. 13–14, PageID 49–50. The administrative proceeding thus necessarily concerns Kroger's alleged entitlement to Albertsons' property. Notably, Kroger does not dispute that—for purposes of a § 1391(e) analysis—a substantial amount of the implicated property is located in Oregon. In sum, this case involves property, and a substantial amount of that property is located in the District of Oregon.[5]

### B. The public interest factors counsel in favor of transfer.

The public interest factors—including "the pendency of related litigation in another district, judicial economy, the transferee judge's familiarity with the facts and circumstances of the case, and the need to promote the fair and consistent resolution of related cases"—counsel strongly in favor of a transfer. *Stewart v. Chesapeake Expl., LLC*, No. 2:12-CV-270, 2012 WL 3151255, at *4 (S.D. Ohio Aug. 2, 2012).

Kroger does not deny that it waited six months—until the eve of the preliminary injunction hearing in Oregon—to file this suit. Kroger's only response is to claim that "[t]he outcomes of these two cases will not intersect or contradict each other." Opp. 10–11, PageID 718–19. But Kroger is necessarily seeking to enjoin the administrative proceeding that gives rise to the Section 13(b) proceeding. To the extent Kroger is seeking to disrupt the proceedings in Oregon through this collateral attack, the public interest factors weigh strongly in favor of a transfer to the District of Oregon, where the court has completed a three-week evidentiary hearing and is set to rule imminently.

The public interest factors also support transfer because a decision in the Section 13(b)

---

[5] Notably, *none* of the property implicated in this case is located in the Southern District of Ohio. Albertsons does not operate in Ohio, and thus Kroger is not seeking to acquire any property therein. *See, e.g.*, Albertsons, *Company fact sheet*, https://perma.cc/QR5N-VXHA (available on Albertsons' website by selecting "Learn More" at https://www.albertsonscompanies.com/about-aci/overview/default.aspx).

proceeding may moot the instant case. Kroger attempts to downplay the likelihood of mootness. But Kroger has repeatedly made clear that it will abandon the proposed acquisition should the District of Oregon issue a preliminary injunction in the Section 13(b) proceeding. *See* ECF No. 10-5 at PageID 217, 267 (Rough Tr. at 100:6–7, 150:10–17 (Aug. 26, 2024), *The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.)) (stating that "the outcome of this hearing is going to most certainly be dispositive of whether this merger goes through or not," and "[t]his merger will not occur if this injunction is in place."). Indeed, Kroger explicitly and approvingly quoted Defendants' filings in *this case* during closing statements in the Section 13(b) proceeding in Oregon, stating that the Government "is absolutely right" that the administrative proceeding "may well be adjourned or vacated entirely based on the outcome of the FTC's concurrent action in the District of Oregon." *See, e.g.*, Tr. at 3525:22–23 (Sept. 17, 2024), *The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.) (attached as Exhibit A) ("This case will decide the fate of the merger."); *id.* at 3526:15–22 (reiterating that "[t]his [preliminary injunction] is what matters" and "[t]his is what will decide the fate of the merger"). Thus, by Kroger's own express admission, this case faces imminent potential mootness.

Kroger further attempts to downplay the likelihood of mootness by arguing that the Commission may move forward with prospective relief in the Part 3 proceeding even if Kroger and Albertsons abandon the proposed acquisition. *See* Opp. 11, PageID 719. But Kroger does not even attempt to explain why the Commission would choose to take such a historically rare move. *See* Mot. 13 n.6, PageID 360 ("Although the Commission has the authority to maintain an administrative case after the parties abandon a merger, it has historically done so only in rare circumstances."). Indeed, the FTC's Complaint Counsel, who prosecutes the administrative proceeding, stipulates that it will not seek prospective relief in the administrative proceeding

should Kroger and Albertsons abandon the proposed acquisition.

The Commission itself has suggested that abandonment in this case could be significant. When the Commission denied Kroger and Albertsons' previous motion to stay the administrative proceeding, the Commission explained that—unlike cases in which there was good cause to stay an administrative proceeding pending resolution of a concurrent Section 13(b) proceeding in federal court—Kroger and Albertsons had not yet "indicated that they would abandon the proposed transactions if a preliminary injunction were issued, potentially obviating the need for the administrative hearing completely." Order Denying Resps.' Mot. for Continuance of Ev. Hearing at 3 (May 29, 2024), https://perma.cc/Y3CF-MC4B. As noted above, Kroger and Albertsons have now made clear that they do indeed intend to "abandon the proposed transactions if a preliminary injunction were issued," thereby "potentially obviating the need for the administrative hearing completely." *Id.* Thus, the Commission's denial of Kroger and Albertsons' motion to stay highlights the significance of potential abandonment.[6]

In addition to downplaying the potential for mootness, Kroger also summarily attempts to undermine the Oregon court's familiarity with the legal and factual background of this case as "irrelevant." Opp. 12, PageID 720. But at least Kroger's Article III claim is necessarily intertwined with the language and purpose of the Clayton Act and the FTC Act, both of which the

---

[6] In denying that motion to stay, the Commission also noted that Kroger and Albertsons affirmatively chose to have the Section 13(b) evidentiary hearing in Oregon begin long after the administrative proceeding was scheduled to begin. *See* Order Denying Resps.' Mot. for Continuance of Ev. Hearing (May 29, 2024), https://perma.cc/Y3CF-MC4B; *see also* Mot. 6, PageID 353. The district court in Oregon offered for the Section 13(b) evidentiary hearing to take place in early May, such that it would conclude prior to the originally scheduled beginning of the administrative evidentiary hearing on July 31. *See* Order Denying Resps.' Mot. for Continuance of Ev. Hearing at 1–2 (May 29, 2024), https://perma.cc/Y3CF-MC4B. Kroger and Albertsons rejected that offer, instead agreeing that the Section 13(b) evidentiary hearing would begin on August 26. *See id.* at 2 (noting that Kroger and Albertsons specifically "sought the dates" in the parallel proceedings "that they now argue are in conflict with the already-scheduled administrative hearing").

Oregon court has now engaged with—in the context of this proposed merger—at great length. Contrary to Kroger's conclusory assertion in a footnote that the Oregon court's familiarity with the Clayton Act and the FTC Act has no bearing on Kroger's Article III claim, it is not possible to consider that claim without analyzing the governing legal standards themselves. *See* Opp. 12 n.1, PageID 720. The Oregon court has already expended significant effort analyzing the Clayton Act and the FTC Act, including considering precisely what kind of conduct those statutes are targeting with regard to the proposed Kroger–Albertsons merger.

Kroger further seeks to undermine the importance of the Oregon court's familiarity with the Clayton Act and the FTC Act by arguing that "the controlling law factor typically applies in *diversity* jurisdiction cases and generally refers to a federal trial court's familiarity with applicable *state* law." Opp. at 12, PageID 720 (quoting *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n,* 672 F. Supp. 3d 538, 548 (S.D. Ohio 2023)). But Defendants do not premise any argument on "the controlling law factor." *Id.* Defendants explicitly acknowledge that, "given that this case primarily involves questions of constitutional review of federal statutes, the District of Oregon court is just as capable of deciding those questions as this Court." Mot. 16, PageID 363. The Oregon court's familiarity with the factual and legal background is relevant here because it indicates that "substantial savings of judicial time and resources" may "result from the transfer and the conduct of coordinated proceedings." *Limited Serv. Corp. v. M/V APL PERU*, 2010 WL 2105362, *5 (S.D. Ohio May 25, 2010); *see also* Mot. 14, PageID 361.

Finally, Kroger argues that transfer would be inefficient because the Oregon court is already tasked with resolving the Section 13(b) preliminary injunction "following three weeks of evidentiary hearings and more than 250 pages of forthcoming post-trial briefing." Opp. 12, PageID 720. But that is exactly why efficiency counsels in favor of a transfer. This Court is no less busy

than the Oregon court, but the Oregon court is already intimately familiar with the factual and legal background here, and is thus better equipped to resolve these claims, which in the interest of efficiency should have been brought as counterclaims in Oregon to begin with.

### C. The private interest factors make the District of Oregon equally convenient for the parties than this District.

Contrary to Kroger's assertion, Opp. 9, PageID 717, Defendants do not seek to transfer this case on the basis of the private-interest factors, *i.e.*, the convenience of the parties, alone. Rather, because both venues are equally convenient for the parties, the public factors and the interest of justice—which favor transfer—should be dispositive. And Kroger does not contest that both venues are equally convenient for the parties. *See id*.

### D. The interest of justice counsels in favor of transfer.

The interest of justice is an independent factor that courts can and do consider separately from the public-interest factors. *See, e.g.*, *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 20–21 (1960) (finding transfer of case under 28 U.S.C. § 1404(a) so that two lawsuits arising from single occurrence would be heard in same venue to be "in the interest of justice"); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system."); *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 853–54 (S.D. Ohio 2007) (considering interest of justice and public interest as separate factors). Regardless of whether this Court considers the interest of justice separately or in combination with the public interest factors, these factors counsel strongly in favor of transfer.

As Defendants have already explained, Kroger cannot justify its delay in raising its constitutional claims in federal court by citing the impropriety of bringing collateral constitutional challenges as *affirmative defenses*. *See* Mot. 18, PageID 365. While it is true that the Commission

13

"has repeatedly (and successfully) moved to strike these kinds of constitutional *defenses* in Section 13(b) proceedings," Opp. 13, PageID 721 (emphasis added), a *counterclaim* is fundamentally different from a mere defense, *see* Mot. 18, PageID 365. Nothing in the Commission's position regarding affirmative defenses has any bearing on a constitutional counterclaim. And as explained above, *see supra* pp. 5–6, the court's reference to a "separate action" merely means an independent claim, including a counterclaim, as opposed to an affirmative defense.[7] The impropriety of asserting constitutional arguments as affirmative defenses therefore does not justify Kroger's action in bringing an entirely new lawsuit, six months after both the administrative proceeding and the Section 13(b) proceeding were initiated, and seven days before the Section 13(b) evidentiary hearing began.

Kroger insists that it delayed bringing these claims while waiting on the Supreme Court's decision in *Securities and Exchange Commission v. Jarkesy*, 144 S. Ct. 2117 (2024). Opp. 13, PageID 721. But Kroger does not explain *why* it had to wait until a decision in *Jarkesy*. Neither of Kroger's constitutional claims originated with *Jarkesy*. As Defendants noted, Kroger was aware of the existence of these claims long before *Jarkesy* was decided on June 27, 2024. *See, e.g.*, Mot. 17, PageID 364 (noting that Kroger brought removal claim and Article III claim as affirmative defenses in administrative proceeding on March 11, 2024). Nor does Kroger explain the subsequent two-month delay in bringing these claims even after *Jarkesy* was decided. Kroger thus has no explanation for waiting six months to bring this separate action, until a mere seven days before the Section 13(b) evidentiary hearing began. And contrary to Kroger's assertion, Opp. 13, PageID 721, there is no inconsistency in Defendants' positions that (1) this case should be

---

[7] Indeed, the Commission has previously agreed with opposing parties in Section 13(b) proceedings to brief constitutional counterclaims following the preliminary-injunction evidentiary hearing. *See, e.g.*, *FTC v. Intercontinental Exchange, Inc.* (N.D. Cal. No. 3:23-cv-01710-AMO); *FTC v. Amgen Inc.* (E.D. Ill. No. 1:23-cv-03053).

transferred to the District of Oregon—where it would have most efficiently been brought as a counterclaim to begin with—and (2) alternatively, should this Court decline to transfer, this case should be stayed pending a decision in the Oregon case, which decision may moot further proceedings here.

Finally, Kroger's characterization of these two sets of claims as entirely "separate and independent" ignores that both sets of claims relate to the same underlying administrative proceeding. Kroger filed this lawsuit after six months of proceedings, including full discovery, in the Section 13(b) proceeding in Oregon. This Court should not countenance Kroger's attempt to play two courts off one another.

## II. In the alternative, the Court should stay this case pending resolution of the Section 13(b) proceeding.

The ALJ has granted the parties' joint motion to extend the current recess in the administrative proceeding until 21 days after the District of Oregon court issues a decision in the Section 13(b) preliminary injunction proceeding. *See* Order Granting Jt. Mot. to Continue the Recess of the Ev. Portion of the Part 3 Admin. Hearing, *In the Matter of The Kroger Co.*, Dkt. No. 9428 (FTC Sept. 25, 2024), https://perma.cc/72U9-6VN6 (attached as Exhibit B). Kroger concedes that "a stay of the administrative proceedings until final resolution of the Oregon proceeding" would merit a concomitant stay in this case. Opp. 15, PageID 723. Especially in light of that order, this Court should stay the instant case pending resolution of the Section 13(b) preliminary injunction.

Despite Kroger's concession, and despite the fact that it joined the motion in the administrative proceeding, Kroger still inexplicably resists a concomitant stay in the instant case. But Kroger cannot allege that it will suffer *any* harm—much less any imminent, irreparable harm—until after resolution in the Section 13(b) proceeding. A stay of this case pending resolution

15

in the Section 13(b) proceeding would also conserve judicial and party resources and protect this Court from issuing an advisory opinion on a dispute that may soon become moot. Kroger has no justification for resisting a stay in this case.

Indeed, contrary to Kroger's contention, courts routinely stay cases in anticipation of possible mootness. *See, e.g.*, *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 660 (W.D. Va. 2019) (granting stay based in part on possibility that Virginia Legislature would repeal offending provision, especially given constitutional avoidance); *Pavek v. Simon*, No. 19-CV-3000 (SRN/DTS), 2020 WL 4013982, at *2–3 (D. Minn. July 16, 2020) (granting stay "until the end of the regular 2021 Minnesota Legislative session—or until legislation that moots or otherwise resolves this case is enacted, whichever occurs first" in order "to avoid . . . a significant potential for duplicative efforts and wasted party resources"); *Luckey v. U.S. Dep't of the Navy*, No. 18-cv-06071-HSG, 2019 WL 4059855, at *2 (N.D. Cal. Aug. 28, 2019) (granting stay pending either passage of a particular bill before Congress, or the end of the Congressional session, whichever occurred first).

Kroger invokes past conduct by the Commission and the presiding ALJ, Opp. 15, PageID 723, but such conduct is irrelevant in the face of the order continuing the recess. Regardless, Kroger's invocation of the Commission's denial of its motion to continue is unavailing for the reasons explained above. *See supra* p. 11. The Commission expressly denied that motion in part because Kroger and Albertsons had not indicated that they would abandon the proposed acquisition should the preliminary injunction issue in Oregon; Kroger and Albertsons now have so indicated. *See id*.

Finally, Kroger's interpretation of the doctrine of constitutional avoidance is overly narrow. Opp. 16, PageID 724. Courts often explicitly rely on that doctrine when deciding whether

to stay proceedings. *See, e.g.*, *Gomez v. Dretke*, 422 F.3d 264, 267 (5th Cir. 2005) (granting stay to avoid "what might be rendered an effectively advisory opinion" and "to avoid myriad constitutional quandaries"); S*tinnie*, 396 F. Supp. 3d at 660 (granting stay where "judicial economy weighs in favor of a stay until the General Assembly either repeals [the challenged law] or elects not to do so," where repeal would avoid the need to render a constitutional opinion).

## CONCLUSION

For the foregoing reasons, the Court should transfer this case to the District of Oregon or, alternatively, stay further proceedings pending resolution in *FTC v. The Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.).

Dated: September 25, 2024        Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIAN D. NETTER
Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director

*/s/ Cassandra M. Snyder*
CASSANDRA SNYDER
Trial Attorney
Department of Justice
Federal Programs Branch
1100 L Street, N.W., Washington, DC 20005
Tel: (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*

17